**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| DENIS J. CONLON and NICOLE TRAVIS, Individually, and on Behalf of All Others Similarly Situated, | ) ) ) ) | Case No. 1:21-cv-2940 |
| Plaintiffs, | ) ) | |
| v. | ) ) | |
| THE NORTHERN TRUST COMPANY; THE NORTHERN TRUST COMPANY EMPLOYEE BENEFIT ADMINISTRATIVE COMMITTEE; and DOES 1-30, | ) ) ) ) ) ) | |
| Defendants. | ) | |

**<u>CLASS ACTION COMPLAINT</u>**

Plaintiffs Denis J. Conlon and Nicole Travis, individually and as representatives of a class of similarly situated participants and beneficiaries of The Northern Trust Company Thrift-Incentive Plan (the "Plan"), bring this action under 29 U.S.C. §1132(a)(2) and (3) on behalf of the Plan against Defendants The Northern Trust Company and The Northern Trust Company Employee Benefit Administrative Committee and its members ("Defendants") for breach of fiduciary duties under the Employee Retirement Income Security Act, 29 U.S.C. §§1001-1461 ("ERISA"). Based on personal knowledge and information obtained from investigation by counsel and discovery in this matter, Plaintiffs allege as follows:

## **INTRODUCTION**

1.     Defendants are fiduciaries to the Plan with the authority to manage the Plan's investment options. The Plan's participants, who are current and former Northern Trust employees, can invest their retirement savings in any of the funds that Defendants select for the Plan.

2.     Throughout the Class Period, Defendants breached their fiduciary duties by failing to prudently select and monitor the Plan's investment options. Specifically, Defendants failed to regularly monitor Plan investments and remove or replace ones that become imprudent. Instead, in disregard of their fiduciary duties, Defendants loaded the plan with poorly performing proprietary funds called the Northern Trust Focus Target Retirement Trusts ("Northern Trust Focus Funds" or "the Funds"), and then kept these Funds on the Plan's investment menu throughout the Class Period despite their continued underperformance.

3.     The Northern Trust Focus Funds are "target date funds" designed to achieve certain investment results based on an investor's anticipated retirement date (the "target date"). Target date funds have become increasingly popular retirement savings options. According to *The Wall*

*Street Journal*, as of the end of 2016, target date funds held 21% of all 401(k) assets in the United States. In 2018, at least $734 billion of retirement savings were invested in target date funds. By the end of 2020, more than 50% of 401(k) investors had all of their 401(k) assets in target date funds, according to a Vanguard study. Given their popularity, retirement plan fiduciaries have hundreds of different target date funds to choose from when selecting target date options for their plans.

4.     Despite a market flush with better-performing alternatives, Defendants selected the Northern Trust Focus Funds to be the Plan's target date asset class investment option. The Northern Trust Focus Funds have significantly underperformed their benchmark indices and comparable target date funds since Northern Trust launched them in 2010. For nearly a decade, the Northern Trust Focus Funds have performed worse than 70% to 90% of peer funds.

5.     Still, Defendants refuse to remove the Northern Trust Focus Funds from the Plan's menu of retirement investment options. Defendants have even selected the Northern Trust Focus Funds as the Plan's default investment options, an investment feature in which the Plan automatically invests participants' retirement savings in a Northern Trust Focus Fund if they do not select another investment.

6.     Defendants' disloyal and imprudent decision to keep offering the Northern Trust Focus Funds in the Plan has had a large and tangible impact on Plan participants' retirement accounts. Based on an analysis of data compiled by Morningstar, Inc., Plaintiffs project the Plan lost tens of millions of dollars in retirement savings since 2015 because of Defendants' decision to retain the Northern Trust Focus Funds in the Plan instead of removing them.

7.     To remedy Defendants' breach of fiduciary duty, Plaintiffs individually, and as representatives of a proposed class of participants and beneficiaries of the Plan, bring this action

on behalf of the Plan under 29 U.S.C. §1132(a)(2) and (3) to enforce Defendants' personal liability under 29 U.S.C. §1109(a) to make good to the Plan all losses resulting from each breach of fiduciary duty occurring from June 1, 2015 through the present (the "Class Period").[1]  In addition, Plaintiffs seek such other equitable or remedial relief for the Plan as the Court may deem appropriate.

8.      Plaintiffs did not have knowledge of all material facts (including, among other things, comparisons of the Plan's investment performance relative to other available investment alternatives) necessary to understand that Defendants breached their fiduciary duties and engaged in other unlawful conduct in violation of ERISA until shortly before filing this Complaint via the investigation of their counsel.  Further, Plaintiffs do not have actual knowledge of the specifics of Defendants' decision-making processes with respect to the Plan, including Defendants' processes for monitoring and removing Plan investments, because this information is solely within the possession of Defendants prior to discovery.  For purposes of this Complaint, Plaintiffs have drawn reasonable inferences regarding these processes based upon (among other things) the facts set forth herein.

## **PARTIES**

9.      Denis J. Conlon is a participant, as defined in ERISA §3(7), 29 U.S.C. §1002(7), in the Plan.  Plaintiff Conlon suffered harm by investing in the Plan's poorly performing investment options, including the Northern Trust Focus 2020 Fund during the Class Period.

---

[1]      Damage calculations provided in this Complaint generally begin on January 1, 2015 for estimation purposes.  Particular losses within the Class Period will be provided through expert discovery.

10. Nicole Travis is a participant, as defined in ERISA §3(7), 29 U.S.C. §1002(7), in the Plan. Plaintiff Travis suffered harm by investing in the Plan's poorly performing investment options, including the Northern Trust Focus 2060 Fund during the Class Period.

11. Defendant The Northern Trust Company ("Northern") is an Illinois banking corporation with its principal place of business located in Chicago, Illinois. Northern is the sponsor of the Plan within the meaning of ERISA §3(16)(B), 29 U.S.C. §1002(16)(B), and fiduciary of the Plan. Among other things, Northern is responsible for the general administration and management of the Plan and for communicating with the Plan's participants.

12. Defendant The Northern Trust Company Employee Benefit Administrative Committee (the "Benefit Committee") is the named Plan Administrator and named Plan Fiduciary, and is located at 50 South LaSalle Street, Chicago, Illinois 60603.

13. Because Plaintiffs are currently unaware of the identities of the individual members of the Benefit Committee, those individuals are collectively named as Defendants Does 1-30. Plaintiffs will substitute the real names of the Does when they become known to Plaintiffs. To the extent the Benefit Committee delegated any of its fiduciary functions to another person or entity, the nature and extent of which has not been disclosed to Plaintiffs, the person or entity to which the function was delegated is also a fiduciary under 29 U.S.C. §1002(21)(A), and also alleged to be a Doe Defendant.

## JURISDICTION AND VENUE

14. This Court has subject matter jurisdiction over this matter pursuant to ERISA §502(e)(2), 29 U.S.C. §1132(a)(2) and (3), 29 U.S.C. §1132(e)(1) and 28 U.S.C. §1331.

15. This Court has general personal jurisdiction over Defendant Northern, which has its principal place of business in this District, and over any other Defendants that reside in this

District. This Court has specific personal jurisdiction over all Defendants because they took the actions described herein in this District through the management of the Plan.

16.     Venue is proper in this District under 29 U.S.C. §1132(e)(2) and 28 U.S.C. §1391(b) because Defendants reside in this District, Defendants conduct business in this District, and the harm complained of herein emanated from this District.

## ERISA'S FIDUCIARY STANDARDS

17.     ERISA §§404(a)(1)(A) and (B), 29 U.S.C. §§1104(a)(1)(A) and (B), provide, in pertinent part, that a fiduciary shall discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries, for the exclusive purpose of providing benefits to participants and their beneficiaries, and with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims.

18.     These fiduciary duties under ERISA §§404(a)(1)(A) and (B) are referred to as the duties of loyalty, exclusive purpose and prudence.

19.     "[T]he duties charged to an ERISA fiduciary are 'the highest known to the law.'" *George v. Kraft Foods Glob., Inc.*, 814 F. Supp. 2d 832, 852 (N.D. Ill. 2011).  ERISA fiduciaries must "act in good faith as an objectively prudent fiduciary would act, not simply as a prudent layperson would act."  *Chesemore v. All. Holdings, Inc.*, 886 F. Supp. 2d 1007, 1041 (W.D. Wis. 2012), *aff'd* 829 F.3d 803 (7th Cir. 2016).

20.     As part of their fiduciary duties here, Defendants have "a continuing duty to monitor [Plan] investments and remove imprudent ones" that exists "separate and apart from the duty to exercise prudence in selecting investments."  *Tibble v. Edison Int'l*, 575 U.S. 523, 523 (2015).  "A plaintiff may allege that a fiduciary breached the duty of prudence by failing to

properly monitor investments and remove imprudent ones." *Id.* If an investment is imprudent, Defendants "'must dispose of it within a reasonable time.'" *Id.* (citation omitted). Accordingly, fiduciaries must vigorously and independently investigate each of the Plan's investment options with the skill of a prudent investor.

21. ERISA §405 renders Plan fiduciaries liable for the breaches of other fiduciaries under certain circumstances, such as when a fiduciary knowingly participates in or conceals the breach of another fiduciary, if the fiduciary's own breach enables the breach by the other fiduciary, or if the fiduciary is aware of the other fiduciary's breach yet makes no reasonable effort to correct the breach.

## FACTUAL ALLEGATIONS

### I.   THE PLAN

22. The Plan is a profit-sharing plan that includes a "qualified cash or deferred arrangement" as described in Section 401(k) of the Internal Revenue Code, I.R.C. §401(k) (1986) (hereinafter denoted as "the Code") and is subject to the provisions of ERISA. The Plan is established and maintained under a written document in accordance with 29 U.S.C. §1102(a). Defendant Northern is the sponsor of the Plan, and Defendant the Benefit Committee is the Plan Administrator. Both Defendants are also Plan fiduciaries.

