**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| DENIS J. CONLON and NICOLE TRAVIS, Individually, and on Behalf of All Others Similarly Situated,<br><br>     Plaintiffs,<br><br>  v.<br><br>THE NORTHERN TRUST COMPANY; THE NORTHERN TRUST COMPANY EMPLOYEE BENEFIT ADMINISTRATIVE COMMITTEE; and DOES 1-30,<br><br>     Defendants. | Case No. 1:21-cv-2940<br><br>JUDGE CHARLES R. NORGLE |

**DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF THEIR
MOTION TO DISMISS THE COMPLAINT**

Plaintiffs Denis Conlon and Nicole Travis attempt to bring claims that the Seventh Circuit has made clear do not add up to a breach of fiduciary duty under the Employee Retirement Income Security Act of 1974 ("ERISA").  Plaintiffs allege that defendants breached their fiduciary duties based solely on allegations that eleven target date funds offered in the Northern Trust Company's 401(k) plan "underperformed" when compared with other funds identified by plaintiffs.  But the recent Seventh Circuit decision in *Divane* squarely rejects plaintiffs' theory that such allegations suggest an imprudent fiduciary process.  *Divane v. Northwestern Univ.*, 953 F.3d 980, 991–92 (7th Cir. 2020), *petition for cert. granted sub nom Hughes v. Northwestern Univ.*, No. 19-1401, 2021 WL 2742780 (U.S. July 2, 2021) (finding that allegations of underperformance alone are insufficient to plead breach of a fiduciary's duty of prudence).  Rather, *Divane* requires plaintiffs to plead facts showing that defendants do not have "prudent explanations for the challenged fiduciary decisions involving alleged losses or underperformance"—facts that are absent from plaintiffs' complaint.  *Id.* at 992.  Thus, all of plaintiffs' claims should be dismissed for failure to state a claim.

In addition, plaintiffs invested in only two of the eleven funds they attack.  Their claims arising out of the nine funds in which they did not invest should be dismissed for the additional reason that plaintiffs lack standing to challenge their inclusion as plan investment options.

## BACKGROUND

Plaintiffs allege that they are participants in The Northern Trust Company Thrift-Incentive Plan (the "Plan"), which is a 401(k) profit-sharing plan.[1]  Compl. ¶¶ 9–10, 22.  Defendant The Northern Trust Company is the Plan sponsor and a named fiduciary with responsibility for administration and management of the Plan.  *Id.* ¶¶ 11, 22.  Defendant The Northern Trust Company Employee Benefit Administrative Committee is a fiduciary and the

---

[1] For purposes of this motion, defendants treat plaintiffs' factual allegations as true.

Plan's named administrator. *Id.* ¶¶ 12, 22. Plaintiffs also name as defendants unidentified members of the Benefit Committee, as well as any individuals to whom the committee delegated fiduciary functions.[2] *Id.* ¶ 13.

The Plan manages over $2.5 billion in assets and provides for retirement income for tens of thousands of current and former Northern Trust employees. *Id.* ¶¶ 24, 101. Like many 401(k) plans, the Plan offers participants a range of different investment options that include, among others, the Northern Trust Focus Target Retirement Trusts (the "Focus Funds"). *Id.* ¶ 2. The Focus Funds are target date funds. They offer each participant the ability to invest in a diversified portfolio of underlying investments tailored to his or her expected retirement date by selecting a single fund. *Id.* ¶ 3. "Target date funds have become increasingly popular retirement savings options." *Id.* For example, as of the end of 2016, "21% of all 401(k) assets in the United States" were held in target date funds. *Id.*

During the relevant period (which plaintiffs identify as June 1, 2015 through the present), the Plan offered participants the option to invest in eleven different Focus Funds.[3] *Id.* ¶¶ 7, 27, 29. Plaintiff Conlon alleges that he invested in the Northern Trust Focus 2020 Fund. *Id.* ¶ 9. Plaintiff Travis alleges that she invested in the Northern Trust Focus 2060 Fund. *Id.* ¶ 10. Neither plaintiff purports to have invested in any of the other Focus Funds. *See generally id.*

Although they collectively only invested in two, plaintiffs challenge the performance of all eleven Focus Funds, contrasting each with a "comparator" fund that they allege analyses by Morningstar, Inc. show performed better than the Focus Funds. *Id.* ¶¶ 29, 32–98. Plaintiffs

---

[2] Defendants The Northern Trust Company, The Northern Trust Company Employee Benefit Administrative Committee, and unnamed committee members are collectively referenced herein as "Northern Trust."

