IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| DENIS J. CONLON, NICOLE TRAVIS, DIANE M. MATO, BRIAN J. SCHROEDER, PATRICK A. JACEK, PETER HANSELMANN, and ALEXANDER PASCALE, Individually, on Behalf of The Northern Trust Company Thrift-Incentive Plan, and on Behalf of All Others Similarly Situated,<br><br>    Plaintiffs,<br><br>    v.<br><br>THE NORTHERN TRUST COMPANY; THE NORTHERN TRUST COMPANY EMPLOYEE BENEFIT ADMINISTRATIVE COMMITTEE; KIMBERLY SOPPI; and DOES 1-30,<br><br>    Defendants. | Case No. 1:21-cv-2940<br><br>JUDGE CHARLES R. NORGLE |

**DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF THEIR
MOTION TO DISMISS PLAINTIFFS' AMENDED COMPLAINT**

Plaintiffs' latest attempt to state a claim is still based on allegations that the Seventh Circuit has held do not add up to a breach of fiduciary duty under the Employee Retirement Income Security Act of 1974 ("ERISA"). In their amended complaint, plaintiffs once again allege that defendants breached their fiduciary duties because eleven target date funds offered in the Northern Trust Company's 401(k) plan allegedly "underperformed." They now add assertions that defendants permitted excessive investment management and administrative fees. The Seventh Circuit, however, has made clear that none of these allegations suggests an imprudent fiduciary process, even when pled together, and therefore cannot support a claim of fiduciary breach. *See Divane v. Northwestern Univ.*, 953 F.3d 980, 991–92 (7th Cir. 2020), *petition for cert. granted sub nom Hughes v. Northwestern Univ.*, 141 S. Ct. 2882, 2021 WL 2742780 (U.S. July 2, 2021).[1] Plaintiffs' prohibited transactions counts, which are similarly unsupported by factual allegations, fail for the same reason. The Court should dismiss the amended complaint in its entirety and decline plaintiffs' invitation "to seize ERISA for the purpose of guaranteeing individual litigants their own preferred investment options." *Id.* at 989.

In addition, plaintiffs invested in only six of the eleven funds they attack. Their claims arising out of the five funds in which they did not invest should be dismissed for the additional reason that plaintiffs lack standing to bring claims about those funds.

## BACKGROUND

Plaintiffs allege that they are participants in The Northern Trust Company Thrift-Incentive Plan (the "Plan"), which is a 401(k) profit-sharing plan.[2] Defendant The Northern Trust Company is the Plan's sponsor, as well as its trustee and named fiduciary. Amended Complaint ("AC") ¶ 10.

---

[1] Counsel for Northern Trust represented Northwestern in the *Divane* litigation before the district court, as well as the Seventh Circuit, and continues to represent Northwestern before the Supreme Court.
[2] For purposes of this motion only, defendants treat plaintiffs' factual allegations as true.

1

Defendant the Northern Trust Company Employee Benefit Administrative Committee (the "Benefit Committee") is the Plan Administrator and fiduciary with responsibility for managing and administering the Plan. *Id.* ¶ 11. Defendant Kimberly Soppi is the Vice President of Human Resources Benefits at Northern Trust and was a member of the Benefit Committee. *Id.* ¶ 12. Fidelity Investments ("Fidelity") served as the Plan's recordkeeper. *Id.* ¶ 127.

The Plan manages over $2.7 billion in assets and provides for retirement income for tens of thousands of current and former Northern Trust employees. *Id.* ¶¶ 25, 27, 140. Like many 401(k) plans, the Plan offers participants a range of investment options, including index funds and the Northern Trust Focus Target Retirement Trusts (the "Focus Funds"). *Id.* ¶¶ 29–30, 106 n.11, 115–16. The Focus Funds are target date funds ("TDFs"). *Id.* ¶¶ 29–30. They offer each participant the ability to invest in a diversified portfolio of underlying investments tailored to his or her expected retirement date by selecting a single fund. *Id.* In the last decade, target date funds have become especially popular retirement savings options in 401(k) plans. *Id.* ¶ 33. At the end of 2020, "95% of plans offered a TDF, [and] 80% of all participants had a position in one." *Id.*

