# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

DENIS J. CONLON, NICOLE TRAVIS, ) Case No. 1:21-cv-2940
DIANE M. MATO, BRIAN J. SCHROEDER, )
PATRICK A. JACEK, PETER )
HANSELMANN, and ALEXANDER ) Judge Charles R. Norgle Sr.
PASCALE, Individually, on Behalf of The )
Northern Trust Company Thrift-Incentive )
Plan, and on Behalf of All Others Similarly )
Situated, )
                                 )
           Plaintiffs, )
                                 )
     v. )
                                 )
THE NORTHERN TRUST COMPANY; )
THE NORTHERN TRUST COMPANY )
EMPLOYEE BENEFIT )
ADMINISTRATIVE COMMITTEE; )
KIMBERLY SOPPI; and DOES 1-30, )
                                 )
           Defendants. )
                                 )

## PLAINTIFFS' OPPOSITION TO DEFENDANTS'
## MOTION TO DISMISS PLAINTIFFS' AMENDED CLASS ACTION COMPLAINT

## TABLE OF CONTENTS

I. INTRODUCTION ................................................................................................. 1

II. LEGAL STANDARD ......................................................................................... 2

III. ARGUMENT ...................................................................................................... 2

    A. Plaintiffs Have Properly Pleaded Duty of Prudence Breach in Count I ................. 2

        1. Plaintiffs' Underperformance Allegations Are Sufficient ......................... 3

        2. Plaintiffs' Excessive Fee Allegations Are Sufficient................................. 6

    B. Plaintiffs Have Properly Alleged Claims for Failure to Monitor (Count II) and Breach of Co-Fiduciary Duty (Count III) ........................................................ 9

    C. Plaintiffs Have Stated Prohibited Transaction Claims in Counts IV and V ......... 10

    D. Plaintiffs Have Standing to Seek Relief Concerning the Entire Suite of Northern Trust Focus Funds – Not Just the Vintages Owned by Plaintiffs.......... 13

    E. Leave to Amend Should Be Granted to Cure Any Alleged Infirmities Here ....... 15

IV. CONCLUSION.................................................................................................. 15

**TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Allen v. GreatBanc Tr. Co.*,
  835 F.3d 670 (7th Cir. 2016) ........................................................... *passim*

*Allianz Global Investors U.S. LLC Alpha Series Litig*,
  2021 WL 4481215 (S.D.N.Y. Sept. 30, 2021).......................................13

*Baker v. John Hancock Life Ins. Co. (U.S.A.)*,
  2020 WL 8575183 (D. Mass. July 23, 2020)............................................4

*Barry Aviation Inc. v. Land O'Lakes Mun. Airport Comm'n*,
  377 F.3d 682 (7th Cir. 2004) ...............................................................15

*Beach v. JPMorgan Chase Bank*,
  No. 1:17-cv-00563, ECF No. 73 (S.D.N.Y. Mar. 29, 2018).....................12

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007)..............................................................................2

*Boley v. Universal Health Servs., Inc.*,
  2020 WL 6381395 (E.D. Pa. Oct. 30, 2020)..........................................13

*Braden v. Wal-Mart Stores, Inc.*,
  588 F.3d 585 (8th Cir. 2009) ...................................................2, 5, 10, 14

*Briscoe v. Health Care Serv. Corp.*,
  281 F. Supp. 3d 725 (N.D. Ill. 2017) ......................................................2

*Brown-Davis v. Walgreen Co.*,
  2020 WL 8921399 (N.D. Ill. Mar. 16, 2020)..................................1, 5, 10

*Chesemore v. Alliance Holdings, Inc.*,
  886 F. Supp. 2d 1007 (W.D. Wis. 2012) ...............................................12

*Concha v. London*,
  62 F.3d 1493 (9th Cir. 1995) ..................................................................5

*Cutrone v. Allstate Corp.*,
  2021 WL 4439415 (N.D. Ill. Sept. 28, 2021) .............................1, 3, 12, 14

*Daugherty v. Univ. of Chicago*,
  2017 WL 4227942 (N.D. Ill. Sept. 22, 2017) ...........................................7

*Divane v. Nw. Univ.*,
   953 F.3d 980 (7th Cir. 2020) ...................................................................1, 4, 7, 12

*Falberg v. Goldman Sachs Grp., Inc.*,
   2020 WL 3893285 (S.D.N.Y. July 9, 2020) ..............................................13

*George v. Kraft Foods Global, Inc.*,
   641 F.3d 786 (7th Cir. 2011) ......................................................................7

*In re: G.E. ERISA Litig.*,
   2019 WL 5592864 (D. Mass. Oct. 30, 2019) ............................................13

*Harris Tr. & Sav. Bank v. Salomon Smith Barney, Inc.*,
   530 U.S. 238 (2000) ...................................................................................10

*Hughes v. Nw. Univ.*,
   141 S. Ct. 2882 (2021) .................................................................................1

*Karg v. Transamerica Corp.*,
   2019 WL 3938471 (N.D. Iowa Aug. 20, 2019) ...........................................4

*Karpik v. Huntington Bancshares Inc.*,
   2019 WL 7482134 (S.D. Ohio Sept. 26, 2019) ...........................................7

*Krueger v. Ameriprise Fin., Inc.*,
   304 F.R.D. 559 (D. Minn. 2014) ...............................................................14

*Leigh v. Engle*,
   727 F.2d 113 (7th Cir. 1984) .....................................................................11

*Loomis v. Exelon Corp.*,
   658 F.3d 667 (7th Cir. 2011) .......................................................................5