23. The Plan provides for retirement income for over twelve thousand Northern employees, former employees, and their beneficiaries (the Plan "participants"). A participant's retirement account balance primarily depends on contributions made on behalf of each employee by his or her employer, Northern's matching contributions, and the performance of investment options net of fees and expenses. Accordingly, poor investment performance can significantly impair the value of a participant's account. Over time, even seemingly small differences in

performance can result in significant difference in the amount of savings available at retirement. Defendants exclusively control the selection and retention of the Plan's investment options.

24. The Plan has over $2.5 billion in assets under management, with more than $400 million of those assets invested among 11 Northern Trust Focus Funds.

25. With over $2.5 billion in assets, "a jumbo plan," the Plan has tremendous leverage to demand and receive superior investment products and services. Unfortunately, Defendants did not effectively use that leverage to identify and select prudent target date fund options for Plan participants.

## II.    NORTHERN'S BREACH OF FIDUCIARY DUTY

26. As Plan fiduciaries, Defendants were responsible for monitoring the Plan's investment options. Defendants failed to prudently perform this function. Defendants selected a suite of proprietary target date funds—the Focus Funds—that were chronic poor performers. Defendants failed to remove the Funds from the Plan despite their abysmal underperformance for almost a decade.

27. Defendants began offering the Northern Trust Focus Funds[2] to Plan participants in 2013. The Funds have target retirement dates ranging from 2010 to 2060. The Northern Trust Focus Funds are the only target date retirement investing options in the Plan. Participants in the Plan who want to invest in a target date fund strategy have no choices other than the Northern Trust Focus Funds.

---

[2]      These funds are organized as a collective investment trust (as opposed to a registered investment company or mutual fund). Collective investment trusts are subject to either state or federal banking regulations but are exempt from regulation by the Securities and Exchange Commission and the securities regulations of any state or other jurisdiction. Accordingly, public information is not as readily available for collective investment trusts as it would be for mutual funds. For information to support the allegations in the Complaint, Plaintiffs have relied primarily on Department of Labor filings and data published by Morningstar.

28. Defendants also selected the Northern Trust Focus Funds as the Plan's default investment options. That is, if participants do not make investment fund elections, the Plan automatically invests their contributions, along with any matching contributions and/or earnings, in one of the Northern Trust Focus Funds based on their age.

29. As of December 31, 2019, the Plan included the following Northern Trust Focus Funds along with the amount of Plan assets invested in each fund:[3]

| Plan Option | 2019 Value | 2015 Value |
|---|---|---|
| Northern Trust Focus 2010 Fund | $ 3,677,201 | $ 3,083,654 |
| Northern Trust Focus 2015 Fund | $ 7,890,871 | $ 15,427,970 |
| Northern Trust Focus 2020 Fund | $ 33,979,328 | $ 34,370,088 |
| Northern Trust Focus 2025 Fund | $ 53,505,574 | $ 38,469,493 |
| Northern Trust Focus 2030 Fund | $ 75,561,796 | $ 30,293,251 |
| Northern Trust Focus 2035 Fund | $ 60,637,001 | $ 32,461,852 |
| Northern Trust Focus 2040 Fund | $ 46,656,990 | $ 20,803,257 |
| Northern Trust Focus 2045 Fund | $ 42,006,076 | $ 16,391,107 |
| Northern Trust Focus 2050 Fund | $ 32,805,571 | $ 9,714,928 |
| Northern Trust Focus 2055 Fund | $ 17,861,027 | $ 3,398,332 |
| Northern Trust Focus 2060 Fund | $ 7,754,280 | $ 466,243 |

30. Retirement plan fiduciaries typically offer target date investing options through a suite of funds bundled by a single investment provider (here, Northern). Since Defendants offer the Funds to the Plan as a suite, they use the same selection and monitoring process for each of the Northern Trust Focus Funds.

31. Defendants' selection and monitoring process for the Northern Trust Focus Funds has been deficient. Before deciding to present the Northern Trust Focus Funds to the Plan's

---

[3] To estimate damages, the values listed here are the reported assets as of the end of December 31, 2019, as disclosed in Form 5500 filed with the U.S. Department of Labor on August 31, 2020. The 2015 values are used in later sections to illustrate the economic losses to Plan participants. However, these values do not account for fresh inflows into the funds from new employees, which likely occurred because the majority of the Northern Trust Focus Funds have multiples of more assets in 2020 compared to 2015. Thus, the real damages for members of the Class, when including new employees who invested in these funds after 2015, are likely far higher.

participants, any prudent ERISA fiduciary adhering to a rigorous investment selection process would have compared the Funds' performance with the performance of established target date benchmarks. By 2013, when Defendants first put the Northern Trust Focus Funds in the Plan, the Funds had a track record of poor performance compared to these indexes. In fact, since Northern Trust created the Funds in 2010, they have underperformed relative to both benchmarks.

32. The Northern Trust Focus Funds also have a record of underperforming relative to comparable target date funds. To measure each fund's investment performance relative to its peers, Morningstar places each of the Northern Trust Focus Funds into a specific target date Morningstar Category[4] that includes hundreds of other funds pursuing the same target retirement date investment strategy. Morningstar classifies the target date funds offered by American Funds, T. Rowe Price, and Vanguard (collectively, the "Comparator Funds") within the same Category as the Northern Trust Focus Funds. Each investment adviser for the Comparators Funds is an industry leader capable of providing target date strategies to large 401(k) plans like the Plan here. The Comparator Funds outperformed the Northern Trust Focus Funds between 2010 and 2013. Still, Defendants selected Northern Trust for the Plan instead of the Comparator Funds.

33. Defendants' decision to select the Northern Trust Focus Funds as the Plan's target date strategy investment options resulted, collectively speaking, in a swift and devastating blow to Plaintiffs' and other Plan participants' retirement accounts. In 2013-2014, the first two years that the Plan offered the Northern Trust Focus Funds, those Funds underperformed relative to the Comparator Funds. Predictably, Northern Trust Focus Funds continued underperforming

---

[4] A Morningstar Category is assigned by placing funds (*e.g.*, Northern Trust, Fidelity, T. Rowe Price, and Vanguard) into peer groups based on their underlying holdings. The underlying securities in each portfolio are the primary factor in Morningstar's analysis and proprietary classification methodology. Funds are placed in a category based on their portfolio statistics and compositions over the past three years.

throughout the Class Period. Since their inception in 2010, the Northern Trust Focus Funds have experienced over a decade of continuous underperformance.

34. Still, Defendants have failed to remove the Northern Trust Focus Funds from the Plan. During the proposed Class Period here, Defendants even added the Northern Trust 2060 Fund to the Plan's mix. A reasonable investigation by Defendants would have revealed the Focus Funds' chronic underperformance and prompted Defendants to remove and replace them with superior options.

35. To this day, the investment performance of each of the eleven Northern Trust Focus Funds has continued its downward spiral to the bottom of their respective Morningstar Category for the preceding three-year and five-year periods. Most of the Northern Trust Focus Funds have performed worse than between 70% and 95% of the hundreds of funds within their respective Morningstar Categories for the past three-year and five-year periods. The Northern Trust Focus Funds have also continued underperforming the Dow Jones US Target Date (DJ US TD) Index and S&P Target Date (S&P TD) Index. The overall breadth and depth of the Northern Trust Focus Funds' underperformance raises a plausible inference that Defendants' fund selection and monitoring process for the Plan was tainted by a failure of competency or effort.

36. In the tables below, Plaintiffs demonstrate the underperformance of the 11 Northern Trust Focus Funds compared to the S&P TD Index, the DJ US TD Indices, and the Comparator Funds at various periods since 2010. The data presented below was available to Defendants throughout the proposed Class Period in real-time.

37. The Comparator Funds listed in the tables below (T. Rowe Price and Vanguard) pursue the same investment objectives as the Northern Trust Focus Funds, are managed by well-

known investment advisers, and are available to all large retirement plans. Defendants would not have had to scour the market to find them.

38. By selecting the Northern Trust Focus Funds and then failing to remove them from the Plan, Defendants breached their fiduciary duty of prudence under ERISA. Defendants' decisions have had a profound and lasting effect on the Plan. Because of Defendants' selection of their own Focus Funds as the target date funds for the Plan, Plaintiffs and other Plan participants have together lost tens of millions of dollars in retirement savings since 2015.

i. **Northern Trust Focus 2010 Fund**

39. The Northern Trust (NT) Focus 2010 Fund's underperformance dates back to its inception. **Table 1.a** below, illustrates nearly four years of underperformance leading up to the Class Period, and Northern Trust removed better performing Vanguard Target Retirement Funds and replaced them with Northern Trust Focus Funds during the 2013 plan year, relative to benchmark indexes and Comparator Funds.

**Table 1.a**

<u>2010-2013</u>

| Fund | Cumulative | Annualized |
|------|-----------|-----------|
| NT Focus 2010 | 34.99% | 7.96% |
| Vanguard 2010 | 40.03% | 8.98% |
| T Rowe Price 2010 | 45.25% | 10.00% |
| American Funds 2010 | 43.30% | 9.62% |
| S&P 2010 TD BM | 37.22% | 8.41% |
| DJ US 2010 TD BM | 33.93% | 7.74% |

40. A prudent fiduciary would have used the indexes and Comparator Funds listed in **Table 1.a** above as benchmarks for the performance of the Northern Trust Focus 2010 Fund. Morningstar also places the Northern Trust Focus 2010 Fund in its Target Date 2000-2010

Morningstar Category along with the Comparator Funds managed by American Funds, T. Rowe Price, and Vanguard.[5]

41.     Despite four years of substantial underperformance, Defendants did not remove the Northern Trust Focus 2010 Fund from the Plan.  Predictably, the underperformance continued throughout the Class Period.