[3] The eleven Focus Funds correspond with target retirement dates beginning in 2010 with the Northern Trust Focus 2010 Fund and extending through 2060 with the Northern Trust Focus 2060 Fund. Compl. ¶¶ 27, 29.

assert that Northern Trust's decision to select and retain the Focus Funds cost Plan participants "tens of millions of dollars in retirement savings since 2015." *Id.* ¶ 38.

Based on these allegations, plaintiffs assert three claims for relief under ERISA. In Count I, plaintiffs allege that defendants breached their fiduciary duty of prudence in violation of ERISA § 404 through their "investigating, evaluating, and monitoring" of the Focus Funds, including allegedly failing to remove the Focus Funds and to "adequately consider better-performing investment products for the Plan." *Id.* ¶¶ 109–22. In Count II, plaintiffs bring a claim for breach of co-fiduciary duty under ERISA § 405, alleging defendants "participated knowingly in their co-fiduciaries' breaches; enabled other fiduciaries to violate ERISA by virtue of their own breaches of fiduciary duty; knowingly undertook to conceal those breaches; enabled their co-fiduciaries to commit the breaches and failed to make any reasonable efforts to remedy the breaches." *Id.* ¶¶ 123–29. In Count III, plaintiffs assert that defendants breached their duty to monitor the performance of individuals to whom they delegated fiduciary duties and those appointees' fiduciary processes. *Id.* ¶¶ 130–36. Plaintiffs bring their complaint on behalf of a class of similarly situated Plan participants and beneficiaries, and seek various forms of relief. *Id.* at pp. 40–41.

## ARGUMENT

Plaintiffs must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Doing so requires plaintiffs to include "allegations plausibly suggesting (not merely consistent with)" their legal assertions. *Id.* at 557. Although this Court accepts complaint allegations as true on a motion to dismiss, this principle "is inapplicable to legal conclusions," and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S.

662, 678 (2009) (citing *Twombly*, 550 U.S. at 555). Because plaintiffs have failed to satisfy this pleading burden, their complaint should be dismissed in its entirety.

## I. Plaintiffs Do Not State A Claim For Breach Of Fiduciary Duty In Count I.

To state a claim for breach of fiduciary duty under ERISA, a plaintiff must allege that the defendants are plan fiduciaries, that they breached their fiduciary duties, and that their breach resulted in harm to the plaintiff. *Brosted v. Unum Life Ins. Co. of Am.*, 421 F.3d 459, 465 (7th Cir. 2005). To make out a claim for breach of the duty of prudence in connection with an investment decision, plaintiffs must plead more than fund underperformance. The Seventh Circuit recently confirmed as much in *Divane v. Northwestern University*, when it affirmed the lower court's dismissal of fiduciary breach claims alleging, among other things, poor performance. 953 F.3d at 991–92. With respect to the *Divane* plan's alleged underperformance, the court observed that "the ultimate outcome of an investment is not proof of imprudence." *Id.* at 992 (quoting *DeBruyne v. Equitable Life Assurance Soc'y of the U.S.*, 920 F.2d 457, 465 (7th Cir. 1990) and citing *Jenkins v. Yager*, 444 F.3d 916, 926 (7th Cir. 2006)).[4] Indeed, "investment losses are not proof that [a fiduciary] violated his duty of care." *Jenkins*, 444 F.3d at 926.

Northern Trust recognizes that, on March 16, 2021 (prior to the Seventh Circuit's decision), this Court addressed the lower court's order in *Divane*,[5] noting it was non-binding precedent and that this Court disagreed "with the notion that a fiduciary can avoid a claim of imprudence based on fund underperformance as a matter of law at this stage so long as it gave plan participants various investment options." *Brown-Davis v. Walgreen Co.*, No. 1:19-cv-05392, 2020 WL 8921399, *3 (N.D. Ill. March 16, 2020). Northern Trust also recognizes that

---

[4] Counsel for Northern Trust represented the Northwestern defendants in the *Divane* litigation before the district court, as well as the Seventh Circuit, and continues to represent Northwestern before the Supreme Court.
[5] *See Divane v. Northwestern Univ.*, No. 16 C 8157, 2018 WL 2388118 (N.D. Ill. May 25, 2018).

4

the claims at issue in *Brown-Davis* are similar to those pled here, including that they also involve the Focus Funds.  On March 25, 2020, however, the Seventh Circuit affirmed the lower court's dismissal of the *Divane* complaint, finding in part that fund underperformance is insufficient to make out a claim for breach of the duty of prudence.  *Divane*, 953 F.3d at 992.