During the relevant period (which plaintiffs identify as June 1, 2015 through the present), the Plan offered participants the option to invest in eleven different Focus Funds, which correspond with target retirement dates beginning in 2010 and extending through 2060. *Id.* ¶¶ 1, 32. Plaintiff Denis Conlon invested in the 2020 Focus Fund, *id.* ¶ 3; plaintiff Diane Mato invested in the 2035 Focus Fund, *id.* ¶ 5; and plaintiff Brian Schroeder invested in the 2040 Focus Fund, *id.* ¶ 6. Plaintiff Patrick Jacek invested in the 2050 Focus Fund, *id.* ¶ 7, and plaintiff Peter Hanselmann invested in the 2055 Focus Fund, *id.* ¶ 8. Finally, plaintiffs Nicole Travis and Alexander Pascale both invested in the 2060 Focus Fund. *Id.* ¶¶ 4, 9. No plaintiff purports to have invested in the 2010, 2015, 2025, 2030, or 2045 Focus Funds. *See generally id.*

Although they collectively invested in only six funds, plaintiffs challenge all eleven Focus Funds. They compare most to "comparator" funds that they allege performed better than the Focus Funds, according to analyses by Morningstar, Inc. *Id.* ¶¶ 40, 43. Plaintiffs also contend that defendants permitted the Plan to offer other investment options that generated unreasonable investment management fees, including due to the retention of "higher-cost shares," *id.* ¶¶ 28, 114–17, and that defendants caused the Plan to pay "unreasonable" recordkeeping and other administrative fees, *id.* ¶¶ 28, 119, 125, 129, 136. Plaintiffs allege that Plan participants lost "millions of dollars in retirement savings" as a result. *Id.* ¶¶ 112, 118; *see also id.* ¶¶ 1, 28, 128, 131, 136, 155, 182.

Based on these allegations, plaintiffs bring five claims under ERISA. In Count I, plaintiffs allege defendants breached their fiduciary duty of prudence in violation of ERISA § 404 through their monitoring of the Focus Funds, including by failing to remove the Focus Funds and to "adequately consider less risky and better-performing" options. *Id.* ¶ 154; *see id.* ¶¶ 148–60. In Count II, plaintiffs claim defendants breached their duty to monitor the performance of appointed fiduciaries. *Id.* ¶¶ 161–67. In Count III, plaintiffs bring a breach of co-fiduciary duty claim under ERISA § 405. *Id.* ¶¶ 168–74. In Counts IV and V, plaintiffs allege defendants engaged in prohibited transactions in violation of ERISA §§ 406(a)(1) and 406(b). *Id.* ¶¶ 175–96. Plaintiffs bring the claims on behalf of the Plan and a putative class of similarly situated participants and beneficiaries and seek various forms of relief. *Id.* at pp. 1, 58–59; *see also id.* ¶ 2.

## ARGUMENT

Plaintiffs must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Doing so requires plaintiffs to include "allegations plausibly suggesting (not merely consistent with)" their legal assertions. *Id.* at 557. Although the court accepts complaint allegations as true on a motion to dismiss, this principle "is

3

inapplicable to legal conclusions," and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 555). Because plaintiffs have failed to meet this pleading standard, their amended complaint should be dismissed in its entirety.

**I.      Plaintiffs Do Not State A Claim For Breach Of Fiduciary Duty In Count I.**

To state a claim for breach of fiduciary duty under ERISA, a plaintiff must allege that the defendants are plan fiduciaries, that they breached their fiduciary duties, and that the breach caused harm to the plaintiff. *Brosted v. Unum Life Ins. Co. of Am.*, 421 F.3d 459, 465 (7th Cir. 2005). Pleading a breach of the duty of prudence in connection with an investment decision requires a plaintiff to allege more than that an investment option was "too expensive, or underperforming." *See Divane*, 953 F.3d at 991–92 (affirming dismissal of claims that fiduciaries violated ERISA's duty of prudence based on underperformance and excessive fee allegations). The Seventh Circuit has "affirmed dismissal of ERISA complaints alleging that some combination of high fees and under-performing funds signaled imprudence, where the plans in question offered some cheaper alternatives, and the complaint did not include allegations speaking to flawed decision-making or self-dealing." *Martin v. CareerBuilder, LLC*, No. 19-cv-6463, 2020 WL 3578022, at *4 (N.D. Ill. July 1, 2020). These types of bare allegations do not rise to the level of clarity and specificity required for breach of fiduciary duty claims, where "the content of the duty of prudence turns on the circumstances" and requires "careful, context-sensitive scrutiny of a complaint's allegations." *Fifth Third Bancorp v. Dudenhoeffer*, 573 U.S. 409, 425 (2014) (internal quotation marks omitted). Claims based on the argument that plans should not offer expensive or risky investment options have been squarely rejected by the Seventh Circuit as "paternalistic." *Loomis v. Exelon Corp.*, 658 F.3d 667, 673 (7th Cir. 2011); *Divane*, 953 F.3d at 989. The Court should thus dismiss plaintiffs' fiduciary breach claim because it simply reflects their "own opinions on ERISA and the