*Lowen v. Tower Asset Mgmt., Inc.*,
   829 F.2d 1209 (2d Cir. 1987).....................................................................11

*Mehta v. Beaconridge Improvement Ass'n*,
   432 F. Appx. 614 (7th Cir. 2011)................................................................6

*Nat'l Secs. Sys., Inc. v. Iola*,
   700 F.3d 65 (3d Cir. 2012)..........................................................................13

*NECA-IBEW Health & Welfare Fund v. Goldman Sachs & Co.*,
   693 F.3d 145 (2d Cir. 2012)........................................................................15

*Neil v. Zell*,
   767 F. Supp. 2d 933 (N.D. Ill. 2011) ........................................................14

*Plumbers & Pipefitters Nat. Pension Fund v. Burns*,
    967 F. Supp. 2d 1143 (N.D. Ohio 2013)..................................................15

*Reetz v. Lowe's Co., Inc.*,
    2019 WL 4233616 (W.D.N.C. Sept. 6, 2019) ........................................4

*Schapker v. Waddell & Reed Fin., Inc.*,
    2018 WL 1033277 (D. Kan. Feb. 22, 2018) ........................................7

*Sims v. BB&T Corp.*,
    2018 WL 3128996 (M.D.N.C. June 26, 2018) ........................................4

*Spear v. Fenkell*,
    2016 WL 5661720 (E.D. Pa. Sept. 30, 2016) ........................................12

*Tibble v. Edison Int'l*,
    135 S. Ct. 1823 (2015).........................................................3, 7

*Tracey v. Mass. Inst. of Tech.*,
    2017 WL 4453541 (D. Mass. Aug. 31, 2017) ........................................9

*Turner v. Schneider Elec. Holdings, Inc.*,
    2021 WL 1178308 (D. Mass. Mar. 26, 2021)........................................10

**Statutes, Rules, and Regulations**

29 U.S.C.
    §1001.......................................................................................1
    §1103(c)(1) ...........................................................................7
    §1104....................................................................................9
    §1104(a) .............................................................................12
    §1106..............................................................................10, 11, 12
    §1106(a) .............................................................................11
    §1106(a)(1) ........................................................................11
    §1106(a)(1)(C) ....................................................................13
    §1106(a)(1)(D).................................................................11, 13
    §1106(b)..............................................................................11
    §1106(b)(1) ........................................................................13
    §1106(b)(3) ....................................................................12, 13

Federal Rules of Civil Procedure
    Rule 8(a)(2) .........................................................................2

Employee Retirement Income Security Act of 1974
    §406(a)................................................................................10
    §406(b)................................................................................10
    §406(b)(3)............................................................................13
    §408(b)(2)........................................................................11, 13

29 C.F.R.
§2550.408b-2 ...................................................................................................11, 13

77 FR 5632-01 ...................................................................................................11

Restatement (Third) of Trusts
§88 cmt. A (2003) ...........................................................................................7
§90 cmt. b.......................................................................................................7
ch. 17 intro. note ...........................................................................................7

v

## I.       INTRODUCTION

This case brought under the Employee Retirement Income Security Act of 1974, as amended ("ERISA"), 29 U.S.C. §1001, *et seq.*, concerns Defendants' failure to act as prudent fiduciaries to Defendants' employees' 401(k) retirement plan, called the Northern Trust Company Thrift-Incentive Plan (the "Plan"). Specifically, Defendants persistently breached their ERISA duty of prudent and cost-conscious investment management by loading the Plan with poorly performing proprietary target date funds and further burdening the Plan with excessive fees. In addition, Defendants violated ERISA by engaging in a number of prohibited transactions.

Defendants' motion largely ignores the extensive body of ERISA precedent supporting Plaintiffs' claims and, instead, regurgitates arguments that courts (including this one) routinely reject in analogous cases. In an effort to avoid recent holdings such as those in *Cutrone v. Allstate Corp.*, 2021 WL 4439415, at *1 (N.D. Ill. Sept. 28, 2021) (denying motion to dismiss in ERISA breach of fiduciary duty action concerning the same Northern Trust funds at issue in this case),[1] and *Brown-Davis v. Walgreen Co.*, 2020 WL 8921399, at *1 (N.D. Ill. Mar. 16, 2020) (also denying in part motion to dismiss breach of fiduciary duty claims concerning the Northern Trust Focus Funds),[2] Defendants rely almost entirely on one case, *Divane v. Nw. Univ.*, 953 F.3d 980 (7th Cir. 2020), which is currently before the Supreme Court, *Hughes v. Nw. Univ.*, 141 S. Ct. 2882 (2021), and in any event is distinguishable. Further, Defendants' motion is replete with misdirected arguments, and should be denied in its entirety.

---

[1]       The Northern Trust Focus Target Retirement Trusts ("Northern Trust Focus Funds").

[2]       This Court in *Brown-Davis* granted dismissal only as to the claims arising from investment in the 2010 and 2015 Funds, which the named Plaintiffs here had not individually invested in. 2020 WL 8921399, at *4. For the reasons discussed below, including the recent holding in *Cutrone*, 2021 WL 4439415, at **5-6, Plaintiffs request that the Court reconsider its reasoning in *Brown-Davis* on this issue of standing, and deny Defendants' motion here in its entirety.

## II.      LEGAL STANDARD

Pursuant to Federal Rules of Civil Procedure, Plaintiffs need only present "'a short and plain statement of the claim showing that the pleader is entitled to relief.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting Fed. R. Civ. P. 8(a)(2)).[3]  To meet this standard, "it is enough to provide the context necessary to show a plausible claim for relief." *Allen v. GreatBanc Tr. Co.*, 835 F.3d 670, 674 (7th Cir. 2016).  In that regard, this Court "accepts all well-pleaded allegations as true and draws all reasonable inferences in [p]laintiffs' favor." *Briscoe v. Health Care Serv. Corp.*, 281 F. Supp. 3d 725, 730 (N.D. Ill. 2017).