42.     **Table 1.b** below illustrates the underperformance of the Northern Trust Focus 2010 Fund from 2015 through 2020 on an annualized basis.  Furthermore, the differences in annual performance are even more pronounced when compounded over time.  Thus, as the table demonstrates, the Northern Trust Focus 2010 Fund also significantly underperformed the benchmark indexes and Comparator Funds[6] on a cumulative basis.

**Table 1.b**

| Fund | 2015 | 2016 | 2017 | 2018 | 2019 | 2020 | Cumulative Compounded | Under(-)/Out (+) Performace |
|------|------|------|------|------|------|------|-----------------------|------------------------------|
| NT Focus 2010 | -0.49% | 5.26% | 9.24% | -3.01% | 14.36% | 11.29% | 41.24% | |
| Vanguard 2010 | -0.21% | 5.21% | 8.48% | -1.99% | 13.15% | 10.18% | 39.17% | 2.08% |
| T Rowe Price 2010 | -0.77% | 7.11% | 11.67% | -3.61% | 16.14% | 11.90% | 48.68% | -7.44% |
| American Funds 2010 | -0.84% | 7.44% | 10.33% | -2.52% | 13.91% | 9.25% | 42.60% | -1.36% |
| S&P 2010 TD BM | -0.20% | 5.82% | 9.96% | -3.10% | 14.30% | 18.40% | 52.31% | -11.06% |
| DJ US 2010 TD BM | 0.36% | 4.05% | 5.75% | -0.63% | 11.05% | 8.07% | 31.69% | 9.55% |

43.     Put in a broader context, according to Morningstar, the 2010 Fund's performance has been worse than 81% of funds in Target Date 2010 Morningstar Category for the past three-

---

[5]     Although Vanguard offered the Vanguard Target Retirement 2010 Trust as a collective investment trust to 401(k) plans, Vanguard discontinued its target date 2010 strategy in 2017, as its asset allocation became substantially identical to the Target Retirement Income Fund.  Plaintiffs could not access Morningstar archived performance data for the Vanguard Target Retirement 2010 Trust.

[6]     Data unavailable.  *See supra* note 5.

year and five-year periods.  In those periods, there have been between 76 and 95 funds in that Morningstar Category.

44.     At the beginning of 2015, the assets of the Northern Trust Focus 2010 Fund totaled approximately $4.1 million.  **Table 1.c** below shows the hypothetical growth of $4.1 million invested in the Northern Trust Focus 2010 Fund and each of the Comparator Funds from January 1, 2015 through December 31, 2020.  As the table makes clear, Defendants' failure to replace the Northern Trust Focus 2010 Fund with one of these Comparator Funds in 2015 resulted in the Plan losing upwards of $310,000 in retirement savings.

**Table 1.c**

| Fund Name | Compounded Performance | Annualized Performance | Growth of | $4,176,872.00 |
|---|---|---|---|---|
| Northern Trust Focus 2010 Fund W | 41.24% | 5.92% | $ | 5,899,561.08 |
| | | | | |
| Vanguard Target Retirement 2010 | 39.17% | 5.66% | $ | 5,812,768.89 |
| +/- Northern Trust | 2.08% | 0.26% | $ | 86,792.19 |
| | | | | |
| T. Rowe Price Target 2010 | 48.68% | 6.83% | $ | 6,210,233.66 |
| +/- Northern Trust | -7.44% | -0.91% | $ | (310,672.58) |
| | | | | |
| American Fund 2010 | 42.60% | 6.09% | $ | 5,956,212.39 |
| +/- Northern Trust | -1.36% | -0.17% | $ | (56,651.31) |

ii.     **Northern Trust Focus 2015 Fund:**

45.     The Northern Trust Focus 2015 Fund's underperformance dates back to its inception.  **Table 2.a** below, illustrates nearly four years of underperformance leading up to the Class Period, relative to benchmark indexes and Comparator Funds.

**Table 2.a**

2010-2013

| Fund | Cumulative | Annualized |
|------|-----------|-----------|
| NT Focus 2015 | 38.54% | 8.68% |
| Vanguard 2015 | 46.41% | 10.22% |
| T Rowe Price 2015 | 52.25% | 11.33% |
| American Funds 2015 | 48.12% | 10.55% |
| S&P 2015 TD BM | 43.29% | 9.62% |
| DJ US 2015 TD BM | 40.87% | 9.14% |

46.     A prudent fiduciary would have used the indexes and Comparator Funds listed in **Table 2.a** above as benchmarks for the performance of the Northern Trust Focus 2015 Fund. Morningstar also places the Northern Trust Focus 2015 Fund in its Target Date 2015 Morningstar Category along with the Comparator Funds managed by American Funds, T. Rowe Price, and Vanguard.

47.     Despite four years of substantial underperformance, Defendants did not remove the Northern Trust Focus 2015 Fund from the Plan.  Predictably, the underperformance continued throughout the Class Period.

48.     **Table 2.b** below illustrates the underperformance of the Northern Trust Focus 2015 Fund from January 1, 2015 through December 31, 2020 on an annualized basis.  Furthermore, the differences in annual performance are even more pronounced when compounded over time.  Thus, as the table demonstrates, the Northern Trust Focus 2015 Fund also significantly underperformed the benchmark indexes and Comparator Funds on a cumulative basis.

14

**Table 2.b**

| Fund | 2015 | 2016 | 2017 | 2018 | 2019 | 2020 | Cumulative Compounded | Under(-)/Out (+) Performace |
|---|---|---|---|---|---|---|---|---|
| NT Focus 2015 | -0.87% | 5.46% | 9.74% | -3.21% | 14.58% | 11.62% | 42.02% | |
| Vanguard 2015 | -0.46% | 6.17% | 11.51% | -2.98% | 14.80% | 10.42% | 44.93% | -2.91% |
| T Rowe Price 2015 | -0.57% | 7.33% | 13.33% | -4.17% | 17.40% | 12.57% | 53.18% | -11.17% |
| American Funds 2015 | -0.61% | 7.55% | 11.26% | -2.71% | 14.83% | 9.96% | 46.10% | -4.08% |
| S&P 2015 TD BM | -0.17% | 6.55% | 11.40% | -3.66% | 15.39% | 18.40% | 55.95% | -13.93% |
| DJ US 2015 TD BM | 0.28% | 5.19% | 6.87% | -1.12% | 12.10% | 8.30% | 35.35% | 6.67% |

49.     Put in a broader context, according to Morningstar, the Northern Trust Focus 2015 Fund performed worse than 87% and 77% of all funds in the Target Date 2015 Morningstar Category for the preceding three-year and five-year periods, respectively.  In those periods, there have been between 74 and 101 funds in the Target Date 2015 Morningstar Category.

50.     At the beginning of the Class Period in 2015, the assets of the Plan that were invested in the Northern Trust Focus 2015 Fund totaled approximately $21.1 million.  **Table 2.c** below shows the hypothetical growth of $21.1 million invested in the Northern Trust Focus 2015 Fund and each of the Comparator Funds from January 1, 2015 through December 31, 2020.  As the table makes clear, Defendants' failure to replace the Northern Trust Focus 2015 Fund with one of these Comparator Funds in 2015 resulted in the Plan losing upwards of $2.3 million in retirement savings.

**Table 2.c**

| Fund Name | Compounded Performance | Annualized Performance | Growth of | $21,143,010.00 |
|---|---|---|---|---|
| Northern Trust Focus 2015 Fund W | 42.02% | 6.02% | $ | 30,026,406.11 |
| | | | | |
| Vanguard Target Retirement 2015 | 44.93% | 6.38% | $ | 30,641,641.72 |
| +/- Northern Trust | -2.91% | -0.36% | $ | (615,235.61) |
| | | | | |
| T. Rowe Price Target 2015 | 53.18% | 7.37% | $ | 32,387,320.35 |
| +/- Northern Trust | -11.17% | -1.35% | $ | (2,360,914.24) |
| | | | | |
| American Fund 2015 | 46.10% | 6.52% | $ | 30,889,350.46 |
| +/- Northern Trust | -4.08% | -0.50% | $ | (862,944.35) |

iii.    **Northern Trust Focus 2020 Fund:**

51.    The Northern Trust Focus 2020 Fund's underperformance dates back to its inception.  **Table 3.a** below, illustrates nearly four-years of underperformance leading up to the Class Period, relative to benchmark indexes and Comparator Funds.

**Table 3.a**

<u>2010-2013</u>

| Fund | Cumulative | Annualized |
| --- | --- | --- |
| NT Focus 2020 | 42.28% | 9.42% |
| Vanguard 2020 | 51.28% | 11.15% |
| T Rowe Price 2020 | 58.26% | 12.44% |
| American Funds 2020 | 54.42% | 11.73% |
| S&P 2020 TD BM | 48.94% | 10.71% |
| DJ US 2020 TD BM | 49.78% | 10.87% |

52.    A prudent fiduciary would have used the indexes and Comparator Funds listed in **Table 3.a** above as benchmarks for the performance of the Northern Trust Focus 2020 Fund. Again, one of Northern Trust's largest client retirement plans uses the S&P Target Date 2020 as the benchmark index for the Northern Trust Focus 2020 Fund.  Morningstar also places the Northern Trust Focus 2020 Fund in its Target Date 2020 Morningstar Category along with the Comparator Funds managed by American Funds, T. Rowe Price, and Vanguard.

53.    Despite four years of substantial underperformance, Defendants did not remove the Northern Trust Focus 2020 Fund from the Plan.  Predictably, the Fund continued underperforming throughout the Class Period.

54.    **Table 3.b** below illustrates the underperformance of the Northern Trust Focus 2020 Fund from January 1, 2015 through December 31, 2020 on an annualized basis.  Furthermore, the differences in annual performance are even more pronounced when compounded over time.  Thus,

as the table demonstrates, the Northern Trust Focus 2020 Fund significantly underperformed the benchmark indexes and Comparator Funds on a cumulative basis.