The Seventh Circuit's decision confirms that investment performance allegations like those pled by plaintiffs do not rise to the level of clarity and specificity required for breach of fiduciary duty claims where "the content of the duty of prudence turns on the circumstances" and requires a "careful, context-sensitive scrutiny of a complaint's allegations."  *Fifth Third Bancorp v. Dudenhoeffer*, 573 U.S. 409, 425 (2014) (internal quotation marks omitted).  "Importantly, the prudence standard is process[]-based, not outcome-based.  Thus, a Plan's mere underperformance is not actionable so long as the fund administrators acted prudently."  *Martin v. CareerBuilder, LLC*, No. 19-cv-6463, 2020 WL 3578022, *4 (N.D. Ill. July 1, 2020) (citing *Divane*, 953 F.3d at 9[9]2); *see also Loomis v. Exelon Corp.*, 658 F.3d 667, 672–73 (7th Cir. 2011) (affirming dismissal of breach of fiduciary duty claims).  The Seventh Circuit also has rejected as "paternalistic" the theory that plans should not offer expensive or risky investment options.  *Loomis*, 658 F.3d at 673.

Plaintiffs' breach of fiduciary duty claim here is premised entirely on the same type of post-hoc underperformance allegations that the Seventh Circuit found insufficient in *Divane*. Plaintiffs allege the Focus Funds underperformed in relation to "comparator" funds.  *See* Compl. ¶¶ 29, 32–98.  They allege that this purported underperformance ultimately led to Plan participants losing millions of dollars.  *Id.* ¶ 38.  Similarly, plaintiffs emphasize the purported "chronic poor performance" of the Focus Funds.  *Id.* ¶ 114.  Based on this, plaintiffs allege that

defendants breached their fiduciary duties "[b]y failing to adequately consider better-performing investment products for the Plan." *Id.* ¶ 115.

Plaintiffs do not otherwise plead facts that plausibly suggest Northern Trust acted imprudently. For example, plaintiffs allege defendants breached their fiduciary duties "through their imprudent process for investigating, evaluating, and monitoring investments," but include no allegations about that process. *Id.* ¶ 114. They only reiterate their dissatisfaction with the funds' performance, contending Northern Trust's imprudent process "resulted in a plan loaded with the Northern Trust Focus Funds that have exhibited chronic poor performance for almost a decade." *Id.* Plaintiffs' vague and conclusory allegations about defendants' processes with respect to the Plan do not "raise a right to relief above the speculative level," as they must to survive a motion to dismiss. *Twombly*, 550 U.S. at 555.

Without allegations that speak to actual flawed decision-making, plaintiffs cannot state a claim for breach of ERISA's duty of prudence. Plaintiffs "cannot use ERISA to paternalistically dictate what kinds of investments plan participants make where a range of investment options are on offer." *Martin*, 2020 WL 3578022 at *4. The Seventh Circuit's ruling in *Divane* confirms that what plaintiffs have pled—underperformance—"is not proof of imprudence" and requires dismissal of the complaint. *See Divane*, 953 F.3d at 991–92 (affirming dismissal of claims that fiduciaries violated ERISA's duty of prudence "by providing investment options that were too numerous, too expensive, or underperforming").

## II.     Plaintiffs Do Not State A Claim For Co-fiduciary Liability In Count II.

Plaintiffs' claim for co-fiduciary liability in Count II is dependent on their allegations that defendants breached their fiduciary duties. *See* Compl. ¶ 125. Thus, Count II fails along with Count I. *See Catalfamo v. Sears Holding Corp.*, No. 17-cv-5230, 2018 WL 10560956, *5 (N.D. Ill. Aug. 21, 2018) (dismissing derivative co-fiduciary duty and failure to monitor claims along

with breach of fiduciary duty of prudence claim).

Count II additionally fails to the extent it purports to state a claim for violations of ERISA § 405(a)(1) and (a)(3), both of which require defendants to have had actual knowledge of another fiduciary's alleged breach. *See Keach v. U.S. Trust Co.*, 240 F. Supp. 2d 840, 844 (C.D. Ill. 2002). "It is well-established that actual knowledge by a fiduciary is required in order for co-fiduciary liability to attach under § 405(a)." *Id.*; *see also Gernandt v. SandRidge Energy Inc.*, No. 15-cv-834, 2017 WL 3219490, *11 (W.D. Okla. July 28, 2017) (recognizing same). Specifically, ERISA § 405(a) provides that a fiduciary may be responsible for the breaches of a co-fiduciary in the following circumstances:

> (1) if he participates *knowingly* in, or *knowingly* undertakes to conceal, an act or omission of such other fiduciary, *knowing* such act or omission is a breach;
> . . .
> (3) if he has *knowledge* of a breach by such other fiduciary, unless he makes reasonable efforts under the circumstances to remedy the breach.