4

investment strategy they believe is appropriate," and does not plausibly allege conduct that was "objectively unreasonable." *Divane*, 953 F.3d at 993, 988.

### A. Plaintiffs' Allegations About The Focus Funds' Purported Underperformance Are Insufficient.

In *Divane*, the Seventh Circuit recognized that mere allegations of underperformance, like plaintiffs' here, are not enough state a claim for breach of fiduciary duty. This is because "the ultimate outcome of an investment is not proof of imprudence." 953 F.3d at 992 (quoting *DeBruyne v. Equitable Life Assurance Soc'y of the U.S.*, 920 F.2d 457, 465 (7th Cir. 1990) and citing *Jenkins v. Yager*, 444 F.3d 916, 926 (7th Cir. 2006)). Rather, plaintiffs must plead facts showing that defendants do not have "prudent explanations for the challenged fiduciary decisions involving alleged losses or underperformance." *Divane*, 953 F.3d at 992.

Northern Trust recognizes that this Court addressed the lower court's order in *Divane* in another case that also involved the Focus Funds on March 16, 2021 (prior to the Seventh Circuit's decision affirming the ruling of the district court). *See Brown-Davis v. Walgreen Co.*, No. 1:19-cv-05392, 2020 WL 8921399 (N.D. Ill. March 16, 2020). This Court noted that the district court's opinion was non-binding precedent and declined to follow it. *See id.* at *3. However, after that ruling, on March 25, 2020, the Seventh Circuit affirmed the lower court's dismissal of the *Divane* complaint, finding, among other things, that fund underperformance allegations, standing alone, are insufficient to make out a breach of fiduciary duty claim. *Divane*, 953 F.3d at 992.

The Seventh Circuit's decision confirms that investment performance allegations like plaintiffs' do not add up to a breach of fiduciary duty. "Importantly, the prudence standard is process[]-based, not outcome-based. Thus, a Plan's mere underperformance is not actionable so long as the fund administrators acted prudently." *Martin*, 2020 WL 3578022, at *4 (citing *Divane*, 953 F.3d at 9[9]2); *Albert v. Oshkosh Corp.*, No. 20-C-901, 2021 WL 3932029, at *4 (E.D. Wis.

5

Sept. 2, 2021) (recognizing same); *see also Loomis*, 658 F.3d at 672–73 (affirming dismissal of breach of fiduciary duty claims). Indeed, "investment losses are not proof that [a fiduciary] violated his duty of care." *Jenkins*, 444 F.3d at 926.

Plaintiffs' breach of fiduciary duty claim here is premised on the same kind of post-hoc underperformance allegations that the Seventh Circuit found insufficient in *Divane*. Plaintiffs allege the Focus Funds underperformed in relation to "comparator" funds, *see* AC ¶¶ 40–105, and this purported underperformance caused Plan participants to lose millions of dollars, *id.* ¶ 155. Plaintiffs emphasize alleged underperformance throughout the amended complaint, *see, e.g.*, *id.* ¶¶ 28, 42, 153, concluding that defendants breached their fiduciary duties "[b]y failing to adequately consider less risky and better-performing investment products for the Plan," *id.* ¶ 154.

Importantly, plaintiffs do not plead any facts that plausibly suggest Northern Trust acted imprudently. Plaintiffs conclude that defendants breached their fiduciary duties "by failing to establish and follow a prudent process for investigating, evaluating, and monitoring investments," but include no allegations about that process; they just reiterate their allegation that the funds underperformed. *Id.* ¶ 153. For example, plaintiffs' assertion that defendants "failed to conduct appropriate due diligence" on the Focus Funds by not considering "the availability of alternative investments" is supported by no factual allegations. *Id.* ¶ 38. These vague and conclusory allegations about defendants' processes do not "raise a right to relief above the speculative level," as they must to survive a motion to dismiss. *Twombly*, 550 U.S. at 555.