When evaluating the sufficiency of an ERISA complaint, courts should be "cognizant of the practical context of ERISA litigation," and "recognize that ERISA plaintiffs generally lack the inside information necessary to make out their claims in detail" unless permitted to proceed to discovery.  *Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 598 (8th Cir. 2009).  As such, courts should conduct a "holistic evaluation of an ERISA complaint's factual allegations." *Id.*  Taking into account the totality of circumstances prevalent at the time of Defendants' alleged wrongdoing, this Court should allow Plaintiffs' claims to go forward to effectuate ERISA's remedial purpose.

## III.     ARGUMENT

### A.      Plaintiffs Have Properly Pleaded Duty of Prudence Breach in Count I

Plaintiffs have properly alleged their claim for breach of the fiduciary duty of prudence. To sustain this claim, Plaintiffs must allege facts "showing that the defendant acted as a fiduciary, breached its fiduciary duties, and thereby caused a loss to the [p]lan." *Braden*, 588 F.3d at 594. First, Defendants do not dispute that they acted as fiduciaries under ERISA.  Second, Plaintiffs allege in Count I that Defendants breached their duty of prudence by failing to establish and then

---

[3]      Unless otherwise noted, citations are omitted and emphasis is added.

follow an appropriate process for investigating, evaluating, and monitoring Plan investments. Defendants' fiduciary failures resulted in a plan loaded with deficient funds that were not suitable for participants due to persistently poor performance and/or unreasonable fees. ¶153.[4] Third, Plaintiffs allege that as a direct and proximate result of Defendants' breaches of fiduciary duty, the Plan and its participants have sustained significant damages and lost-opportunity costs, which continue to accrue. ¶155. Accordingly, Plaintiffs have properly alleged each requisite element of a fiduciary duty breach claim and Defendants' motion in this regard (as others) should be denied.

### 1. Plaintiffs' Underperformance Allegations Are Sufficient

By failing adequately to consider less risky and better-performing investment products for the Plan, Defendants failed to meet their fiduciary mandate. ¶154. An ERISA plaintiff "may allege that a fiduciary breached the duty of prudence by failing to properly monitor investments and remove imprudent ones." *Tibble v. Edison Int'l*, 135 S. Ct. 1823, 1829 (2015). *See also Allen*, 835 F.3d at 678.

In *Cutrone*, this Court denied the defendants' motion to dismiss analogous breach of fiduciary duty claims, based on underperformance of the Northern Trust Focus Funds, at issue here. 2021 WL 4439415, at *3. The *Cutrone* plaintiffs alleged that a prudent fiduciary would have known that there were better performing funds than the Northern Trust Focus Funds, which consistently "underperformed compared to benchmark indexes and like target date funds," and that by failing to remove those funds, defendants caused plan participants multi-million-dollar losses. *Id.* Plaintiffs' allegations here, with regard to the Northern Trust Focus Funds are almost identical, and the Court should rule consistently that they should be permitted to proceed. Plaintiffs allege, for example, "Defendants failed to consider the continued prudence of maintaining the

---

[4] All "¶" cites are to Plaintiffs' Amended Class Action Complaint, ECF No. 25, filed October 22, 2021, unless otherwise indicated.

funds challenged here, including a number of Northern Trust's proprietary funds, even as these funds underperformed their benchmarks and/or generated unreasonable fees, resulting in Plan losses and/or unjust profits for the Company."[5] ¶28. *See also id.*, ¶¶37-105 (detailing the underperformance of the Northern Trust Focus Funds and alleging that "[a] prudent fiduciary would have used the indexes and Comparator Funds . . . as benchmarks for the performance of the Northern Trust Focus [Funds]. Despite . . . years of substantial underperformance, Defendants did not remove the Northern Trust Focus [Funds] from the Plan. Predictably, the underperformance continued throughout the Class Period," resulting in million-dollar losses to plan participants).

Defendants ignore this Court's holding in *Cutrone*, relying instead almost entirely on *Divane*. That decision, however, is immediately distinguishable. The court in *Divane* found that the defendants there had not breached their duty of prudence in part because "the types of funds plaintiffs wanted (low-cost index funds) '***were and are*** available to them,'" in an investment lineup of over 400 options, so the plan participants were not forced to choose the "unappetizing" options. *Divane*, 953 F.3d at 991-92 (emphasis in original). That is not the case here, where Plan participants "who want to invest in a tax-advantaged target date fund strategy" have had no choice but to select one of the Northern Trust Focus Funds, depending on their anticipated retirement

---

[5]     Courts across the federal circuits have held that the continued holding of underperforming funds in ERISA-governed plans gives rise to an inference of an imprudent process. Defendants' attempt to distinguish *Baker* and *Wildman* is unavailing in light of this consistent case law. *See*, *e.g.*, *Baker v. John Hancock Life Ins. Co. (U.S.A.)*, 2020 WL 8575183, at *1 (D. Mass. July 23, 2020) (denying motion to dismiss brought against John Hancock and stating that "[i]n total, ***the long-term retention of a substantial number of underperforming funds . . . gives rise to a plausible inference of an objectively imprudent monitoring process***. That the retained underperforming funds were all proprietary John Hancock funds . . . gives rise to the plausible inference of a subjective motive inconsistent with the plan participants' best interest" by the defendant plan fiduciaries); *Karg v. Transamerica Corp.*, 2019 WL 3938471, at *7 (N.D. Iowa Aug. 20, 2019) ("Based on the well-pleaded facts regarding the challenged funds' performance, plaintiffs' imprudence claim is plausible at this stage."); *Reetz v. Lowe's Co., Inc.*, 2019 WL 4233616, at **5-6 (W.D.N.C. Sept. 6, 2019) (denying motion to dismiss where defendants retained underperforming fund); *Sims v. BB&T Corp.*, 2018 WL 3128996, at **7-8 (M.D.N.C. June 26, 2018) (upholding claim that fiduciaries were imprudent by "maintaining [] underperforming funds in the [p]lan").