**Table 3.b**

| Fund | 2015 | 2016 | 2017 | 2018 | 2019 | 2020 | Cumulative Compounded | Under(-)/Out (+) Performace |
|---|---|---|---|---|---|---|---|---|
| NT Focus 2020 | -1.27% | 5.76% | 10.71% | -3.64% | 15.05% | 11.76% | 43.23% | |
| Vanguard 2020 | -0.68% | 6.94% | 14.08% | -4.24% | 17.63% | 12.09% | 53.00% | -9.77% |
| T Rowe Price 2020 | -0.31% | 7.40% | 15.74% | -4.93% | 19.38% | 13.19% | 59.18% | -15.96% |
| American Funds 2020 | 0.17% | 7.06% | 12.82% | -2.69% | 15.62% | 10.99% | 51.09% | -7.86% |
| S&P 2020 TD BM | -0.21% | 7.20% | 12.77% | -4.16% | 16.51% | 18.40% | 59.49% | -16.26% |
| DJ US 2020 TD BM | 0.27% | 6.29% | 8.46% | -1.43% | 13.87% | 8.63% | 40.95% | 2.28% |

55.     Put in a broader context, according to Morningstar, the Northern Trust Focus 2020 Fund performed worse than 82% and 81% of all funds in the Target Date 2020 Morningstar Category over the preceding three-year and five-year periods, respectively.  In those periods, there have been between 109 and 152 funds in the Target Date 2020 Morningstar Category.

56.     At the beginning of 2015, the assets of the Northern Trust Focus 2020 Fund totaled approximately $36.6 million.  **Table 3.c** below shows the hypothetical growth of $36.6 million invested in the Northern Trust Focus 2020 Fund and each of the Comparator Funds from January 1, 2015 through December 31, 2020.  As the table makes clear, Defendants' failure to replace the Northern Trust Focus 2020 Fund with one of these Comparator Funds in 2015 resulted in the Plan losing upwards of $5.8 million in retirement savings.

**Table 3.c**

| Fund Name | Compounded Performance | Annualized Performance | Growth of $36,674,368.00 | |
|---|---|---|---|---|
| Northern Trust Focus 2020 Fund W | 43.23% | 5.68% | $ | 52,527,670.09 |
| | | | | |
| Vanguard Target Retirement 2020 | 53.00% | 7.34% | $ | 56,110,548.10 |
| +/- Northern Trust | -9.77% | -1.66% | $ | (3,582,878.00) |
| | | | | |
| T. Rowe Price Target 2020 | 59.18% | 8.06% | $ | 58,379,221.28 |
| +/- Northern Trust | -15.96% | -2.37% | $ | (5,851,551.19) |
| | | | | |
| American Fund 2020 | 51.09% | 7.12% | $ | 55,409,881.57 |
| +/- Northern Trust | -7.86% | -1.44% | $ | (2,882,211.48) |

### iv. Northern Trust Focus 2025 Fund:

57.     The Northern Trust Focus 2025 Fund's underperformance dates back to its inception. **Table 4.a** below illustrates nearly four years of underperformance leading up to the Class Period, relative to benchmark indexes and Comparator Funds.

**Table 4.a**

<u>2010-2013</u>

| Fund | Cumulative | Annualized |
|---|---|---|
| NT Focus 2025 | 45.88% | 10.12% |
| Vanguard 2025 | 55.65% | 11.96% |
| T Rowe Price 2025 | 63.35% | 13.35% |
| American Funds 2025 | 64.71% | 13.59% |
| S&P 2025 TD BM | 53.69% | 11.60% |
| DJ US 2025 TD BM | 59.62% | 12.68% |

58.     A prudent fiduciary would have used the indexes and Comparator Funds listed in **Table 4.a** above as benchmarks for the performance of the Northern Trust Focus 2025 Fund. Again, one of Northern Trust's largest client retirement plans uses the S&P Target Date 2025 as the benchmark index for the Northern Trust Focus 2025 Fund. Morningstar also places the

Northern Trust Focus 2025 Fund in its Target Date 2025 Morningstar Category along with the Comparator Funds managed by American Funds, T. Rowe Price, and Vanguard.

59.     Despite four years of substantial underperformance, Defendants did not remove the Northern Trust Focus 2025 Fund from the Plan.  Predictably, the underperformance continued throughout the Class Period.

60.     **Table 4.b** below illustrates the underperformance of the Northern Trust Focus 2025 Fund from January 1, 2015 through December 31, 2020 on an annualized basis.  Furthermore, the differences in annual performance are even more pronounced when compounded over time.  Thus, as the table demonstrates, the Northern Trust Focus 2025 Fund also significantly underperformed the benchmark indexes and Comparator Funds on a cumulative basis.

**Table 4.b**

| Fund | 2015 | 2016 | 2017 | 2018 | 2019 | 2020 | Cumulative Compounded | Under(-)/Out (+) Performace |
|------|------|------|------|------|------|------|-----------------------|------------------------------|
| NT Focus 2025 | -1.66% | 6.31% | 12.42% | -4.35% | 16.85% | 12.64% | 47.96% | |
| Vanguard 2025 | -0.85% | 7.49% | 15.95% | -5.16% | 19.64% | 13.34% | 58.90% | -10.94% |
| T Rowe Price 2025 | -0.16% | 7.53% | 17.67% | -5.60% | 20.94% | 14.69% | 65.39% | -17.43% |
| American Funds 2025 | 0.13% | 7.36% | 15.27% | -3.41% | 17.75% | 13.67% | 60.20% | -12.24% |
| S&P 2025 TD BM | -0.23% | 7.81% | 14.56% | -5.03% | 18.40% | 18.40% | 64.05% | -16.09% |
| DJ US 2025 TD BM | 0.18% | 7.77% | 10.56% | -2.30% | 16.37% | 9.62% | 48.75% | -0.79% |

61.     Put in a broader context, according to Morningstar, Northern Trust Focus 2025 Fund performed worse than 85% and 91% of funds in the Target Date 2025 Morningstar Category in the preceding three-year and five-year periods, respectively.  During those periods, there have been between 151 and 191 funds in the Target Date 2025 Morningstar Category.

62.     At the start of 2015, the assets of the Northern Trust Focus 2025 Fund totaled approximately $38.8 million.  **Table 4.c** below shows the hypothetical growth of $38.8 million invested in the Northern Trust Focus 2025 Fund and each of the Comparator Funds from January 1, 2015 through December 31, 2020.  As the table makes clear, Defendants' failure to replace the

Northern Trust Focus 2025 Fund with one of the Comparator Funds in 2015 resulted in the Plan losing upwards of $6.7 million in retirement savings.

**Table 4.c**

| Fund Name | Compounded Performance | Annualized Performance | Growth of | $38,838,816.00 |
|---|---|---|---|---|
| Northern Trust Focus 2025 Fund W | 47.96% | 6.75% | $ | 57,467,223.90 |
| | | | | |
| Vanguard Target Retirement 2025 | 58.90% | 8.02% | $ | 61,715,734.69 |
| +/- Northern Trust | -10.94% | -1.28% | $ | (4,248,510.79) |
| | | | | |
| T. Rowe Price Target 2025 | 65.39% | 8.75% | $ | 64,236,753.13 |
| +/- Northern Trust | -17.43% | -2.00% | $ | (6,769,529.23) |
| | | | | |
| American Fund 2025 | 60.20% | 8.17% | $ | 62,219,695.33 |
| +/- Northern Trust | -12.24% | -1.42% | $ | (4,752,471.43) |

v. **Northern Trust Focus 2030 Fund:**

63.     The Northern Trust Focus 2030 Fund's underperformance dates back to its inception. **Table 5.a** below illustrates nearly four-years of underperformance leading up to the Class Period, relative to benchmark indexes and Comparator Funds.

**Table 5.a**

2010-2013

| Fund | Cumulative | Annualized |
|---|---|---|
| NT Focus 2030 | 49.77% | 10.86% |
| Vanguard 2030 | 60.26% | 12.80% |
| T Rowe Price 2030 | 68.14% | 14.19% |
| American Funds 2030 | 68.17% | 14.19% |
| S&P 2030 TD BM | 57.79% | 12.35% |
| DJ US 2030 TD BM | 69.33% | 14.39% |

64.     A prudent fiduciary would have used the indexes and Comparator Funds listed in **Table 5.a** above as benchmarks for the performance of the Northern Trust Focus 2030 Fund. Again, one of Northern Trust's largest client retirement plans uses the S&P Target Date 2030 as the

benchmark index for the Northern Trust Focus 2030 Fund. Morningstar also places the Northern Trust Focus 2030 Fund in its Target Date 2030 Morningstar Category along with the Comparator Funds managed by American Funds, T. Rowe Price, and Vanguard.

65. Despite four years of substantial underperformance, Defendants did not remove the Northern Trust Focus 2030 Fund from the Plan. Predictably, the underperformance continued throughout the Class Period.

66. **Table 5.b** below illustrates the underperformance of the Northern Trust Focus 2030 Fund from January 1, 2015 through December 31, 2020 on an annualized basis. Furthermore, the differences in annual performance are even more pronounced when compounded over time. Thus, as the table demonstrates, the Northern Trust Focus 2030 Fund also significantly underperformed benchmark indexes and the Comparator Funds on a cumulative basis.

**Table 5.b**

| Fund | 2015 | 2016 | 2017 | 2018 | 2019 | 2020 | Cumulative Compounded | Under(-)/Out (+) Performace |
|------|------|------|------|------|------|------|------|------|
| NT Focus 2030 | -2.09% | 7.31% | 15.67% | -5.73% | 19.40% | 13.24% | 54.91% | |
| Vanguard 2030 | -1.03% | 7.83% | 17.53% | -5.85% | 21.07% | 14.10% | 63.14% | -8.24% |
| T Rowe Price 2030 | -0.03% | 7.70% | 19.45% | -6.28% | 22.47% | 15.90% | 71.08% | -16.18% |
| American Funds 2030 | 0.47% | 7.71% | 18.43% | -4.16% | 20.05% | 16.16% | 71.29% | -16.39% |
| S&P 2030 TD BM | -0.31% | 8.32% | 16.19% | -5.99% | 20.37% | 18.40% | 68.11% | -13.21% |
| DJ US 2030 TD BM | -0.15% | 9.12% | 12.67% | -3.29% | 19.18% | 10.88% | 56.89% | -1.99% |

67. Put in a broader context, according to Morningstar, the Northern Trust Focus 2030 Fund performed worse than 72% and 85% of funds in the Target Date 2030 Morningstar Category for the preceding three-year and five-year periods, respectively. During those periods, there have been between 149 and 192 funds in the Target Date 2030 Morningstar Category.