29 U.S.C. § 1105(a) (emphasis added).

Plaintiffs fail to state a claim for co-fiduciary liability under § 405(a)(1) and (a)(3). In their complaint, plaintiffs simply repeat, nearly verbatim, the statutory language of § 405(a), and make conclusory allegations that defendants "participated knowingly in their co-fiduciaries' breaches" and "knowingly undertook to conceal those breaches." Compl. ¶ 125. They do not include any factual allegations that the defendants had actual knowledge of the others' alleged breaches and refer to "Defendants" collectively throughout the complaint, without distinction as to each defendant's alleged conduct. Plaintiffs' "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements" are not sufficient, and the Court should dismiss Count II to the extent it brings a claim under subsections (1) and (3) of ERISA § 405(a). *Ashcroft*, 556 U.S. at 678.

7

### III. Plaintiffs Do Not State A Claim For Failure To Monitor In Count III.

In Count III, plaintiffs assert that defendants breached their duty to monitor other Plan fiduciaries. Compl. ¶¶ 134–35. This claim, like plaintiffs' co-fiduciary liability count, is derivative of plaintiffs' claim for breach of fiduciary duty. As a result, plaintiffs' failure to state a claim for breach of fiduciary duty dooms their duty to monitor claim as well. *See Howell v. Motorola, Inc.*, 633 F.3d 552, 563 (7th Cir. 2011); *Catalfamo*, 2018 WL 10560956 at *5.

Plaintiffs' allegations fall short of pleading a claim for failure to monitor in other ways as well. To state such a claim, plaintiffs must allege non-conclusory facts demonstrating that Northern Trust failed in its monitoring *process*. Allegations "only in the most general terms that the [alleged monitoring fiduciaries] breached their duty to monitor" "fail[] *Twombly*'s plausibility requirement." *Neil v. Zell*, 677 F. Supp. 2d 1010, 1024 (N.D. Ill. 2009), *as amended* (Mar. 11, 2010). Plaintiffs provide no factual allegations whatsoever regarding Northern Trust's monitoring process. Instead, in support of Count III, they make generalized, conclusory statements, such as that "Defendants breached their fiduciary monitoring duties by … failing to monitor their appointees' fiduciary process." Compl. ¶ 134(b). Accordingly, Count III should be dismissed for failure to state a claim for relief under Rule 12(b)(6).

### IV. Plaintiffs Lack Standing To Challenge Funds In Which They Did Not Invest

Finally, plaintiffs do not have standing to bring claims about funds in which they did not invest. To establish injury in fact—the "[f]irst and foremost" element of constitutional standing—plaintiffs must show they "suffered an invasion of a legally protected interest that is concrete and particularized and actual or imminent, not conjectural or hypothetical." *Spokeo, Inc. v. Robins*, 578 U.S. 856, 136 S. Ct. 1540, 1547–48 (2016) (internal quotation marks and citation omitted). This is an inherently individualized inquiry to determine whether the plaintiff has a "personal stake in the outcome." *City of Los Angeles v. Lyons*, 461 U.S. 95, 101 (1983).

ERISA's statutory authorization to sue "does not affect the Article III standing analysis," and thus, a plaintiff bringing ERISA claims must "plausibly and clearly allege a concrete injury." *Thole v. U.S. Bank N.A.*, 140 S. Ct. 1615, 1620–21 (2020). "[A] plaintiff [does not] automatically satisf[y] the injury-in-fact requirement whenever a statute grants a person a statutory right and purports to authorize that person to sue to vindicate that right." *Id.* at 1620 (quoting *Spokeo*, 136 S. Ct. at 1549). Additionally, where an ERISA plaintiff challenges a participant-directed plan, he or she has "not been injured as to those funds" in which he or she did not invest. *Patterson v. Morgan Stanley*, No. 16-cv-6568, 2019 WL 4934834, *5 (S.D.N.Y. Oct. 7, 2019). This makes sense: "[I]f a participant does not choose to invest in a particular offering, any change in the value of that financial product has no impact on the participant's account." *Id.* at *4. Without an injury, plaintiffs lack standing to bring claims related to those funds. *Id.* at *5. Thus, "[a]n ERISA plan participant lacks standing to sue for ERISA violations that cause injury to a plan but not individualized injury to the plan participant." *Id.* (quoting *Taveras v. UBS AG*, 612 F. App'x 27, 29 (2d Cir. 2015)).