Without allegations that speak to actual flawed decision-making, plaintiffs cannot state a claim for breach of the duty of prudence by criticizing investment outcomes. Plaintiffs "cannot use ERISA to paternalistically dictate what kinds of investments plan participants make where a range of investment options are on offer." *Martin*, 2020 WL 3578022, at *4; *Lockheed Corp. v.*

*Spink*, 517 U.S. 882, 887 (1996) (noting ERISA does not dictate what kinds of benefits employers must provide). *Divane* confirms that the underperformance plaintiffs allege "is not proof of imprudence" and requires dismissal of the claim.[3] *Divane*, 953 F.3d at 992.

### B. Plaintiffs' Excessive Fee Allegations Are Insufficient.

Plaintiffs' new allegations that defendants permitted "unreasonable" fees do not make their breach of the duty of prudence claim plausible. *See* AC ¶ 153; *see also id.* ¶¶ 28, 114–16, 119, 129–33 (alleging defendants allowed excessive fees). The Seventh Circuit has repeatedly recognized that "plans may generally offer a wide range of investment options and fees without breaching any fiduciary duty." *Divane*, 953 F.3d at 992 (citing *Loomis*, 658 F.3d at 673–74; *Hecker v. Deere & Co.*, 556 F.3d 575, 586 (7th Cir. 2009)). Thus, plaintiffs must plead more than a preference for lower costs, because merely alleging excessive investment management fees or administrative fees does not raise a reasonable inference that defendants engaged in a flawed decision-making process. *See Divane*, 953 F.3d at 989 ("That plaintiffs prefer low-cost index funds to the Stock Account does not make its inclusion in the plans a fiduciary breach."); *Brock v. Robbins*, 830 F.2d 640, 647–48 (7th Cir. 1987) (distinguishing the prudence of a fiduciary's process in agreeing to a fee from the reasonableness of the fee itself).

The *Divane* plaintiffs complained that Northwestern offered funds with high fees and implemented a record-keeping arrangement in which high fees were paid through revenue sharing, rather than a flat annual fee based on the number of plan participants. *See* 953 F.3d at 984. The

---

[3] Plaintiffs cite two out-of-circuit cases to argue their fiduciary breach count based on underperformance allegations should survive a motion to dismiss. *See* AC ¶ 109 & n.13. Both cases involve distinct factual allegations, which the courts assessed under frameworks different from the Seventh Circuit standard articulated in *Divane*. *See Baker v. John Hancock Life Ins. Co. (U.S.A.)*, No. 1:20-cv-10397-GAO, 2020 WL 8575183, at *1 (D. Mass. July 23, 2020) (reasoning that "no other fiduciary managing a like-sized plan chose to offer" the proprietary funds at issue); *Wildman v. Am. Century Servs., LLC*, 237 F. Supp. 3d 902, 913 (W.D. Mo. 2017) (analyzing claims under theory that "each investment alternative offered by a plan must be judged individually" (internal quotation marks and citation omitted)).

Seventh Circuit affirmed the district court's holding that this was insufficient to state a claim for breach of fiduciary duty, reiterating that plan sponsors should not be faulted for offering a menu of investment options that "includes high-expense, high-risk, and potentially high-return funds." *Id.* at 989 (quoting *Loomis*, 658 F.3d at 673). The court also rejected the argument that it is per se imprudent to offer more expensive retail share classes, and it found that Northwestern was not obligated to find a record-keeper with the fee arrangement "plaintiffs would have liked." *Id.* at 990–91; *see also id.* at 989 (explaining that asset-based fees, like revenue sharing arrangements, violate no statute).

Plaintiffs' fee-related allegations here fail for the same reasons. Their contention that defendants breached their fiduciary duties by offering "higher-cost shares" of certain funds, *see* AC ¶¶ 28, 113–15, was rejected in *Divane*. *See* 953 F.3d at 991; *see also Martin*, 2020 WL 3578022, at *4 (holding that "failure to invest in institutional as opposed to retail funds does not give rise to an inference of imprudence when a plan offers cheaper alternatives"). A "preference for different share classes of certain investments is not enough to state a plausible claim for breach of fiduciary duty," and allegations that defendants should have selected less-costly share classes rest on a proposition "rejected by the Seventh Circuit." *Albert*, 2021 WL 3932029, at *6. Plaintiffs also cherry-pick four funds with purportedly "excessive fees" and surmise that defendants "caused participants to lose millions." AC ¶¶ 116–18. But this conclusory assertion ignores the well-established principle that "[n]othing in ERISA requires every fiduciary to scour the market to find and offer the cheapest possible fund." *Divane*, 953 F.3d at 991 (quoting *Hecker*, 556 F.3d at 586). And in fact, the Plan also offered index funds, *see* AC ¶ 106 n.11, which typically carry lower fees. Without allegations that connect purportedly excessive investment management fees to any alleged flaw in defendants' fiduciary process, plaintiffs' claim fails.