4

date.[6]  ¶37.  In any event, this Court held in *Brown-Davis*, 2020 WL 8921399, at *3, that it "disagrees with the notion that a fiduciary can avoid a claim of imprudence based on fund underperformance as a matter of law at this stage so long as it gave plan participants various investment options."

Plaintiffs also need not allege "***actual*** flawed decision-making" by Defendants, as Defendants would have it.  Mot. at 6.[7]  Extensive authority (including from the Seventh Circuit) holds that under ERISA, plan participants need only "allege facts from which a factfinder could infer that the process was inadequate" because they are not privy to inside information "unless and until discovery commences."  *Allen*, 835 F.3d at 678.  *See also Braden*, 588 F.3d at 595 (reversing dismissal and noting it is a "mistaken assumption" that a plaintiff is "required to describe directly the ways in which [defendants] breached their fiduciary duties"); *Concha v. London*, 62 F.3d 1493, 1503 (9th Cir. 1995) ("[T]he circumstances surrounding alleged breaches of fiduciary duty . . . will frequently be in the exclusive possession of the breaching fiduciary.").

While granular details of Defendants' fiduciary decision-making are solely in their possession, Plaintiffs have nonetheless alleged, beyond underperformance of funds, that Defendants failed to follow a prudent process for monitoring Plan funds.  These allegations, which must be accepted as true, provide ample support for Plaintiffs' claims.  For example:

- "Yet here no such prudent process was followed by Defendants in spite of their fiduciary status under ERISA. . . . Defendants persistently failed to conduct appropriate due diligence concerning their inclusion in the Plan, including failing to consider properly the available alternative investments[.]"  ¶¶36-39.

---

[6]      This case is more analogous to *Braden*, where the court found imprudence because the plan included a "relatively limited menu of funds," which "were chosen to benefit the trustee at the expense of the participants."  *Braden*, 588 F.3d at 596; *see Loomis v. Exelon Corp.*, 658 F.3d 667, 671 (7th Cir. 2011) (distinguishing *Braden* on that basis).  Not only was the Northern Trust Focus Funds suite the exclusive target date solution offered to Plan participants, but the Plan at large consisted of only 27 funds, 18 of which were proprietary Northern Trust investments (with 11 of these being the Northern Trust Focus Funds).

[7]      "Mot." refers to Defendants' Memorandum of Law in Support of Their Motion to Dismiss.

- "The Comparator Funds outperformed the Northern Trust Focus Funds between 2010 and 2013. Still, Defendants selected Northern Trust Focus Funds for the Plan instead of any [of] the Comparator Funds. . . . A reasonable investigation by Defendants would have revealed the Focus Funds' chronic underperformance and prompted Defendants to remove and replace them with superior options." ¶¶40-42.

- "A best practice in selecting and monitoring a plan's investment options is when an investment option's net performance falls below the median of their peer group's one-, three-, and five-year cumulative returns to either place the fund on the watch list and/or remove and replace the investment option. Here, however, Defendants remained idle and failed to remove the Funds from the Plan despite their abysmal underperformance for over a decade. Defendants' selection and monitoring process for the Northern Trust Focus Funds has been deficient in other ways. Significantly, Defendants failed to diversify by not choosing any non-proprietary target-date funds for the Plan." ¶¶106-07.

- "It is implausible that had Defendants acted, individually and collectively, as prudent, diligent fiduciaries, they would have continued to maintain the Plan's investment in the Northern Trust Focus Funds under the prevailing circumstances, which included, *inter alia*, lack of a proper fiduciary process to oversee Plan investments, the persistently poor performance of the Funds, and the availability of better performing options at the same or lesser cost." ¶109.

- "Likewise, it is not plausible that Defendants faithfully followed a suitable Investment Policy Statement ("IPS"). . . . A fiduciary's failure to follow an appropriate IPS in investment selection and retention for a qualified 401(k) plan . . . is circumstantial evidence Defendants failed to use a viable policy with respect to the Plan's investments, and thus failed to conduct a prudent due diligence process as required by ERISA. It is again not plausible that each and every one of the 11 Northern Trust Focus Funds in the Plan was chosen and retained pursuant to a rigorous evaluation, screening, and monitoring process[.]" ¶¶110-11.

Plaintiffs' allegations of Defendants' fiduciary duty breaches, based on imprudently retaining deficient investments, are more than "sufficient to cross [a] minimal threshold" indicating that Plaintiffs are entitled to relief. *Mehta v. Beaconridge Improvement Ass'n*, 432 F. Appx. 614, 616 (7th Cir. 2011). The Court should accordingly deny Defendants' motion to dismiss.