68. At the beginning of 2015, the assets of the Northern Trust Focus 2030 Fund totaled approximately $27.9 million. **Table 5.c** below shows the hypothetical growth of $27.9 million invested in the Northern Trust Focus 2030 Fund and each of the Comparator Funds from January

1, 2015 through December 31, 2020. As the table makes clear, Defendants' failure to replace the Northern Trust Focus 2030 Fund with one of the Comparator Funds in 2015 resulted in the Plan losing upwards of $4.5 million in retirement savings.

**Table 5.c**

| Fund Name | Compounded Performance | Annualized Performance | Growth of | $27,910,199.00 |
|---|---|---|---|---|
| Northern Trust Focus 2030 Fund W | 54.91% | 7.57% | $ | 43,234,317.60 |
| Vanguard Target Retirement 2030 | 63.14% | 8.50% | $ | 45,533,103.47 |
| +/- Northern Trust | -8.24% | -0.93% | $ | (2,298,785.87) |
| T. Rowe Price Target 2030 | 71.08% | 9.36% | $ | 47,749,866.73 |
| +/- Northern Trust | -16.18% | -1.80% | $ | (4,515,549.13) |
| American Fund 2030 | 71.29% | 9.38% | $ | 47,807,463.61 |
| +/- Northern Trust | -16.39% | -1.82% | $ | (4,573,146.01) |

vi.     **Northern Trust Focus 2035 Fund:**

69.     The Northern Trust Focus 2035 Fund's underperformance dates back to its inception. **Table 6.a** below, illustrates nearly four-years of underperformance leading up to the Class Period, relative to benchmark indexes and Comparator Funds.

**Table 6.a**

<u>2010-2013</u>

| Fund | Cumulative | Annualized |
|---|---|---|
| NT Focus 2035 | 53.37% | 11.54% |
| Vanguard 2035 | 64.59% | 13.57% |
| T Rowe Price 2035 | 71.20% | 14.71% |
| American Funds 2035 | 68.54% | 14.26% |
| S&P 2035 TD BM | 61.14% | 12.95% |
| DJ US 2035 TD BM | 77.78% | 15.83% |

70.     A prudent fiduciary would have used the indexes and Comparator Funds listed in **Table 6.a** above as benchmarks for the performance of the Northern Trust Focus 2035 Fund.

Again, one of Northern Trust's largest client retirement plans uses the S&P Target Date 2035 as the benchmark index for the Northern Trust Focus 2035 Fund. Morningstar also places the Northern Trust Focus 2035 Fund in its Target Date 2035 Morningstar Category along with the Comparator Funds managed by American Funds, T. Rowe Price, and Vanguard.

71.     Despite four years of substantial underperformance, Defendants did not remove the Northern Trust Focus 2035 Fund from the Plan. Predictably, the underperformance continued throughout the Class Period.

72.     **Table 6.b** below illustrates the underperformance of the Northern Trust Focus 2035 Fund from January 1, 2015 through December 31, 2020 on an annualized basis. Furthermore, the differences in annual performance are even more pronounced when compounded over time. Thus, as the table demonstrates, the Northern Trust Focus 2035 Fund also significantly underperformed the benchmark indexes and Comparator Funds a cumulative basis.

**Table 6.b**

| Fund | 2015 | 2016 | 2017 | 2018 | 2019 | 2020 | Cumulative Compounded | Under(-)/Out (+) Performace |
|------|------|------|------|------|------|------|------------------------|------------------------------|
| NT Focus 2035 | -2.50% | 8.30% | 18.95% | -7.43% | 16.16% | 13.33% | 53.06% | |
| Vanguard 2035 | -1.26% | 8.27% | 19.13% | -6.59% | 22.43% | 14.80% | 67.21% | -14.15% |
| T Rowe Price 2035 | 0.14% | 7.65% | 20.89% | -6.87% | 23.72% | 17.05% | 75.76% | -22.69% |
| American Funds 2035 | 0.60% | 8.00% | 21.09% | -5.14% | 23.22% | 17.55% | 80.76% | -27.70% |
| S&P 2035 TD BM | -0.36% | 8.85% | 17.78% | -6.87% | 22.19% | 18.40% | 72.13% | -19.07% |
| DJ US 2035 TD BM | -0.44% | 10.36% | 14.71% | -4.31% | 22.02% | 12.15% | 65.05% | -11.98% |

73.     Put in a broader context, according to Morningstar, the Northern Trust Focus 2035 Fund performed worse than 59% and 82% of all funds in the Target Date 2035 Morningstar Category in the preceding three-year and five-year periods, respectively. During those periods, there have been between 148 and 188 funds in the Target Date 2035 Morningstar Category.

74.     At the beginning of 2015, the assets of the Northern Trust Focus 2035 Fund totaled approximately $33 million. **Table 6.c** below shows the hypothetical growth of $33 million

invested in the Northern Trust Focus 2035 Fund and each of its Comparator Funds from January 1, 2015 through December 31, 2020. As the table makes clear, Defendants' failure to replace the Northern Trust Focus 2035 Fund with one of the Comparator Funds in 2015 resulted in the Plan losing over $9 million in retirement savings.

**Table 6.c**

| Fund Name | Compounded Performance | Annualized Performance | Growth of | $ 33,050,058.00 |
|---|---|---|---|---|
| Northern Trust Focus 2035 Fund W | 53.06% | 7.35% | $ | 50,587,300.01 |
| | | | | |
| Vanguard Target Retirement 2035 | 67.21% | 8.95% | $ | 55,262,858.83 |
| +/- Northern Trust | -14.15% | -1.59% | $ | (4,675,558.82) |
| | | | | |
| T. Rowe Price Target 2035 | 75.76% | 9.85% | $ | 58,087,536.70 |
| +/- Northern Trust | -22.69% | -2.50% | $ | (7,500,236.69) |
| | | | | |
| American Fund 2035 | 80.76% | 10.37% | $ | 59,741,210.34 |
| +/- Northern Trust | -27.70% | -3.02% | $ | (9,153,910.32) |

vii.     **Northern Trust Focus 2040 Fund:**

75.     The Northern Trust Focus 2040 Fund's underperformance dates back to its inception. **Table 7.a**, below, illustrates nearly four years of underperformance leading up to the Class Period, relative to benchmark indexes and Comparator Funds.

**Table 7.a**

2010-2013

| Fund | Cumulative | Annualized |
|---|---|---|
| NT Focus 2040 | 55.11% | 11.86% |
| Vanguard 2040 | 66.87% | 13.97% |
| T Rowe Price 2040 | 72.87% | 15.00% |
| American Funds 2040 | 69.40% | 14.41% |
| S&P 2040 TD BM | 63.58% | 13.39% |
| DJ US 2040 TD BM | 83.91% | 16.83% |

76.     A prudent fiduciary would have used the indexes and Comparator Funds listed in **Table 7.a** above as benchmarks for the performance of the Northern Trust Focus 2040 Fund. Again, one of Northern Trust's largest client retirement plans uses the S&P Target Date 2040 as the benchmark index for the Northern Trust Focus 2040 Fund. Morningstar also places the Northern Trust Focus 2040 Fund in its Target Date 2040 Morningstar Category along with the Comparator Funds managed by American Funds, T. Rowe Price, and Vanguard.

77.     Despite four years of substantial underperformance, Defendants did not remove the Northern Trust Focus 2040 Fund from the Plan. Predictably, the underperformance continued throughout the Class Period.

78.     **Table 7.b** below illustrates the underperformance of the Northern Trust Focus 2040 Fund from January 1, 2015 through December 31, 2020 on an annualized basis. Furthermore, the differences in annual performance are even more pronounced when compounded over time. Thus, as the table demonstrates, the Northern Trust Focus 2040 Fund also significantly underperformed the benchmark indexes and Comparator Funds on a cumulative basis.

**Table 7.b**

| Fund | 2015 | 2016 | 2017 | 2018 | 2019 | 2020 | Cumulative Compounded | Under(-)/Out (+) Performance |
|---|---|---|---|---|---|---|---|---|
| NT Focus 2040 | -2.96% | 8.59% | 19.95% | -8.20% | 23.84% | 13.61% | 63.25% | |
| Vanguard 2040 | -1.60% | 8.72% | 20.70% | -7.34% | 23.85% | 15.44% | 71.08% | -7.83% |
| T Rowe Price 2040 | 0.16% | 7.65% | 22.02% | -7.33% | 24.71% | 18.11% | 79.56% | -16.31% |
| American Funds 2040 | 0.57% | 8.17% | 21.94% | -5.55% | 24.41% | 18.77% | 85.13% | -21.88% |
| S&P 2040 TD BM | -0.39% | 9.21% | 18.87% | -7.42% | 23.35% | 18.40% | 74.86% | -11.60% |
| DJ US 2040 TD BM | -0.69% | 11.36% | 16.46% | -5.24% | 24.57% | 13.28% | 72.22% | -8.97% |

79.     Put in a broader context, according to Morningstar, the Northern Trust Focus 2040 Fund performed worse than 55% and 85% of all funds in the Target Date 2040 Morningstar Category in the preceding three-year and five-year periods, respectively. During those periods, there have been between 149 and 192 funds in the Target Date 2040 Morningstar Category.