The fact that plaintiffs purport to assert claims on behalf of a class "adds nothing to the question of standing, for even named plaintiffs who represent a class must allege and show that they personally have been injured, not that injury has been suffered by other, unidentified members of the class to which they belong." *Simon v. E. Ky. Welfare Rts. Org.*, 426 U.S. 26, 40 n.20 (1976) (internal quotation marks omitted); *see also Wilcox v. Georgetown Univ.*, No. 18-422, 2019 WL 132281, *9 (D.D.C. Jan. 8, 2019) ("In a class action, the named plaintiffs must demonstrate that they have Constitutional standing, measured at the time the complaint was filed.") (citations omitted).

Here, plaintiffs challenge eleven different Focus Funds. Compl. ¶ 36. However,

9

plaintiffs collectively invested in only two—the Northern Trust Focus 2020 Fund and the Northern Trust Focus 2060 Fund. *Id.* ¶¶ 9–10. Plaintiffs do not allege they invested in any of the other nine Focus Funds, and thus, they cannot have been injured by defendants' fiduciary decisions about those funds. As a result, plaintiffs lack standing to bring their claims in connection with any Focus Funds other than the 2020 Fund and the 2060 Fund.

This Court's recent decision in *Brown-Davis* supports such an outcome. The *Brown-Davis* plaintiffs similarly challenged the performance of ten Northern Trust funds, and brought claims on behalf of a putative class under ERISA. 2020 WL 8921399 at *1. But the plaintiffs did not invest in all of the funds that they challenged as underperforming. *Id.* at *3. This Court concluded: "Plaintiffs lack standing to sue regarding funds in which they did not personally invest," and dismissed the claims arising from investments in those funds.[6] *Id.*

The Court should reach the same conclusion here. The nine Focus Funds in which neither plaintiff invested cannot form the basis of a claim, and the allegations and claims relating to the Focus Funds in which plaintiffs admittedly did not invest should be dismissed for this additional reason.

## CONCLUSION

For all of the foregoing reasons, plaintiffs' complaint should be dismissed in its entirety.

Dated: September 3, 2021                              Respectfully submitted,


                                                     *s/ Craig C. Martin*

---

[6] Other courts have similarly rejected attempts by plaintiffs to bring claims based on a wider swath of investments. *See, e.g., Krauter v. Siemens Corp.*, 725 F. App'x 102, 109 (3d Cir. 2018) (finding participant lacked standing to assert ERISA claims because he failed to allege financial loss); *Wilcox*, 2019 WL 132281 at *9–10 (holding plaintiffs lacked standing to allege ERISA violations for options in which they did not invest); *Dezelan v. Voya Ret. Ins. & Annuity Co.*, No. 3:16-cv-1251, 2017 WL 2909714, *7 (D. Conn. July 6, 2017) (finding plaintiff failed to "allege that she was a participant, beneficiary or fiduciary of a general account stable value fund, and therefore does not have standing to bring claims concerning these products" (internal quotation marks and citation omitted)).

Craig C. Martin (cmartin@willkie.com)
Amanda S. Amert (aamert@willkie.com)
Laura L. Norris (lnorris@willkie.com)
Mila B. Rusafova (mrusafova@willkie.com)
WILLKIE FARR & GALLAGHER LLP
300 North LaSalle Street, Suite 5000
Chicago, Illinois 60654
Tel: (312) 728-9000

John L. Brennan (jbrennan@willkie.com)
WILLKIE FARR & GALLAGHER LLP
787 Seventh Avenue
New York, New York 10019
Tel: (212) 728-8000

*Attorneys for Defendants The Northern Trust Company and The Northern Trust Company Employee Benefit Administrative Committee*

## <u>CERTIFICATE OF SERVICE</u>

 Pursuant to Rule 5 of the Federal Rules of Civil Procedure and  Rule 5.5 of the Local Rules of the Northern District of Illinois, the undersigned, an attorney of record in this case, hereby certifies that on September 3, 2021, a true and correct copy of **Defendants' Memorandum Of Law In Support Of Their Motion To Dismiss** was filed electronically by CM/ECF, which caused notice to be sent to all counsel of record.

Dated: September 3, 2021

        *s/ Craig C. Martin*
        Craig C. Martin (cmartin@willkie.com)
        WILLKIE FARR & GALLAGHER LLP
        300 North LaSalle Street, Suite 5000
        Chicago, Illinois 60654
        Tel: (312) 728-9000

        *Attorney for Defendants The Northern Trust*
        *Company and The Northern Trust Company*
        *Employee Benefit Administrative Committee*