Likewise, plaintiffs' allegations regarding administrative fees fall short. Plaintiffs speculate that defendants "failed to conduct a proper competitive bidding process" and "failed to negotiate a reasonable amount . . . for recordkeeping services." *Id.* ¶¶ 125–27. But *Divane* makes clear that such allegations do not amount to a fiduciary breach. *See* 953 F.3d at 990–91 (rejecting theory that alleged failures to solicit competitive bids stated a claim for breach of fiduciary duty). "In short, nothing required [d]efendants to regularly solicit quotes or competitive bids in order to satisfy their fiduciary duties." *Albert*, 2021 WL 3932029, at *5 (discussing *Divane*).

Plaintiffs' allegations about the amount of the Plan's recordkeeping fees also do not create an inference of imprudence. Plaintiffs estimate the Plan's recordkeeping fees as approximately $160 per participant annually and assert that this amount is "excessive and unreasonable."[4] AC ¶ 131; *see also id.* ¶¶ 128–35. Plaintiffs seemingly base this conclusion on their allegation that Fidelity has indicated "a standard recordkeeping fee for a plan with the same asset and participant size should be around $14-$21 per participant." *Id.* ¶ 133. But the "mere existence of purportedly lower fees paid by other plans says nothing about the reasonableness of the Plan's fee[s]" here. *Albert*, 2021 WL 3932029, at *5 (holding that imprudence could not be inferred just because the recordkeeping fees were at the amounts alleged). Like the *Divane* plaintiffs, plaintiffs here do not present factual allegations that an alternative recordkeeper would have accepted a lower fee based on the particulars of the Plan or that such a recordkeeper would have performed at the level necessary to best serve participants. *See* 953 F.3d at 991. Plaintiffs do not otherwise explain why the fees are "excessive," and in fact, the *Divane* court found recordkeeping fees higher than those alleged here insufficient to support a fiduciary breach claim. *See id.* at 984, 991 (finding "no

---

[4] Confusingly, plaintiffs allege that Northern Trust paid $2,000,000 in recordkeeping fees for Fidelity's services, AC ¶ 128, but also appear to contend that this amount was paid to Northern Trust, *id.* ¶ 131. It is unclear whether plaintiffs are referring to the same amounts or different payments.

9

ERISA violation with Northwestern's recordkeeping arrangement" where participants allegedly paid recordkeeping fees ranging from $153–$213 annually per participant). Thus, plaintiffs' recordkeeping allegations also are insufficient to support a breach of fiduciary duty claim.[5]

### C. Northern Trust's Offering Of Its Own Funds Does Not Support Plaintiffs' Breach Of Fiduciary Duty Claims.

Plaintiffs cannot salvage their inadequately pled fiduciary breach claims by suggesting it was improper to include funds managed by Northern Trust as investment options. *See* AC ¶¶ 28, 107, 111. Plan sponsors commonly offer their own products to plan participants, and as a matter of law, "a plan fiduciary does not breach its duty of loyalty simply by offering the plan sponsor's financial products." *Patterson v. Morgan Stanley*, No. 16-cv-6568, 2019 WL 4934834, at *12 (S.D.N.Y. Oct. 7, 2019). "[R]ather a plaintiff must allege plausible facts supporting an inference that the defendant acted *for the purpose* of providing benefits to itself or someone else." *Id.* (internal quotation marks omitted). "[I]ncidental" benefits do not suffice. *Ferguson v. Ruane Cunniff & Goldfarb Inc.*, No. 17-cv-6685, 2019 WL 4466714, at *4 (S.D.N.Y. Sept. 18, 2019).