## 2. Plaintiffs' Excessive Fee Allegations Are Sufficient

In Count I, Plaintiffs further allege that Defendants breached their fiduciary duty of prudence by failing to monitor (1) "the Plan's investments to ensure that the Plan was invested in the least expensive available share class with regard to all of its investment options" (¶¶113-15); (2) the Plan's investments that charged excessive fees when other reasonably priced alternatives were readily available and would have saved Plan participants millions of dollars of their

retirement savings (¶¶116-17); and (3) "the Plan's administrative costs, including the recordkeeping expenses, and to ensure that these costs were reasonable and prudent, and not the result of disloyal decision-making." ¶¶119-36.

Just as courts have consistently held that allegations of continued holding of underperforming funds support breach of prudence claims, courts have consistently held that allegations of excessive fees support these claims. *See, e.g.*, *Daugherty v. Univ. of Chicago*, 2017 WL 4227942, at *7 (N.D. Ill. Sept. 22, 2017) (denying motion to dismiss plaintiffs' fiduciary duty breach claim where plaintiffs claimed that the plan charged "administrative fees in excess of industry standards"); *George v. Kraft Foods Global, Inc.*, 641 F.3d 786, 789 (7th Cir. 2011) ("plan administrative costs must be 'reasonable'"); *Tibble*, 843 F.3d at 1198 (implicit in Defendants' "fiduciary duties is a duty to be cost-conscious") (quoting Restatement (Third) of Trusts §88 cmt. A (2003)).[8] *See also* 29 U.S.C. §1103(c)(1) (Defendants are required to "defra[y] reasonable expenses of administering the plan."); *id.*, §90 cmt. b. ("cost-conscious management is fundamental to prudence in the investment function"); *id.*, ch. 17 intro. note (prudent fiduciaries must consider "similar products being offered with significantly different costs"). Plaintiffs' detailed allegations give rise to the plausible inference that Defendants "did not satisfy their duty to ensure that . . . fees were reasonable." *George*, 641 F.3d at 800.

Defendants, again, rely almost entirely on *Divane*, which is distinguishable for the reasons discussed above. The court in *Divane* affirmed dismissal of plaintiffs' prudence claim because the low-cost index funds that plaintiffs wanted were available to them. 953 F.3d at 991. That simply

---

[8]     *See also Karpik v. Huntington Bancshares Inc.*, 2019 WL 7482134, at *5 (S.D. Ohio Sept. 26, 2019) ("Plaintiffs can state a claim by plausibly alleging that the funds offered by the [p]lan were more expensive than similar alternatives."); *Schapker v. Waddell & Reed Fin., Inc.*, 2018 WL 1033277, at *9 (D. Kan. Feb. 22, 2018) (allegation that "defendants selected funds that charged excessive fees . . . in relation to comparator funds" supported breach of prudence claim).

is not the case here. Plaintiffs had limited options for investment, the majority of which were either poorly performing funds and/or high-cost funds chosen by Defendants. ¶¶46-105; 114-17.

Defendants also repeat their contention with regard to Plaintiffs' allegations concerning failure to monitor investment and administrative fees that those allegations do not amount to a claim that Defendants "engaged in a flawed decision-making process." Mot. at 7. Again, however, on a motion to dismiss, a plaintiff need only allege "facts from which a factfinder could infer that the process was inadequate." *Allen*, 835 F.3d at 678. Plaintiffs have more than met this standard. For example:

- "Here, a still further indication of Defendants' lack of a prudent fiduciary process, was Defendants' failure to monitor the Plan's investments to ensure that the Plan was invested in the least expensive available share class with regard to all of its investment options. Despite the fact that lower-cost shares of certain funds were available to the Plan during the Class Period, Defendants imprudently selected and retained the higher-cost shares of these funds." ¶114.

- "Moreover, Defendants imprudently maintained the Plan in other funds with excessive fees." ¶116 (providing examples of such funds); ¶117 (providing examples of comparator funds).

- "Defendants failed to conduct an appropriately competitive bidding process during the Class Period, thereby keeping the Plan's administrative fees well above those charged to comparable plans, in order to, *inter alia*, profit from the direct or indirect fees paid by the participants to the Company, as well as from a host of undisclosed redemption fees, sales commissions, and other similar expenses in connection with transactions associated with the Plan's investment options." ¶119.

- "Defendants breached their duty to monitor and control the Plan's administrative costs with prudence and loyalty by failing to undertake any of the aforementioned measures [discussed in ¶¶122-24] and acting to further the Company's own interests as opposed to those of the Plan. Here, among other things, there is no indication that Defendants conducted a proper bidding process or engaged in appropriate negotiations to lower the administrative costs during the Relevant Period. Additionally, Defendants failed to ensure that the fees paid to the service providers, including through the revenue-sharing arrangements, did not exceed reasonable levels, or unduly profit the Company or other parties in interest. Likewise, Defendants failed to monitor the appropriateness of the redemption fees, sales commissions, and other similar expenses in connection with transactions associated with the Plan's investment options." ¶125.

- "Defendants failed to conduct a proper competitive bidding process concerning the Plan's recordkeeping arrangement despite their ability to negotiate reasonable and low-cost administrative fees for the Plan, including the recordkeeping." ¶126.

- "Defendants failed to negotiate a reasonable amount with Fidelity for recordkeeping services." ¶127.

- "Specifically, Defendants' failure to continually monitor and negotiate the Plan's administrative costs, including the recordkeeping fees, has cost Participants over $2 million in fees out of their retirement accounts." ¶136.