80. At the beginning of 2015, the assets of the Northern Trust Focus 2040 Fund totaled approximately $20.9 million. **Table 7.c** below shows the hypothetical growth of $20.9 million invested in the Northern Trust Focus 2040 Fund and each of the Comparator Funds from January 1, 2015 through December 31, 2020. As the table makes clear, Defendants' failure to replace the Northern Trust Focus 2040 Fund with one of the Comparator Funds in 2015 resulted in the Plan losing upwards of $4.5 million in lost savings.

**Table 7.c**

| Fund Name | Compounded Performance | Annualized Performance | Growth of | $20,989,947.00 |
|---|---|---|---|---|
| Northern Trust Focus 2040 Fund W | 63.25% | 8.51% | $ | 34,266,709.25 |
| | | | | |
| Vanguard Target Retirement 2040 | 71.08% | 9.36% | $ | 35,909,297.09 |
| +/- Northern Trust | -7.83% | -0.85% | $ | (1,642,587.84) |
| | | | | |
| T. Rowe Price Target 2040 | 79.56% | 10.25% | $ | 37,689,704.46 |
| +/- Northern Trust | -16.31% | -1.74% | $ | (3,422,995.21) |
| | | | | |
| American Fund 2040 | 85.13% | 10.81% | $ | 38,859,364.74 |
| +/- Northern Trust | -21.88% | -2.30% | $ | (4,592,655.49) |

viii. **Northern Trust Focus 2045 Fund:**

81. The Northern Trust Focus 2045 Fund's underperformance dates back to its inception. Table 8.a, below, illustrates nearly four years of underperformance leading up to the Class Period, relative to benchmark indexes and Comparator Funds.

**Table 8.a**

2010-2013

| Fund | Cumulative | Annualized |
|------|-----------|-----------|
| NT Focus 2045 | 55.15% | 11.87% |
| Vanguard 2045 | 66.83% | 13.96% |
| T Rowe Price 2045 | 72.79% | 14.98% |
| American Funds 2045 | 69.28% | 14.38% |
| S&P 2045 TD BM | 65.39% | 13.71% |
| DJ US 2045 TD BM | 86.93% | 17.32% |

82.    A prudent fiduciary would have used the indexes and Comparator Funds listed in **Table 8.a** above as benchmarks for the performance of the Northern Trust Focus 2045 Fund. Again, one of Northern Trust's largest client retirement plans uses the S&P Target Date 2045 as the benchmark index for the Northern Trust Focus 2045 Fund. Morningstar also places the Northern Trust Focus 2045 Fund in its Target Date 2045 Morningstar Category along with the Comparator Funds managed by American Funds, T. Rowe Price, and Vanguard.

83.    Despite four years of substantial underperformance, Defendants did not remove the Northern Trust Focus 2045 Fund from the Plan. Predictably, the underperformance continued throughout the Class Period.

84.    **Table 8.b** below illustrates the underperformance of the Northern Trust Focus 2045 Fund from January 1, 2015 through December 31, 2020 on an annualized basis. Furthermore, the differences in annual performance are even more pronounced when compounded over time. Thus, as the table demonstrates, the Northern Trust Focus 2045 Fund also significantly underperformed the benchmark indexes and Comparator Funds on a cumulative basis.

**Table 8.b**

| Fund | 2015 | 2016 | 2017 | 2018 | 2019 | 2020 | Cumulative Compounded | Under(-)/Out (+) Performace |
|---|---|---|---|---|---|---|---|---|
| NT Focus 2045 | -2.95% | 8.57% | 19.79% | -8.13% | 23.73% | 13.63% | 63.03% | |
| Vanguard 2045 | -1.58% | 8.88% | 21.45% | -7.89% | 24.92% | 16.17% | 73.97% | -10.94% |
| T Rowe Price 2045 | 0.16% | 7.70% | 22.40% | -7.57% | 25.39% | 18.65% | 81.57% | -18.53% |
| American Funds 2045 | 0.65% | 8.29% | 22.35% | -5.54% | 24.71% | 19.21% | 87.27% | -24.24% |
| S&P 2045 TD BM | -0.45% | 9.53% | 19.54% | -7.73% | 24.02% | 18.40% | 76.60% | -13.57% |
| DJ US 2045 TD BM | -0.86% | 12.05% | 17.68% | -5.98% | 26.49% | 14.18% | 77.52% | -14.49% |

85.     Put in a broader context, according to Morningstar, the Northern Trust Focus 2045 Fund performed worse than 78% and 95% of all funds in the Target Date 2045 Morningstar Category in the preceding three-year and five-year periods, respectively.  During those periods, there have been between 148 and 188 funds in the Target Date 2045 Morningstar Category.

86.     At the beginning of 2015, the assets of the Northern Trust Focus 2045 Trust Fund totaled approximately $15.5 million.  **Table 8.c** below shows the hypothetical growth of $15.5 million invested in the Northern Trust Focus 2045 Fund and each of the comparator funds from January 1, 2015 through December 31, 2020.  As the table makes clear, Defendants' failure to replace the Northern Trust Focus 2045 Fund with one of the Comparator Funds in 2015 resulted in the Plan losing upwards of $3.7 million in retirement savings.

**Table 8.c**

| Fund Name | Compounded Performance | Annualized Performance | Growth of | $15,544,379.00 |
|---|---|---|---|---|
| Northern Trust Focus 2045 Fund W | 63.03% | 8.49% | $ | 25,342,009.83 |
| | | | | |
| Vanguard Target Retirement 2045 | 73.97% | 9.67% | $ | 27,042,492.57 |
| +/- Northern Trust | -10.94% | -1.18% | $ | (1,700,482.74) |
| | | | | |
| T. Rowe Price Target 2045 | 81.57% | 10.45% | $ | 28,223,157.69 |
| +/- Northern Trust | -18.53% | -1.96% | $ | (2,881,147.86) |
| | | | | |
| American Fund 2045 | 87.27% | 11.02% | $ | 29,109,851.51 |
| +/- Northern Trust | -24.24% | -2.54% | $ | (3,767,841.68) |

28

ix.     **Northern Trust Focus 2050 Fund:**

87.     The Northern Trust Focus 2050 Fund's underperformance dates to its inception. **Table 9.a** below illustrates nearly four years of underperformance leading up to the Class Period, relative to benchmark indexes and Comparator Funds.

**Table 9.a**

<u>2010-2013</u>

| Fund | Cumulative | Annualized |
|------|-----------|-----------|
| NT Focus 2050 | 55.22% | 11.88% |
| Vanguard 2050 | 66.85% | 13.96% |
| T Rowe Price 2050 | 72.84% | 14.99% |
| American Funds 2050 | 69.37% | 14.40% |
| S&P 2050 TD BM | Not Available | |
| DJ US 2050 TD BM | 87.21% | 17.36% |

88.     A prudent fiduciary would have used the indexes and Comparator Funds listed in **Table 9.a** above as benchmarks for the performance of the Northern Trust Focus 2050 Fund. Morningstar also places the Northern Trust Focus 2050 Fund in its Target Date 2050 Morningstar Category along with the Comparator Funds managed by American Funds, T. Rowe Price, and Vanguard.

89.     Despite four years of substantial underperformance, Defendants did not remove the Northern Trust Focus 2050 Fund from the Plan. Predictably, the underperformance continued throughout the Class Period.

90.     **Table 9.b** below illustrates the underperformance of the Northern Trust Focus 2050 Trust from January 1, 2015 through December 31, 2020 on an annualized basis. Furthermore, the differences in annual performance are even more pronounced when compounded over time. Thus, as the table demonstrates, the Northern Trust Focus 2050 Trust also significantly underperformed the benchmark indexes and Comparator Funds on a cumulative basis.

29

**Table 9.b**

| Fund | 2015 | 2016 | 2017 | 2018 | 2019 | 2020 | Cumulative Compounded | Under(-)/Out (+) Performance |
|------|------|------|------|------|------|------|------|------|
| NT Focus 2050 | -2.96% | 8.55% | 19.61% | -8.03% | 23.57% | 13.52% | 62.55% | |
| Vanguard 2050 | -1.58% | 8.87% | 21.39% | -7.90% | 24.97% | 16.33% | 74.16% | -11.62% |
| T Rowe Price 2050 | 0.20% | 7.70% | 22.35% | -7.58% | 25.32% | 18.68% | 81.49% | -18.95% |
| American Funds 2050 | 0.66% | 8.33% | 22.58% | -5.62% | 24.97% | 19.42% | 88.27% | -25.72% |
| S&P 2050 TD BM | -0.46% | 9.74% | 20.20% | -7.95% | 24.33% | 18.40% | 77.91% | -15.36% |
| DJ US 2050 TD BM | -0.91% | 12.38% | 18.25% | -6.39% | 27.56% | 14.78% | 80.47% | -17.92% |

91.     Put in a broader context, according to Morningstar, the Northern Trust Focus 2050 Fund performed worse than 74% and 90% of all funds in the Target Date 2050 Morningstar Category in the preceding three-year and five-year periods, respectively.  During those periods, there have been between 149 and 192 funds in the Target Date 2050 Morningstar Category.

92.     At the beginning of 2015, the assets of the Northern Trust Focus 2050 Fund totaled approximately $9.5 million.  **Table 9.c** below shows the hypothetical growth of $9.5 million invested in the Northern Trust Focus 2050 Fund and each of the comparator funds from January 1, 2015 through December 31, 2020.  As the table makes clear, Defendants' failure to replace the Northern Trust Focus 2050 Fund with one of the Comparator Funds in 2015 resulted in the Plan losing upwards of $2.4 million in retirement savings.