Plaintiffs make no plausible factual allegations from which the Court could infer that Northern Trust selected its own funds "*for the purpose* of providing benefits to itself or someone else." *Patterson*, 2019 WL 4934834, at *12. Plaintiffs merely allege that defendants maintained proprietary investment options that underperformed. AC ¶¶ 28, 106 n.11, 107, 111. Moreover, the Plan's investment line-up was not limited to proprietary funds and included offerings from other fund managers, which plaintiffs also allege presented loyalty issues. *See id.* ¶ 130 (alleging non-proprietary funds "benefited Northern Trust"). This is insufficient to form the basis of a claim for relief. *See supra*.

---

[5] Plaintiffs' suggestion that it was improper to pay recordkeeping fees "out of the Plan's investments rather than a flat dollar amount per participant" is likewise misguided. AC ¶ 131. "ERISA does not . . . mandate any specific recordkeeping arrangement at all." *Divane*, 953 F.3d at 990.

While plaintiffs hint that defendants acted disloyally with respect to proprietary and non-proprietary funds, *see, e.g., id.* ¶¶ 108, 111, 130, they do not actually plead a cause of action for breach of the fiduciary duty of loyalty, *see id.* pp. 49–58. Such a claim would require plaintiffs to plead facts "sufficient to raise a plausible inference that defendants had engaged in self-dealing or had taken any of the actions alleged for the purpose of benefitting themselves . . . at the expense of Plan participants, or that they had acted under any actual or perceived conflict of interest in administering the Plan." *White v. Chevron Corp.*, No. 16-cv-0793-PJH, 2017 WL 2352137, at *6 (N.D. Cal. May 31, 2017). Plaintiffs' conclusory allegations do not satisfy this standard and thus cannot support any breach of fiduciary duty claim.

**II.     Plaintiffs' Derivative Claims For Failure To Monitor (Count II) And Breach Of Co-Fiduciary Duty (Count III) Fail.**

In Count II, plaintiffs assert that defendants breached their duty to monitor other Plan fiduciaries, and in Count III, plaintiffs allege that defendants breached their co-fiduciary duty. AC ¶¶ 165–66, 170. Both claims are derivative of plaintiffs' breach of fiduciary duty count and thus fail along with it. *See Howell v. Motorola, Inc.*, 633 F.3d 552, 563 (7th Cir. 2011); *Catalfamo v. Sears Holding Corp.*, No. 17-cv-5230, 2018 WL 10560956, at *5 (N.D. Ill. Aug. 21, 2018) (dismissing co-fiduciary duty and failure to monitor claims with fiduciary breach claim).

Both claims are deficient in other ways as well. As to Count II, plaintiffs must allege non-conclusory facts demonstrating defendants failed in their appointee monitoring *process*. Allegations "only in the most general terms that the [alleged monitoring fiduciaries] breached their duty to monitor . . . fail[] *Twombly*'s plausibility requirement." *Neil v. Zell*, 677 F. Supp. 2d 1010, 1024 (N.D. Ill. 2009), *as amended* (Mar. 11, 2010). Plaintiffs provide no facts regarding defendants' monitoring of their appointees. Instead, they make generalized, conclusory statements, such as that defendants "breached their fiduciary monitoring duties by . . . failing to

11

monitor their appointees' fiduciary process." AC ¶ 165(b). Thus, Count II should be dismissed.

As to Count III, plaintiffs do not state a claim for violations of ERISA §§ 405(a)(1) and (a)(3), both of which require defendants to have had actual knowledge of another fiduciary's alleged breach. *See Keach v. U.S. Trust Co.*, 240 F. Supp. 2d 840, 844 (C.D. Ill. 2002). "It is well-established that actual knowledge by a fiduciary is required in order for co-fiduciary liability to attach under § 405(a)." *Id.*; *see also Gernandt v. SandRidge Energy Inc.*, No. 15-cv-834, 2017 WL 3219490, at *11 (W.D. Okla. July 28, 2017) (recognizing same). Section 405(a) provides that a fiduciary may be responsible for the breaches of a co-fiduciary "if he participates *knowingly*" in a breach, or "has *knowledge* of a breach by such other fiduciary" and fails to act to remedy it. 29 U.S.C. § 1105(a)(1), (3) (emphasis added). Plaintiffs simply repeat the statutory language of § 405(a) by alleging that defendants "participated knowingly in their co-fiduciaries' breaches" and "knowingly undertook to conceal those breaches." AC ¶ 170. They do not include any factual allegations that the defendants had actual knowledge of others' alleged breaches, and refer to "Defendants" collectively throughout the amended complaint, without distinction as to each defendant's conduct. For that reason, any claim under § 405(a)(2) likewise fails. *See Appvion, Inc. Ret. Sav. & Emp. Stock Ownership Plan v. Buth*, 475 F. Supp. 3d 910, 943–44 (E.D. Wis. 2020). The Court should therefore dismiss Count III.