Accepting Plaintiffs' allegations as true and drawing all reasonable inferences in Plaintiffs' favor, the Court has ample basis to "infer that the [fiduciaries'] process was inadequate." *Allen*, 835 F.3d at 678. Plaintiffs have alleged sufficient facts regarding excessive fees "to provide the context necessary to show a plausible claim for relief" under 29 U.S.C. §1104. *Allen*, 835 F.3d at 674. The Court should accordingly deny Defendants' motion to dismiss.[9]

### B. Plaintiffs Have Properly Alleged Claims for Failure to Monitor (Count II) and Breach of Co-Fiduciary Duty (Count III)

Plaintiffs have also plausibly alleged that Defendants failed to monitor the individuals to whom they delegated fiduciary responsibilities, ¶¶161-67, and that Defendants breached their co-fiduciary duty. ¶¶168-74. Defendants, in response, argue that (1) Plaintiffs have not pled sufficient facts to support these claims; and (2) Plaintiffs have not pled an underlying breach to support these "derivative" claims. Mot. at 11-12. Both arguments are meritless.

First, the monitoring allegations in paragraphs 165 and 166 of the Amended Complaint are almost identical to the type of allegations that have been found sufficient in other cases. *See, e.g.*, *Tracey v. Mass. Inst. of Tech.*, 2017 WL 4453541, at *19 (D. Mass. Aug. 31, 2017). Plaintiffs are not required to provide additional detail regarding the monitoring "process" at this stage. *See*

---

[9]     To the extent Defendants argue that Plaintiffs allege a fiduciary duty breach based solely on the fact that Northern Trust included its proprietary funds as investment options (Mot. at 10-11), this is an overly broad reading of Plaintiffs' claims. Here, Plaintiffs allege much more specifically, even in the paragraphs cited by Defendants, that Defendants' offering of in-house funds instead of superior unaffiliated options was further evidence of Defendants' failure to engage in a proper fiduciary process. *See, e.g.*, ¶28, ¶107, ¶111.

*supra*. Plaintiffs likewise plausibly allege that Defendants knowingly participated in their co-fiduciaries' breaches of fiduciary duty. *See, e.g.*, ¶170.

That Plaintiffs refer to Defendants collectively does not negate the sufficiency of Plaintiffs' allegations. Plaintiffs have fully complied with ERISA's pleading standard, under which plan participants are not required to detail each defendant's specific conduct. *See Allen*, 835 F.3d at 678 (holding ERISA plaintiffs are not required to describe directly the ways the fiduciaries' process was flawed); *Braden*, 588 F.3d at 595 (holding it is a "mistaken assumption" that a plaintiff is "required to describe directly the ways in which [defendants] breached their fiduciary duties").

Defendants' second argument also fails because, as discussed above, Plaintiffs' claim for breach of fiduciary duty survives. *See Brown-Davis*, 2020 WL 8921399, at *4; *see also Turner v. Schneider Elec. Holdings, Inc.*, 2021 WL 1178308, at *7 (D. Mass. Mar. 26, 2021) (finding that when "plaintiffs have plausibly alleged that defendants breached their fiduciary duties directly, plaintiffs have also plausible alleged that defendants have breached their duty to monitor"). Accordingly, the Court should deny Defendants' motion as to Counts II and III.

### C. Plaintiffs Have Stated Prohibited Transaction Claims in Counts IV and V

Plaintiffs also have properly alleged that Defendants engaged in prohibited transactions in violation of ERISA Sections 406(a) and (b) by causing the Plan to: (1) select and retain Plan options, which generated unreasonable fees that profited Northern Trust and enabled Northern Trust to bolster its investment management business; and (2) pay unreasonable recordkeeping fees to Fidelity. *See, e.g.*, ¶¶130, 175-96.

Besides imposing a general duty of prudence, ERISA "categorically bar[s] certain transactions deemed likely to injure the pension plan." *Harris Tr. & Sav. Bank v. Salomon Smith Barney, Inc.*, 530 U.S. 238, 242 (2000). Specifically, Section 1106 prohibits any fiduciary from causing the plan to engage in any transactions that benefit a party-in-interest or plan fiduciary

rather than the plan itself. The restrictions set forth in Section 1106 "protect[] beneficiaries by prohibiting transactions tainted by a conflict of interest and thus highly susceptible to self-dealing" and should "be broadly construed" in their application. *Lowen v. Tower Asset Mgmt., Inc.*, 829 F.2d 1209, 1213 (2d Cir. 1987) (citing *Leigh v. Engle*, 727 F.2d 113, 126 (7th Cir. 1984)).

Plaintiffs allege two separate categories of prohibited transactions arising from (1) the Plan's arrangements with two parties in interest, Northern Trust and Fidelity, in violation of Section 1106(a), ¶¶175-83; and (2) the dealing of Plan assets by fiduciaries Northern Trust and the Benefit Committee Defendants in their own interest, in violation of Section 1106(b), ¶¶184-96. Defendants' bid for dismissal is based on the limited and erroneous argument that the transactions at issue did not involve "plan assets." But this argument fails.

Subject to limited exceptions, Section 1106(a)(1) prohibits a fiduciary from causing a plan to engage in a transaction that constitutes an indirect: (C) furnishing of services between the plan and a party in interest, which does not require transfer of plan assets, or (D) transfer or use of any assets of the plan by, or for the benefit of, any party in interest.