**Table 9.c**

| Fund Name | Compounded Performance | Annualized Performance | Growth of | $ 9,577,445.00 |
|-----------|------------------------|------------------------|-----------|----------------|
| Northern Trust Focus 2050 Fund W | 62.55% | 8.43% | $ | 15,567,876.88 |
| | | | | |
| Vanguard Target Retirement 2050 | 74.16% | 9.69% | $ | 16,680,331.86 |
| +/- Northern Trust | -11.62% | -1.25% | $ | (1,112,454.98) |
| | | | | |
| T. Rowe Price Target 2050 | 81.49% | 10.44% | $ | 17,382,488.04 |
| +/- Northern Trust | -18.95% | -2.01% | $ | (1,814,611.16) |
| | | | | |
| American Fund 2050 | 88.27% | 11.12% | $ | 18,031,641.50 |
| +/- Northern Trust | -25.72% | -2.69% | $ | (2,463,764.62) |

30

x.  **Northern Trust Focus 2055 Fund:**

93.     The Northern Trust Focus 2055 Fund's underperformance dates back to its inception. **Table 10.a** below illustrates nearly four years of underperformance leading up to the Class Period, relative to a benchmark index and Comparator Funds.

**Table 10.a**

2010-2013

| Fund | Cumulative | Annualized |
|------|------------|------------|
| NT Focus 2055 | 38.72% | 10.89% |
| Vanguard 2055 | 48.76% | 13.36% |
| T Rowe Price 2055 | 51.88% | 14.11% |
| American Funds 2055 | 50.24% | 13.72% |
| S&P 2055 TD BM | Not Available | |
| DJ US 2055 TD BM | 63.00% | 16.68% |

94.     A prudent fiduciary would have used the indexes and Comparator Funds listed in **Table 10.a** (above) and **Table 10.b** (below) as benchmarks for the performance of the Northern Trust Focus 2050 Fund.  Morningstar also places the Northern Trust Focus 2055 Fund in its Target Date 2055 Morningstar Category along with the Comparator Funds managed by American Funds, T. Rowe Price, and Vanguard.

95.     Despite four years of substantial underperformance, Defendants did not remove the Northern Trust Focus 2055 Fund from the Plan.  Predictably, the underperformance continued throughout the Class Period.

96.     **Table 10.b** below illustrates the underperformance of the Northern Trust Focus 2055 Fund from January 1, 2015 through December 31, 2020 on an annualized basis.  Furthermore, the differences in annual performance are even more pronounced when compounded over time. As the table demonstrates, the Northern Trust Focus 2055 Fund also significantly underperformed the benchmark indexes and Comparator Funds on a cumulative basis.

**Table 10.b**

| Fund | 2015 | 2016 | 2017 | 2018 | 2019 | 2020 | Cumulative Compounded | Under(-)/Out (+) Performace |
|---|---|---|---|---|---|---|---|---|
| NT Focus 2055 | -2.92% | 8.53% | 19.42% | -7.97% | 23.43% | 13.56% | 62.31% | |
| Vanguard 2055 | -1.72% | 8.87% | 21.37% | -7.87% | 24.97% | 16.36% | 73.96% | -11.66% |
| T Rowe Price 2055 | 0.19% | 7.74% | 22.32% | -7.61% | 25.36% | 18.55% | 81.28% | -18.97% |
| American Funds 2055 | 0.65% | 8.28% | 22.63% | -5.65% | 25.02% | 19.39% | 88.21% | -25.91% |
| S&P 2055 TD BM | -0.52% | 9.94% | 20.48% | -7.98% | 24.51% | 18.40% | 78.76% | -16.46% |
| DJ US 2055 TD BM | -0.91% | 12.39% | 18.28% | -6.50% | 27.81% | 15.03% | 81.08% | -18.78% |

97.     Put in a broader context, according to Morningstar, the Northern Trust Focus 2055 Fund performed worse than 84% and 98% of funds in the Target Date 2055 Morningstar Category in the preceding three-year and five-year periods, respectively. During those periods, there have been between 145 and 188 funds in the Target Date 2055 Morningstar Category.

98.     At the beginning of 2015, the assets of the Northern Trust Focus 2055 Fund totaled approximately $3.0 million. **Table 10.c** below shows the hypothetical growth of $3.0 million invested in the Northern Trust Focus 2055 Fund and each of the Comparator Funds from January 1, 2015 through December 41, 2020. As the table makes clear, Defendants' failure to replace the Northern Trust Focus 2055 Fund with one of the Comparator Funds in 2015 resulted in the Plan losing upwards of $785,000 in retirement savings.

**Table 10.c**

| Fund Name | Compounded Performance | Annualized Performance | Growth of | $ 3,031,281.00 |
|---|---|---|---|---|
| Northern Trust Focus 2055 Fund W | 62.31% | 8.41% | $ | 4,919,923.72 |
| | | | | |
| Vanguard Target Retirement 2055 | 73.96% | 9.67% | $ | 5,273,359.23 |
| +/- Northern Trust | -11.66% | -1.26% | $ | (353,435.50) |
| | | | | |
| T. Rowe Price Target 2055 | 81.28% | 10.42% | $ | 5,494,960.90 |
| +/- Northern Trust | -18.97% | -2.02% | $ | (575,037.18) |
| | | | | |
| American Fund 2055 | 88.21% | 11.12% | $ | 5,705,182.87 |
| +/- Northern Trust | -25.91% | -2.71% | $ | (785,259.14) |

## CLASS ACTION ALLEGATIONS

99.     ERISA §502(a)(2), 29 U.S.C. §1132(a)(2), authorizes any participant or beneficiary of a retirement plan to bring an action individually on behalf of that plan to enforce a breaching fiduciary's liability to the plan under 29 U.S.C. §1109(a).  Such claims are brought "in a representative capacity on behalf of the plan as a whole." *Massachusetts Mut. Life Ins. Co. v. Russell*, 473 U.S. 134, 142 (1985).

100.     The claims set forth in this action meet the requirements of Rule 23, and class certification would be appropriate with respect to the following class (the "Class"):

> All participants and beneficiaries of the Plan who invested in any of Northern Trust Focus Target Retirement Trusts from June 1, 2015 through the present, excluding Defendants, any of their directors, and any officers or employees of Defendants with responsibility for the Plan's investment or administrative function.

101.     The Class includes tens of thousands of members and is so large that joinder of all its members is impracticable.

102.     There are numerous questions of law and fact common to the Class because the claims asserted herein arise out of a singular course of common conduct by Defendants that affected all Class members through their participation in the Plan in precisely the same way, in violation of precisely the same legal duties.  Common questions of law and fact include the following, without limitation:

•     Whether Defendants employed an imprudent process in selecting and monitoring the Plan's investments;

•     Whether Defendants caused the Plan to invest its assets in imprudent funds to the exclusion of other available alternatives;

•     Whether Defendants breached their fiduciary duties to the Plan by employing an imprudent process for selecting and monitoring the Plan's investment options;

- Whether the Plan sustained losses resulting from each breach of fiduciary duty, and if so, the amount of those losses;

- What Plan-wide equitable and other relief the Court should impose in light of Defendants' breaches of fiduciary duties.

103. There are no substantial individual questions among Class members on the merits of this action.

104. Plaintiffs' claims are typical of the claims of the Class because Plaintiffs were participants during the time period at issue in this action and all participants in the Plan were harmed by Defendants' misconduct.

105. Plaintiffs are adequate representatives of the Class because they were participants in the Plan during the Class Period, have no interest that conflicts with the Class, are committed to the vigorous representation of the Class, and have engaged experienced and competent attorneys to represent the Class.

106. Certification of the claims asserted herein would be appropriate under Rule 23(b)(1)(A) or (B). Prosecution of separate actions for these breaches of fiduciary duties by individual participants and beneficiaries would create the risk of inconsistent or varying adjudications that would establish incompatible standards of conduct for Defendants with respect to the discharge of their fiduciary duties to the Plan and personal liability to the Plan under 29 U.S.C. §1109(a). In addition, an adjudication of the claims asserted herein by any Plan participant would, as a practical matter, be dispositive of the interests of all other Plan participants. As this Court has recognized several times, "[b]ecause of ERISA's distinctive 'representative capacity' and remedial provisions, ERISA litigation of this nature presents a paradigmatic example of a [Rule 23](b)(1) class." *Neil v. Zell*, 275 F.R.D. 256, 267 (N.D. Ill. 2011).

107. Alternatively, this action should be certified as a class under Rule 23(b)(3) if it is not certified under Rule 23(b)(1)(A) or (B). A class action is the superior method for the fair and efficient adjudication of this controversy because common questions of law and fact predominate over questions affecting only individual class members, and because, in light of the representative nature of the claims at issue, a class action would be superior to other available methods for fairly and efficiently adjudicating the controversy.

108. Plaintiffs' counsel, Peiffer Wolf Carr Kane & Conway, LLP, Law Offices of Michael M. Mulder, and Scott+Scott Attorneys at Law LLP will fairly and adequately represent the interests of the Class and is best able to represent the interests of the Class under Rule 23(g).

## CAUSES OF ACTION

### COUNT I
**Breach of Fiduciary Duty of Prudence**
**(Violation of ERISA, 29 U.S.C. §1104)**
**(Against All Defendants)**

109. Plaintiffs repeat and reallege each of the allegations in the foregoing paragraphs as if fully set forth herein.

110. As alleged above, the Defendants were fiduciaries of the Plan.

111. ERISA §404, 29 U.S.C. §1104, requires ERISA fiduciaries to perform their fiduciary duties and responsibilities prudently, as would an experienced ERISA fiduciary, and loyally, exclusively in the interest of the plan and its participants for the purpose of providing benefits.

112. Defendants' fiduciary duties include administering the Plan with the care, skill, diligence, and prudence required by ERISA. As such, Defendants must evaluate and monitor the Plan's investments on an ongoing basis, eliminate imprudent investments, and take all necessary steps to ensure the Plan's assets are invested prudently.

113.    As the Supreme Court confirmed, ERISA's "duty of prudence involves a continuing duty to monitor investments and remove imprudent ones[.]" *Tibble*, 575 U.S. at 523.