### III. Plaintiffs Fail To Plead Prohibited Transactions Claims In Counts IV And V.

In Counts IV and V, plaintiffs allege defendants engaged in prohibited transactions in violation of ERISA §§ 406(a) and (b) by causing the Plan to: (1) offer the Focus Funds, which allegedly generated unreasonable fees that profited Northern Trust and enabled Northern Trust to bolster its investment management business; and (2) pay unreasonable recordkeeping fees to Fidelity. *See* AC ¶¶ 130, 180–81, 190–93. Plaintiffs fail to state a claim in both counts.

Section 406(a) prohibits a fiduciary from causing a plan to "transfer to, or use by or for the

benefit of a party in interest, of any assets of the plan." 29 U.S.C. § 1106(a)(1)(D). Section 406(b) similarly prohibits a fiduciary from "deal[ing] with the assets of the plan in his own interest or for his own account." *Id.* § 1106(b)(1). The purpose of § 406 "is to prohibit transactions that might involve self-dealing by a fiduciary, not to prevent fiduciaries from being paid for their work." *Danza v. Fid. Mgmt. Trust Co.*, 533 F. App'x 120, 126 (3d Cir. 2013); *see Albert*, 2021 WL 3932029, at *8 (dismissing prohibited transaction claim alleging defendants paid service providers excessive fees). Merely alleging that Northern Trust paid Fidelity "excessive" recordkeeping fees and selected its own funds with management fees does not give rise to liability under § 406.

Plaintiffs' allegations demonstrate they are attempting to "repackage their imprudent fiduciary claims" without additional facts revealing any impermissible transactions. *Divane*, 953 F.3d at 992. Indeed, plaintiffs fail to plausibly allege one of the basic elements of a prohibited transactions claim—that the fees complained of were Plan assets. "[A]fter a fee is collected by a recordkeeper, the amount of those fees becomes the property of the fund such that the transfer of some of it for recordkeeping costs is not a transfer of plan assets." *Id.* at 992–93 (citing *Hecker*, 556 F.3d at 584). For the same reason, management fees also "do not qualify as 'assets of the plan'" under § 406, because they "do not go to, and are not intended to go to, the Plan itself."[6] *Fleming v. Fid. Mgmt. Trust Co.*, No. 16-cv-10918-ADB, 2017 WL 4225624, at *9 (D. Mass. Sept. 22, 2017); *Hecker*, 556 F.3d at 584. Plaintiffs' inability to plausibly allege defendants used "assets of the plan" to benefit themselves or a party in interest mandates dismissal of Counts IV and V.

## IV. Plaintiffs Lack Standing To Challenge Funds In Which They Did Not Invest.

Plaintiffs do not have standing to bring claims about funds in which they did not invest.

---

[6] Plaintiffs' speculative assertions that Northern Trust used the Plan to "develop" and "bolster" its investment management business also are not supported by facts that actually speak to assets of the Plan, as required to plead their prohibited transactions counts. *See* AC ¶¶ 180, 190–92, 194.

13

To establish injury in fact—the "[f]irst and foremost" element of constitutional standing—plaintiffs must show they "suffered an invasion of a legally protected interest that is concrete and particularized and actual or imminent, not conjectural or hypothetical." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338–39 (2016) (internal quotation marks and citations omitted). This is an inherently individualized inquiry to determine whether the plaintiff has a "personal stake in the outcome." *City of Los Angeles v. Lyons*, 461 U.S. 95, 101 (1983).

ERISA's statutory authorization to sue "does not affect the Article III standing analysis," and thus, a plaintiff bringing ERISA claims must still "plausibly and clearly allege a concrete injury" to satisfy the constitutional injury-in-fact requirement. *Thole v. U.S. Bank N.A.*, 140 S. Ct. 1615, 1620–21 (2020). Additionally, where an ERISA plaintiff challenges a participant-directed plan, he or she has "not been injured as to those funds" in which he or she did not invest. *Patterson*, 2019 WL 4934834, at *5. This makes sense: "[I]f a participant does not choose to invest in a particular offering, any change in the value of that financial product has no impact on the participant's account." *Id.* at *4. Without an injury, plaintiffs lack standing to bring claims related to those funds. *Id.* at *5. Thus, "[a]n ERISA plan participant lacks standing to sue for ERISA violations that cause injury to a plan but not individualized injury to the plan participant." *Id.* (quoting *Taveras v. UBS AG*, 612 F. App'x 27, 29 (2d Cir. 2015)).