As concerns ERISA Section 1106 (a)(1)(D), which requires transfer of plan assets, the robust regulatory framework promulgated by the Department of Labor underscores that the challenged transactions between Defendants and parties-in-interest (Northern Trust and Fidelity), do in fact involve plan assets.[10] Furthermore, in *Cutrone*, this Court found that plaintiffs properly

---

[10]     The Department of Labor spent years developing comprehensive regulations that recognize the acute risk for conflicts of interests among service providers, in particular with regard to the indirect compensation arrangements among service providers. This end result of intense effort is codified at 29 C.F.R. §2550.408b-2. *See* DOL, Reasonable Contract or Arrangement Under Section 408(b)(2) — Fee Disclosure, 77 FR 5632-01. In explaining the need for regulatory action, the DOL emphasized both the conflicted nature of these prohibited transactions among service providers, and the plan fiduciaries' duty to monitor these transactions closely, stating: "Payments from third parties ***and among service providers*** can create conflicts of interest between service providers and their clients. . . . Such compensation arrangements and the conflicts they can create are myriad and in the past have been largely hidden from view. Their

11

stated a Section 1106 claim, where they alleged that defendants caused the plan at issue to pay unreasonable compensation for certain services, "even if the complaint offers no specifics about how the [advisory] fees were excessive and even if the fees . . . paid to the recordkeeper were not plan assets." 2021 WL 4439415, at *9. *See also Beach v. JPMorgan Chase Bank*, No. 1:17-cv-00563, ECF No. 73 (S.D.N.Y. Mar. 29, 2018) (sustaining analogous prohibited transaction claims). Plaintiffs here assert like claims regarding unreasonable management and recordkeeping fees, and Defendants' motion should therefore be dismissed as to Counts IV and V.

Defendants' reliance on *Divane* is again flawed, as plaintiffs there failed to allege even "the basic elements" of a Section 1106 claim and provided "no independent argument" in support of a prohibited transactions claim. 953 F.3d at 992. Moreover, in *Divane*, unlike in this case, the fees collected by Hewitt were used to "defray reasonable expenses of administering the plan" and therefore provided a benefit to the plan. *Id*. at 988 (quoting §1104 (a)). Here, by contrast, the fees collected by Defendants and Fidelity were not returned to the Plan. Additionally, Plaintiffs here allege that Defendants caused the Plan to engage in transactions that "were subject to redemption fees and sales commissions, and/or were on terms less favorable than those offered to other plans' participants." ¶180.

Further, Section 1106(b)(3) prohibits the payment of ***any consideration*** to an ERISA fiduciary in connection with a transaction involving plan assets; it "does not limit the prohibited consideration to receipt of plan assets." *Spear v. Fenkell*, 2016 WL 5661720, at *29 (E.D. Pa. Sept. 30, 2016); *Chesemore v. Alliance Holdings, Inc.*, 886 F. Supp. 2d 1007, 1056 (W.D. Wis.

---

opacity has sometimes prevented plan fiduciaries from assessing the reasonableness of the costs for plan services and allowed harmful conflicts to persist in the market. In evaluating the reasonableness of contracts or arrangements for services, ***responsible plan fiduciaries have a duty to consider compensation that will be received by a covered service provider from all sources in connection with the services it provides to a covered plan*** pursuant to the service provider's contract or arrangement." *Id.* at 5650.

2012) ("the source of the funds is irrelevant under [ERISA] §406(b)(3)"); *Nat'l Secs. Sys., Inc. v. Iola*, 700 F.3d 65, 94 (3d Cir. 2012) (§1106(b)(3) has a "flat prohibition on a fiduciary's receipt of consideration in connection with a transaction involving plan assets"); *Allianz Global Investors U.S. LLC Alpha Series Litig.*, 2021 WL 4481215 (S.D.N.Y. Sept. 30, 2021) ("Plaintiffs' contention that [d]efendant managed the [f]unds against [p]laintiffs' interests in order to preserve its own ability to profit . . . adequately pleads a prohibited transaction[.]").

In sum, Plaintiffs have properly alleged prohibited transaction claims under Sections 1106(a)(1)(C) and 1106(b)(3) that do not require Plaintiffs to allege a transfer of "plan assets." For the portion of Plaintiffs' claims arising out of §1106(a)(1)(D) and §1106(b)(1), which allege transfer or use of Plan assets, the Department of Labor guidance and regulations (29 C.F.R. §2550.408b-2 (Rule 408(b)(2)) confirm that the challenged transactions did, in fact, involve Plan assets. *See also In re: G.E. ERISA Litig.*, 2019 WL 5592864, at *4 (D. Mass. Oct. 30, 2019) (upholding a prohibited transaction claim "[b]ecause [p]laintiffs' claim is broader and also encompasses the shares of the funds that financially benefitted [d]efendants[.]").

### D. Plaintiffs Have Standing to Seek Relief Concerning the Entire Suite of Northern Trust Focus Funds – Not Just the Vintages Owned by Plaintiffs

Defendants contend that Plaintiffs lack standing as to five vintages of the Northern Trust Focus Funds that Plaintiffs did not own. Defendants' position is contrary to authority and the practical reality that all the vintages of these funds were kept in the Plan as a single suite.

The majority rule in the federal courts,[11] and the prevailing rule in this District, is that participants in ERISA plans like the Plan have standing to challenge the plan investment funds

---

[11]    *See*, *e.g.*, *Boley v. Universal Health Servs., Inc.*, 2020 WL 6381395, at *7 (E.D. Pa. Oct. 30, 2020) (finding plaintiffs had Article III standing for "claims based on the [f]iduciaries' process applicable to all funds offered to them"); *Falberg v. Goldman Sachs Grp., Inc.*, 2020 WL 3893285, at *8 (S.D.N.Y. July 9, 2020) (collecting cases, and stating, "the majority of courts considering similar cases" follow the rule that

that they do not own personally at the time of suit, because "if the plaintiffs win their case [in that event] by obtaining a money judgment against [defendants], the receipt of that money will constitute the receipt of a plan benefit." *Neil v. Zell*, 767 F. Supp. 2d 933, 950 (N.D. Ill. 2011). This rule exists because under ERISA, a plaintiff who has established his own standing may seek relief on behalf of a plan and its participants even if that relief "sweeps beyond his own injury." *Braden*, 588 F.3d at 593; *see also Cutrone*, 2021 WL 4439415, at *6 (holding that plaintiffs had standing to seek recovery for the plan).[12]