114.    Defendants breached their fiduciary duties through their imprudent process for investigating, evaluating, and monitoring investments.  The faulty process resulted in a plan loaded with the Northern Trust Focus Funds that have exhibited chronic poor performance for almost a decade.  Defendants failed to remove the Funds despite their historical underperformance relative to other target date collective investment trusts and relevant benchmark indexes.

115.    By failing to adequately consider better-performing investment products for the Plan, Defendants failed to discharge their duties with the care, skill, prudence, and diligence that a prudent fiduciary acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of like character and with like aims.

116.    Defendants' breach of fiduciary duty has substantially impaired the Plan's use, its value, and its investment performance for all Class Members.

117.    As a direct and proximate result of Defendants' breaches of fiduciary duty, the Plan and each of its participants who invested in the Funds have suffered tens of millions of dollars of damages and lost-opportunity costs which continue to accrue.

118.    Defendants' actions, and failures to act, violated the duties of prudence contained in ERISA §404(a).

119.    ERISA §502(a)(2) permits plan participants, such as Plaintiffs, to bring civil actions for "appropriate relief" under ERISA §409.

120.    Under ERISA §409(a), 29 U.S.C. §1109(a), a fiduciary that violates any of ERISA's duties, including ERISA § 404(a), must "make good" to the plan the losses to the plan

resulting from its violations, and is "subject to such other equitable or remedial relief as the court may deem appropriate."

121.    Thus, under ERISA §§502(a)(2) and 409(a), 29 U.S.C. §§1132(a)(2) and 1109(a), Defendants are liable, in an amount to be determined at trial, for the losses to the Plan caused by their violations of ERISA § 404(a), and are "subject to such other equitable or remedial relief" as the Court "may deem appropriate."

122.    Under ERISA § 502(a)(3), Defendants are also subject to appropriate equitable relief including, but not limited to, constructive trust and equitable surcharge.

### COUNT II
### Breach of Co-Fiduciary Duty
### (Violation of ERISA § 405(a)(1)-(3), 29 U.S.C. § 1105(a)(1)-(3))
### (Against All Defendants)

123.    Plaintiffs repeat and reallege each of the allegations in the foregoing paragraphs as if fully set forth herein.

124.    A fiduciary with respect to a plan is liable for the breach "of another fiduciary" for the same plan if "he participates knowingly in, or knowingly undertakes to conceal, an act or omissions of such other fiduciary, knowing such act or omission is a breach," ERISA §405(a)(1), or if, "by his failure to comply with [his fiduciary duties] in the administration of his specific responsibilities which give rise to his status as a fiduciary, he has enabled such other fiduciary to commit a breach," ERISA §405(a)(2), or if "he has knowledge of a breach by some other fiduciary, unless he makes reasonable efforts under the circumstances to remedy the breach." ERISA §405(a)(3).

125.    Pursuant to §405 of ERISA, 29 U.S.C. §1105, Defendants are also liable as co-fiduciaries with respect to the above-described violations because they participated knowingly in their co-fiduciaries' breaches; enabled other fiduciaries to violate ERISA by virtue of their own

breaches of fiduciary duty; knowingly undertook to conceal those breaches; enabled their co-fiduciaries to commit the breaches and failed to make any reasonable efforts to remedy the breaches.

126.     ERISA §502(a)(2) permits plan participants, such as Plaintiffs, to bring civil actions for "appropriate relief" under ERISA §409.

127.     Under ERISA §409(a), a fiduciary that violates any of ERISA's duties, including ERISA §405(a)(1), (a)(2) and (a)(3), must "make good" to the Plan the losses to the Plan resulting from its violations of ERISA §405(a)(1), (a)(2) and (a)(3), and is "subject to such other equitable or remedial relief as the court may deem appropriate."

128.     Thus, Defendants are liable, in an amount to be determined at trial, for the losses to the Plan caused by their violations of ERISA §405(a)(1), (a)(2) and (a)(3), and are "subject to such other equitable or remedial relief" as the Court "may deem appropriate."

129.     Under ERISA §502(a)(3), Defendants are also subject to appropriate equitable relief including, but not limited to, constructive trust and equitable surcharge.

**COUNT III**
**Failure to Monitor**
**(Against All Defendants)**

130.     Plaintiffs repeat and reallege each of the allegations in the foregoing paragraphs as if fully set forth herein.

131.     Defendants had a duty to monitor the performance of each individual to whom they delegated any fiduciary responsibilities.

132.     A monitoring fiduciary must ensure that the monitored fiduciaries are performing their fiduciary obligations, including those with respect to the investment and holding of plan

assets, and must take prompt and effective action to protect the plan and participants when they are not.

133.    To the extent any of the Defendant's fiduciary responsibilities were delegated to another fiduciary, the Defendant's monitoring duty included an obligation to ensure that any delegated tasks were being performed prudently and loyally.

134.    Defendants breached their fiduciary monitoring duties by, among other things:

a.    failing to monitor their appointees, to evaluate their performance, or to have a system in place for doing so, and standing idly by as the Plan suffered enormous losses as a result of their appointees' imprudent actions and omissions with respect to the Plan;

b.    failing to monitor their appointees' fiduciary process, which would have alerted any prudent fiduciary to the potential breach because of the imprudent investment options in violation of ERISA;

c.    failing to ensure that the monitored fiduciaries had a prudent process in place for evaluating and ensuring that the Funds were prudent; and

d.    failing to remove appointees whose performance was inadequate in that they continued to allow imprudent investment options to remain in the Plan to the detriment of Plan participants' retirement savings.

135.    Each fiduciary who delegated its fiduciary responsibilities likewise breached its fiduciary monitoring duty by, among other things:

a.    failing to monitor its appointees, to evaluate their performance, or to have a system in place for doing so, and standing idly by as the Plan suffered enormous losses as a result of its appointees' imprudent actions and omissions with respect to the Plan;

b.      failing to monitor its appointees' fiduciary process, which would have alerted any prudent fiduciary to the potential breach because of the imprudent investment options in violation of ERISA;

c.      failing to implement a process to ensure that the appointees monitored the performance of Plan investments; and

d.      failing to remove appointees whose performance was inadequate in that they continued to allow imprudent investment options to remain in the Plan, all to the detriment of Plan participants' retirement savings.

136.    As a direct result of these breaches of the fiduciary duty to monitor, the Plan suffered substantial losses.  Had Defendants and the other delegating fiduciaries prudently discharged their fiduciary monitoring duties, the Plan would not have suffered these losses.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, on behalf of the Plan and all similarly situated Plan participants and beneficiaries, pray for judgment as follows:

A.      Certify this action as a class action pursuant to Fed. R. Civ. P. 23(a), appoint Plaintiffs as the class representatives, and appoint Peiffer Wolf Carr Kane & Conway, LLP, the Law Offices of Michael M. Mulder, and Scott+Scott Attorneys at Law LLP as Class Counsel;

B.      Declare that Defendants breached their fiduciary duties to the Plan;

C.      Enjoin Defendants from further violations of their fiduciary responsibilities, obligations, and duties and from further engaging in transactions prohibited by ERISA;

D.      Order that Defendants make good to the Plan the losses resulting from their serial breaches of fiduciary duty;

E.      Order that Defendants disgorge any profits that they have made through their breaches of fiduciary duty and impose a constructive trust and/or equitable lien on any funds received by Defendants therefrom;

F.      Order any other available equitable relief, or remedies, including but not limited to, the imposition of a surcharge, the restoration of the Plan to the position they would have been but for the breaches of fiduciary duty; and any other kind of relief and/or damages available pursuant to ERISA §§ 409 and 502(a)(2) and (3);

G.      Reform the Plan to include only prudent investments;

H.      Award Plaintiffs reasonable attorneys' fees and costs of suit incurred herein pursuant to ERISA § 502(g), 29 U.S.C. § 1132(g), and/or for the benefit obtained for the Plan;

I.      Order Defendants to pay interest to the extent it is allowed by law; and

J.      Award such other and further relief as the Court deems equitable and just.

Dated: June 1, 2021                          Respectfully submitted,

                                              _/s/ Michael M. Mulder_____
                                             Michael M. Mulder (Bar No. 1984268)
                                             Elena N. Liveris (Bar No. 6297048)
                                             THE LAW OFFICES OF MICHAEL M.
                                             MULDER
                                             1603 Orrington, Suite 600
                                             Evanston, IL 60201
                                             Telephone: (312) 263-0272
                                             mmmulder@mmulderlaw.com
                                             eliveris@mmulderlaw.com

                                             Garrett W. Wotkyns (*pro hac vice forthcoming*)
                                             SCOTT+SCOTT ATTORNEYS AT LAW LLP
                                             8068 East Del Acero Drive
                                             Scottsdale, AZ 85258
                                             Telephone: (480) 889-3514
                                             gwotkyns@scott-scott.com

Geoffrey M. Johnson (*pro hac vice forthcoming*)
SCOTT+SCOTT ATTORNEYS AT LAW LLP
12434 Cedar Road, Suite 12
Cleveland Heights, OH 44106
Telephone: (216) 229-6088
gjohnson@scott-scott.com

Tanya Korkhov
Jing-Li Yu (*pro hac vice forthcoming*)
SCOTT+SCOTT ATTORNEYS AT LAW LLP
The Helmsley Building
230 Park Avenue, 17th Floor
New York, NY 10169
Telephone: (212) 223-6444
tkorkhov@scott-scott.com
jyu@scott-scott.com

Joseph C. Peiffer (*pro hac vice forthcoming*)
Daniel J. Carr (*pro hac vice forthcoming*)
Kevin P. Conway (*pro hac vice forthcoming*)
Jamie L. Falgout (*pro hac vice forthcoming*)
PEIFFER WOLF CARR KANE & CONWAY LLP
1519 Robert C. Blakes Sr. Drive
New Orleans, LA 70130
Telephone: (504) 523-2434
jpeiffer@peifferwolf.com
dcarr@peifferwolf.com
kconway@peifferwolf.com
jfalgout@peifferwolf.om

*Attorneys for Plaintiffs*