The fact that plaintiffs purport to assert claims on behalf of a class "adds nothing to the question of standing, for even named plaintiffs who represent a class must allege and show that they personally have been injured, not that injury has been suffered by other, unidentified members of the class to which they belong." *Simon v. E. Ky. Welfare Rts. Org.*, 426 U.S. 26, 40 n.20 (1976) (internal quotation marks omitted); *Wilcox v. Georgetown Univ.*, No. 18-422, 2019 WL 132281, at *9 (D.D.C. Jan. 8, 2019) ("In a class action, the named plaintiffs must demonstrate that they

14

have Constitutional standing, measured at the time the complaint was filed." (citation omitted)).

Here, plaintiffs challenge eleven Focus Funds, AC ¶¶ 32, 43, but collectively invested in only six—the 2020, 2035, 2040, 2050, 2055, and 2060 Focus Funds, *id.* ¶¶ 3–9. Because plaintiffs do not allege they invested in the other five Focus Funds, they cannot have been injured by defendants' fiduciary decisions about those funds. As a result, plaintiffs lack standing to bring claims in connection with the 2010, 2015, 2025, 2030, and 2045 Focus Funds.

This Court's decision in *Brown-Davis* supports this conclusion. The *Brown-Davis* plaintiffs, on behalf of a putative class, challenged the performance of ten funds, including some in which they did not invest. 2020 WL 8921399, at *1, *3. This Court held: "Plaintiffs lack standing to sue regarding funds in which they did not personally invest," and dismissed the claims arising from investments in those funds.[7] *Id.* at *3–4. The Court should reach the same conclusion here and dismiss the claims relating to the five Focus Funds in which plaintiffs did not invest.

## CONCLUSION

For all of the foregoing reasons, plaintiffs' amended complaint should be dismissed.

Dated: November 5, 2021

Respectfully submitted,

*s/ Craig C. Martin*

| | |
|---|---|
| John L. Brennan (jbrennan@willkie.com) | Craig C. Martin (cmartin@willkie.com) |
| WILLKIE FARR & GALLAGHER LLP | Amanda S. Amert (aamert@willkie.com) |
| 787 Seventh Avenue | Laura L. Norris (lnorris@willkie.com) |
| New York, New York 10019 | Mila B. Rusafova (mrusafova@willkie.com) |
| Tel: (212) 728-8000 | WILLKIE FARR & GALLAGHER LLP |
| | 300 North LaSalle Street, Suite 5000 |
| | Chicago, Illinois 60654 |
| | Tel: (312) 728-9000 |

*Attorneys for Defendants the Northern Trust Company, The Northern Trust Company Employee Benefit Administrative Committee, and Kimberly Soppi*

---

[7] Other courts have similarly rejected claims based on a wider swath of investments. *See, e.g.*, *Krauter v. Siemens Corp.*, 725 F. App'x 102, 109 (3d Cir. 2018) (finding participant lacked standing to assert ERISA claims because he failed to allege financial loss); *Wilcox*, 2019 WL 132281, at *9–10 (holding plaintiffs lacked standing to allege ERISA violations for options in which they did not invest).

**CERTIFICATE OF SERVICE**

Pursuant to Rule 5 of the Federal Rules of Civil Procedure and Rule 5.5 of the Local Rules of the Northern District of Illinois, the undersigned, an attorney of record in this case, hereby certifies that on November 5, 2021, a true and correct copy of **Defendants' Memorandum Of Law In Support Of Their Motion To Dismiss Plaintiffs' Amended Complaint** was filed electronically by CM/ECF, which caused notice to be sent to all counsel of record.

Dated: November 5, 2021

*s/ Craig C. Martin*
Craig C. Martin (cmartin@willkie.com)
WILLKIE FARR & GALLAGHER LLP
300 North LaSalle Street, Suite 5000
Chicago, Illinois 60654
Tel: (312) 728-9000

*Attorney for Defendants The Northern Trust Company, The Northern Trust Company Employee Benefit Administrative Committee, and Kimberly Soppi*