Most recently in *Cutrone*, this Court ruled that plaintiff-participants had standing to bring claims related to six Northern Trust funds in which they did not invest because "the alleged conduct involved the selection of the full suite of Northern Trust funds and plaintiffs allege a concrete injury from that selection[.]" 2021 WL 4439415, at *5. The facts here are the same. Plaintiffs allege that Defendants breached their fiduciary duties relating to their selection and retention of the full suite of the Northern Trust Focus Funds, causing the value of assets in their individual accounts to diminish. *See, e.g.*, ¶112. As such, "there is no jurisdictional problem in having a court resolve the controversy over all of the funds' losses." *Cutrone*, 2021 WL 4439415, at *5.

Defendants' insistence that, in order to have standing, Plaintiffs must have owned every single vintage of the Northern Trust Focus Funds is especially misguided because these funds were packaged and selected for the Plan on an all-or-nothing basis, as a suite of funds. *See* ¶¶29-30. Because Defendants selected the entire suite of the Northern Trust Focus Funds for the Plan (as a

---

participants in defined-contribution retirement plans may have standing to bring ERISA claims challenging investments in which they did not personally invest); *Krueger v. Ameriprise Fin., Inc.*, 304 F.R.D. 559, 567 n.6 (D. Minn. 2014) ("[W]hether [plaintiffs] can represent [p]lan participants whose claims are based on other injuries is a matter of class certification, not standing.").

[12]    This Court in *Cutrone* held that plaintiffs could bring claims relating to funds in which they did not invest despite the previous, contrary holding in *Brown-Davis*. *Cutrone*, 2021 WL 4439415, at *5. The Court should follow this most recent ruling in *Cutrone*, which accords with the majority rule in the federal courts.

single family of funds, managed by the same team of fund managers pursuant to a common investment mandate and strategy), that investment decision resulted in the simultaneous inclusion of all the vintages of the Northern Trust Focus Funds in the Plan. Further, because Defendants decided to retain the entire suite of Northern Trust Funds in the Plan, the same fiduciary process applied to all the vintages of the Northern Trust Focus Funds at all times. Thus, each Plaintiff who owned any vintage of the Northern Trust Focus Funds has standing to pursue the claims pertaining to the entire suite of these funds and the process that resulted in these funds being offered to Plan participants. In sum, all the vintages of the Northern Trust Focus Funds implicate the same set of ERISA fiduciary concerns, and Plaintiffs have standing to pursue ERISA claims involving the entire suite at issue.[13]

### E.    Leave to Amend Should Be Granted to Cure Any Alleged Infirmities Here

If the Court were to determine that additional allegations are needed to support any of Plaintiffs' claims, granting leave to amend would be in order, which is freely granted. *See, e.g.*, *Barry Aviation Inc. v. Land O'Lakes Mun. Airport Comm'n*, 377 F.3d 682, 690 (7th Cir. 2004).

## IV.    CONCLUSION

For the foregoing reasons, Defendants' motion should be denied.

Dated: December 20, 2021                    Respectfully submitted,

By:  */s/ Elena N. Liveris*
Michael M. Mulder (Bar No. 1984268)
Elena N. Liveris (Bar No. 6297048)
THE LAW OFFICES OF MICHAEL M. MULDER
1603 Orrington, Suite 600
Evanston, IL 60201

---

[13]    This accords with holdings that an investor who owns one fund that is part of a related series of investment funds has standing under the securities statutes to represent a class of investors in *all* of the funds in a given series or family of funds, when each of those funds presents "the same set of concerns." *NECA-IBEW Health & Welfare Fund v. Goldman Sachs & Co.*, 693 F.3d 145, 149 (2d Cir. 2012); *Plumbers & Pipefitters Nat. Pension Fund v. Burns*, 967 F. Supp. 2d 1143, 1164 (N.D. Ohio 2013) (following *NECA-IBEW*).

Telephone: (312) 263-0272
mmmulder@mmulderlaw.com
eliveris@mmulderlaw.com

Garrett W. Wotkyns (*pro hac vice*)
SCOTT+SCOTT ATTORNEYS AT LAW LLP
8068 East Del Acero Drive
Scottsdale, AZ 85258
Telephone: (480) 889-3514
gwotkyns@scott-scott.com

Tanya Korkhov
SCOTT+SCOTT ATTORNEYS AT LAW LLP
The Helmsley Building
230 Park Avenue, 17th Floor
New York, NY 10169
Telephone: (212) 223-6444
tkorkhov@scott-scott.com

Joseph C. Peiffer (*pro hac vice*)
Daniel J. Carr (*pro hac vice*)
Kevin P. Conway (*pro hac vice*)
Jamie L. Falgout (*pro hac vice* forthcoming)
PEIFFER WOLF CARR KANE & CONWAY LLP
1519 Robert C. Blakes Sr. Drive
New Orleans, LA 70130
Telephone: (504) 523-2434
jpeiffer@peifferwolf.com
dcarr@peifferwolf.com
kconway@peifferwolf.com
jfalgout@peifferwolf.om

*Attorneys for Plaintiffs*

16

**CERTIFICATE OF SERVICE**

I hereby certify that I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system on December 20, 2021, and that all parties are represented by counsel of record registered with the CM/ECF system.

*/s/ Elena N. Liveris*