IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| DENIS J. CONLON, et al., Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiffs,<br><br>v.<br><br>THE NORTHERN TRUST COMPANY, THE NORTHERN TRUST COMPANY EMPLOYEE BENEFIT ADMINISTRATIVE COMMITTEE, KIMBERLY SOPPI, and DOES 1-30,<br><br>Defendants. | Case No. 1:21-cv-02940<br><br>Hon. Charles R. Norgle |

## ORDER

Defendants' motion to dismiss for failure to state a claim [28] is denied.

## MEMORANDUM OPINION

Plaintiffs are six beneficiaries of an employee retirement plan, The Northern Trust Company Thrift-Incentive Plan (the "Plan"), who bring this putative class action against Defendants for breach of fiduciary duty under the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001, *et seq.* ("ERISA"). They allege that Defendants, who sponsor, administer, and manage the Plan on behalf of the Plan participants,[1] breached their fiduciary duties by failing to select and monitor the Plan's investment options with prudence and loyalty as required by ERISA. Allegedly because Defendants failed to remove underperforming funds from the Plan or negotiate lower, reasonable fees, Plaintiffs' retirement accounts are now less valuable than if

---

[1] "Participants" in a plan are those employees who choose to invest some of their earnings in a plan offered by an employer.

Defendants had acted in accordance with their fiduciary duties. Plaintiffs assert five counts against Defendants: (1) breach of fiduciary duty of prudence, (2) failure to monitor the performance of appointed fiduciaries, (3) breach of co-fiduciary duty,[2] and (4-5) prohibited transactions with parties in interest. Defendants have moved to dismiss the complaint for failure to state a claim pursuant to Rule 12(b)(6), arguing that Plaintiffs' allegations of underperformance and excessive fees are insufficient to allow the Court to plausibly infer that Defendants failed to conduct a proper fiduciary process to oversee the Plan's investments. The Court disagrees and denies Defendants' motion. Discovery shall proceed.

## I. Background

Pursuant to ERISA, employers can offer their employees participation in a defined-contribution retirement plan, allowing the employees to save for retirement through a tax-advantaged account like a 401(k) plan. Employees contribute to their accounts with money they earn through their employment and choose how to invest their money from a menu of investment options offered by the plan. The employer decides which funds or investment options will be offered in the plan's menu. The plan may offer different types of funds, with various strategies and goals, including funds that are actively managed or funds that passively track the stocks in an index like the S&P 500. The performance of the chosen investments, less the deduction of any associated fees, determines the amount of money the participant will have saved for retirement. Hughes v. Nw. Univ., 142 S. Ct. 737, 740 (2022).

---

[2] Counts II and III are derivative of Count I for breach of fiduciary duty. See Howell v. Motorola, Inc., 633 F.3d 552, 563 (7th Cir. 2011); Turner v. Schneider Elec. Holdings, Inc., 530 F. Supp. 3d 127, 137 (D. Mass. 2021) ("The duty to monitor claim is a derivative of plaintiffs' other fiduciary duty claims. To the extent plaintiffs have plausibly alleged that defendants breached their fiduciary duties directly, plaintiffs have also plausibly alleged that defendants have breached their duty to monitor." (cleaned up); Davis v. Salesforce.com, Inc., No. 21-15867, 2022 WL 1055557, at *2 (9th Cir. Apr. 8, 2022) ("Because we conclude that plaintiffs have adequately alleged a claim for breach of the duty of prudence, we also reverse the district court's dismissal of their duty-to-monitor claim.").

Investing in a fund typically requires the payment of various fees. The fees often include two types: (1) management fees, usually charged as a percentage (called an "expense ratio") of the value of the assets held, which compensate a fund for designing and maintaining the investment portfolio, and (2) administrative or recordkeeping fees, charged by companies like Fidelity Investments, to cover the costs of tracking account balances, providing account statements, and offering informational and accessibility services to participants. Expense ratios tend to be higher for funds that are actively managed and lower for funds that passively follow a standardized index. Further, retirement plans sometimes offer "retail" and "institutional" share classes of a certain fund to their employees. While "retail" share classes are accessible to individual investors, retirement plans can obtain and offer their participants access to "institutional" share classes, which are typically only available to large institutional investors. The "institutional" share classes usually have a high minimum-balance requirement but cost less because they often waive commissions and charge lower expense ratios. All share classes of a fund typically employ the same investment strategy, portfolio, and management team. Forman v. TriHealth, Inc., No. 21-3977, 2022 WL 2708993, at *1-2 (6th Cir. July 13, 2022).

## II. Legal Standard

Rule 8(a) requires that a complaint contain a "short and plain statement of the claim showing that the plaintiff is entitled to relief" and "raise a right to relief above a speculative level." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 554-557, 570 (2007). Pursuant to Rule 12(b)(6), "'[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, if accepted as true, to state a claim to relief that is plausible on its face.'" Toulon v. Continental Cas. Co., 877 F.3d 725, 734 (7th Cir. 2017) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the

3

reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678. A plaintiff's burden on a motion to dismiss is limited to alleging "enough details about the subject-matter of the case to present a story that holds together." Swanson v. Citibank, N.A., 614 F.3d 400, 404 (7th Cir. 2010). In reviewing a plaintiff's claim, the court "must construe all of the plaintiff's factual allegations as true, and must draw all reasonable inferences in the plaintiff's favor." Virnich v. Vorwald, 664 F.3d 206, 212 (7th Cir. 2011). But in ruling on a motion to dismiss, the Court is "not obliged to accept as true legal conclusions or unsupported conclusions of fact." St. John's United Church of Christ v. City of Chicago, 502 F.3d 6 6, 633 (7th Cir. 2007) (internal quotation marks omitted).

Defendants make a facial challenge to plaintiff's standing under Article III with regard to certain funds offered by the Plan. A facial challenge to standing asks "whether the allegations, taken as true, support an inference that the elements of standing exist." Bazile v. Fin. Sys. of Green Bay, Inc., 983 F.3d 274, 279 (7th Cir. 2020). The Court reviews a facial challenge to Plaintiffs' standing under the same standard set forth above for a motion to dismiss for failure to state a claim. Daugherty v. Univ. of Chicago, No. 17 C 3736, 2017 WL 4227942, at *4 (N.D. Ill. Sept. 22, 2017).

### III. Plaintiffs' Allegations

The Plan is a defined contribution employee benefit plan, enabling current and former Northern Trust Company ("Northern Trust") employees to save for retirement. The Plan has over 12,000 participants and over $2.7 billion in assets under management, making it one of the largest defined contribution plans in the nation, "with tremendous leverage to obtain superior investment products and services." Dkt. 25 ¶ 27. During the relevant period from June 1, 2015 to the present, the Plan offered 27 different investment funds, including 18 total Northern Trust investment

4

options and 11 Northern Trust Focus Target Retirement Trusts (the "Focus Funds").[3] During that period, Fidelity Investments ("Fidelity") served as the recordkeeper.

Plaintiffs allege that Defendants violated their fiduciary duties under ERISA. First, Defendants failed to oversee the Plan's investments and remove underperforming ones, instead loading the Plan with deficient funds and keeping them on the investment menu despite consistent poor performance. Second, Defendants allegedly failed to monitor the other fiduciaries and evaluate their performance, enabling them to breach their duties. Lastly, Plaintiffs allege that Defendants violated their duty of loyalty by (1) selecting and retaining Plan options that generated unreasonable management fees for Northern Trust and (2) paying unreasonable recordkeeping fees to Fidelity, which constituted conflicted transactions that are prohibited under ERISA. In total, these failures show that Defendants' fund selection and monitoring process (or lack thereof) was tainted by a failure of competency or effort.

Specifically, Plaintiffs assert that Defendants retained the eleven Focus Funds despite being able to offer other, more fruitful target date funds at the same or lesser cost. Since 2013, the Focus Funds have been the only target date retirement investing options in the Plan, so Plan participants had no other tax-advantaged target date funds choices available. In addition, the Focus Funds were the default investment option for Plan participants, such that a participant's contributions would be placed in one of the Focus Funds unless the participant chose a different investment option. Even before their selection for the Plan in 2013, the Focus Funds had underperformed relative to benchmark indices and comparable target date funds for three years.

---

[3] Target date funds are designed to provide a model asset allocation based on a given investor's projected retirement date, *i.e.* the target date, and generally rebalance their portfolios to become more conservative as the investor nears that retirement date. Target date funds have become increasingly popular in the retirement plan market, such that by the end of 2020, "80% of all participants had a position in one, and [target date] funds accounted for 37% of plans' assets and 60% of total plan contributions." Dkt. 25 ¶ 33. Accordingly, "selecting the right [target date fund] is one of the most important decisions you can make for your lineup." Id. ¶ 36.

After being included in the Plan, the Focus Funds continued to underperform and generated unreasonable fees, so their retention shows that Defendants followed no prudent management process. Dkt. 25 ¶ 38 ("[F]or over a decade . . . the Northern Trust Focus Funds have performed worse than 70% to 90% of peer funds[.]"). Other investment alternatives with the "same investment objectives" were available, including options not affiliated with Northern Trust, that were "less risky, less costly, and able to present a consistently superior performance record at all relevant times." Id. ¶ 28. As such, the "breadth and depth of the . . . underperformance raises a plausible inference that Defendants' fund selection and monitoring process for the Plan was tainted by a failure of competency or effort." Id. ¶ 43; see id. at 14-34 (Morningstar, Inc. analysis compares performance with comparator target funds that "pursue the same investment objectives[.]"). Plaintiffs insist that Defendants had a duty to "either place the fund on the watch list and/or remove and replace the investment option" due to the "abysmal underperformance for over a decade." Id. ¶ 106. They estimate that retaining the Focus Funds cost the Plan tens of millions of dollars since 2015.

Plaintiffs also allege that other features of the Plan, beyond the underperformance, evince Defendants' lack of proper fiduciary process. They allege that Defendants failed to properly oversee the Plan's investment management and recordkeeping fees. According to the complaint, large retirement plans like the Plan have substantial bargaining power to obtain share classes with lower costs, and Defendants failed to conduct an appropriately competitive bidding process to negotiate low prices. Dkt. 25 ¶ 121 ("According to a study conducted by the Department of Labor, 401(k) plans featuring a large number of participants can take advantage of economies of scale by negotiating a lower per-participant recordkeeping fee."). "Despite the fact that lower-cost shares of certain funds were available to the Plan . . . Defendants imprudently selected and retained the

6

higher-cost shares of these funds" when the "only difference between the shares classes is the amount of fees[.]" Id. ¶¶ 114-15 (discussing specific funds that offered lower-cost shares). Specifically, Plaintiffs assert that the Plan paid an average of $2 million in annual fees—or $160 per participant—since 2015. And according to Fidelity, a "standard recordkeeping fee for a plan with the same asset and participant size should be around $14-$21 per participant." Id. ¶ 133. The fees were thus unreasonable, and Defendants profited via increased direct or indirect fees paid by the Plan participants to proprietary Northern Trust funds. Therefore, a breach of duty can allegedly be inferred.

Lastly, Plaintiffs allege that the offering of the Focus Funds with no other target date funds represents a self-interested failure to diversify investment options. Defendants offered only their own proprietary (and underperforming) target date funds in the Plan menu. By offering proprietary funds, Northern Trust receives indirect compensation in addition to direct fees. Dkt. 25 ¶ 131 ("This creates an incentive for Northern Trust to push up the assets being devoted to the Plan so that Northern Trust can earn more money, rather than because it is truly in the best interests of plan participants."). Plaintiffs say this is evidence of disloyalty to the Plan participants, and the decision-making process was "tainted by a conflict of interest." Dkt. 25 ¶ 108 ("Instead of using the Plan's bargaining power to benefit participants and beneficiaries, Defendants caused unreasonable expenses to be charged to the Plan[.]"). Allowing such conflicted transactions (including the paying of unreasonable fees) to continue constituted a breach of fiduciary duty and violated ERISA's prohibition of transactions with a party in interest.

## IV. Discussion

### A. Fiduciary Duties under ERISA

ERISA mandates that those who invest other peoples' retirement money must do so "with the care, skill, prudence, and diligence" that a reasonable professional in the area would use and "defra[y] reasonable expenses of administering the plan[.]" 29 U.S.C. §§ 1104(a)(1)(B), 1103(c)(1). A fiduciary "shall not cause the plan to engage in a transaction . . . between the plan and a party in interest[.]"[4] Id. §§ 1106(a)(1), 1106(b) ("A fiduciary . . . shall not . . . deal with the assets of the plan in his own interest or for his own account" or "receive any consideration for his own personal account from any party dealing with such plan in connection with a transaction involving the assets of the plan."). In addition, a fiduciary can breach her co-fiduciary duty if she participates knowingly in, conceals, enables, or has knowledge of another fiduciary's breach. Id. § 1105(a). Fiduciaries who breach their duties are personally liable to make good to the plan any losses resulting from each breach. Id. § 1109(a).

ERISA's fiduciary duties are "derived from the common law of trusts." Tibble v. Edison Intl, 575 U.S. 523, 528 (2015). Loyalty requires a fiduciary to act "for the exclusive purpose" of providing benefits to participants. Allen v. GreatBanc Tr. Co., 835 F.3d 670, 678 (7th Cir. 2016). A plaintiff may allege that a fiduciary breached his duty of prudence and "continuing duty to monitor . . . by failing to properly monitor investments and remove imprudent ones." Tibble, 575 U.S. at 528-530. While the duties of prudence and loyalty are "conceptually distinct from one another," the "analysis of the duty of loyalty may inform the analysis of the duty of prudence and

---

[4] A party in interest includes "any fiduciary (including, but not limited to, any administrator, officer, trustee, or custodian), counsel, or employee of such employee benefit plan," and "a person providing services" to a plan. Id. § 1002(14)(A), (B).

vice versa[.]" Carrigan v. Xerox Corp., No. 3:21-CV-1085 (SVN), 2022 WL 1137230, at *8 (D. Conn. Apr. 18, 2022).

### B. Pleading Requirements

Defendants attack the sufficiency of the complaint's allegations, so the Court will review the pleading standards in cases asserting breach of fiduciary duty under ERISA. To allege breach of fiduciary duty of prudence, Plaintiffs must allege facts "showing that the defendant acted as a fiduciary, breached its fiduciary duties, and thereby caused a loss to the [p]lan." Braden, 588 F.3d at 594. On a motion to dismiss ERISA claims, "[b]ecause the content of the duty of prudence turns on the circumstances . . . prevailing at the time the fiduciary acts, § 1104(a)(1)(B), the appropriate inquiry will necessarily be context specific." Fifth Third Bancorp v. Dudenhoeffer, 573 U.S. 409, 425 (2014) (weeding out meritless claims can be accomplished "through careful, context-sensitive scrutiny of a complaint's allegations."). "At times, the circumstances facing an ERISA fiduciary will implicate difficult tradeoffs, and courts must give due regard to the range of reasonable judgments a fiduciary may make based on her experience and expertise." Hughes v. Nw. Univ., 142 S. Ct. 737, 742 (2022). However, the Supreme Court has rejected a categorical rule that would bar breach of fiduciary duty claims when defendants provide an "adequate array of [investment] choices" and include a plaintiff's "preferred type of low-cost investments[.]" Id. at 740-742 (reversing grant of motion to dismiss and remanding the case because "[i]f the fiduciaries fail to remove an imprudent investment from the plan within a reasonable time, they breach their duty.").

"Because ERISA plaintiffs generally have no access to the inside information regarding a fiduciary's decision-making process, they need not plead such details, as long as the facts alleged tell a plausible story." Miller v. Astellas US LLC, No. 20 C 3882, 2021 WL 1387948, at *5 N.D. Ill. Apr. 13, 2021) (citing Allen, 835 F.3d at 678); Daugherty v. Univ. of Chicago, No. 17 C 3736,

9

2017 WL 4227942, at *7 (N.D. Ill. Sept. 22, 2017) ("To allege a breach of fiduciary duty, it is sufficient for a plaintiff to plead facts indirectly showing unlawful behavior.") (cleaned up); see also Wildman v. Am. Century Servs., LLC, 237 F. Supp. 3d 902, 912 (W.D. Mo. 2017) (citing Braden v. Wal-Mart Stores, Inc., 588 F.3d 585, 595-96 (8th Cir. 2009) and stating, "Even when the complaint does not allege facts showing specifically how the fiduciaries breached their duty through improper decision-making, a claim can survive a motion to dismiss if the court may reasonably infer from what was alleged that the fiduciaries followed a flawed process."). "[W]hether a particular investment choice was imprudent is a particularly fact-sensitive inquiry that would not be appropriate to resolve on a motion to dismiss." Diebold ex rel. ExxonMobil Sav. Plan v. N. Tr. Invs., N.A., No. 09 C 1934, 2010 WL 3700387, at *3 (N.D. Ill. Sept. 7, 2010).

### C. Sufficiency of Plaintiffs' Allegations

Defendants argue that Plaintiffs fail to allege a breach because their claims are premised on allegations of investment underperformance and excessive fees, which are insufficient to state a plausible claim. They argue that Plaintiffs must make "allegations speaking to flawed decision-making or self-dealing," rather than mere underperformance and the availability of cheaper alternatives. Martin v. CareerBuilder, LLC, No. 19-CV-6463, 2020 WL 3578022, at *4 (N.D. Ill. July 1, 2020) ("[T]he prudence standard is processed-based, not outcome based . . . a Plan's mere underperformance is not actionable so long as the fund administrators acted prudently.") (citing Divane v. Nw. Univ., 953 F.3d 980 (7th Cir. 2020)). Because Plaintiffs do not include specific allegations about Defendants' fiduciary process for investigating, evaluating, and monitoring investments, Defendants say the claims must fail. See Hecker v. Deere & Co., 556 F.3d 575, 586 (7th Cir. 2009) ("[N]othing in ERISA requires every fiduciary to scour the market to find and offer the cheapest possible fund[.]"); Loomis v. Exelon Corp., 658 F.3d 667, 670 (7th Cir. 2011) ("By

10

offering a wide range of options, Hecker held, [defendant's] plan complied with ERISA's fiduciary duties.").

Regarding Plaintiffs' other claims, Defendants contend that to assert failure to monitor and breach of co-fiduciary duty claims Plaintiffs must, but do not, plead additional detail including actual knowledge of another fiduciary's alleged breach. Keach v. U.S. Tr. Co., 240 F. Supp. 2d 840, 844 (C.D. Ill. 2002). Finally, they argue that Plaintiffs' prohibited transactions claims must fail because (1) they are just recycled fiduciary breach claims, (2) it is not improper to offer proprietary funds in a plan, and (3) Plaintiffs allege only conclusions rather than any "plausible facts supporting an inference that the defendant acted *for the purpose* of providing benefits to itself or someone else." Patterson v. Morgan Stanley, No. 16-CV-6568 (RJS), 2019 WL 4934834, at *12 (S.D.N.Y. Oct. 7, 2019) (simply "offering the plan sponsor's financial products" does not violate duty of loyalty). Further, say Defendants, they did not use "assets of the plan" to benefit themselves or a party in interest. See Fleming v. Fid. Mgmt. Tr. Co., No. 16-CV-10918-ADB, 2017 WL 4225624, at *9 (D. Mass. Sept. 22, 2017) (collected fees "do not qualify as 'assets of the plan,' as required to make out a claim").

Plaintiffs retort that courts, including this one, routinely reject Defendants' arguments and allow breach of fiduciary claims to proceed based on similar allegations. Brown-Davis v. Walgreen Co., No. 1:19-CV-05392, 2020 WL 8921399, at *1 (N.D. Ill. Mar. 16, 2020) (Norgle, J.) (denying motion to dismiss ERISA fiduciary duty claims based on the "allegedly persistent poor performance of ten Northern Trust" target date funds and rejecting the argument that the plaintiffs needed to include "more specific allegations regarding the fiduciaries' conduct and their fund-selection process"). Plaintiffs urge that "ERISA plaintiffs . . . generally do not have insider information that speaks to process. Thus, 'an ERISA plaintiff alleging breach of fiduciary duty

11

does not need to plead details to which she has no access, as long as the facts alleged tell a plausible story.'" Martin, 2020 WL 3578022 at *4 (citing Allen, 835 F.3d at 678).

Defendants largely rely on Divane v. Nw. Univ., 953 F.3d 980 (7th Cir. 2020), which was recently overturned and remanded by the Supreme Court. The Divane plaintiffs partially alleged that the defendant: (1) offered too many investment options, many of which had excessive fees and were underperforming; (2) should not have offered additional funds from a certain company, TIAA, including a specific fund, the Stock Account, that charged excessive fees; and (3) should have used its bargaining power to negotiate lower-priced institutional rates instead of retail rates. The Seventh Circuit affirmed the district court's grant of the defendant's motion to dismiss, stating in part that the plaintiffs' allegations depicted valid reasons for the plan to use TIAA as a recordkeeper and to keep the Stock Account as an option for participants. Id. at 989 ("[I]t was prudent for Northwestern" to offer the TIAA options at issue and "accept conditions that would ensure the Traditional Annuity remained available to participants" because removing that option would subject participants to a surrender charge.). Importantly, the Seventh Circuit emphasized that "[a]ny participant could avoid . . . excessive recordkeeping fees and underperformance . . . simply by choosing from hundreds of other options[.]" Id. at 988, 991 ("But the types of funds plaintiffs wanted (low-cost index funds) '*were and are* available to them[.]'") (emphasis in original).

Subsequently, in a unanimous opinion, the Supreme Court vacated and remanded Divane. Hughes v. Nw. Univ., 142 S. Ct. 737, 742 (2022). The Court held that the Seventh Circuit's reliance and "exclusive focus on investor choice" was flawed reasoning. Id. ("The Seventh Circuit erred in relying on the participants' ultimate choice over their investments to excuse allegedly imprudent decisions by respondents."). The Seventh Circuit must now "reevaluate the allegations

12

as a whole" and "consider whether petitioners have plausibly alleged a violation of the duty of prudence as articulated in Tibble, applying the pleading standards" of Iqbal and Twombly. Id. ("[P]lan fiduciaries are required to conduct their own independent evaluation to determine which investments may be prudently included in the plan's menu of options . . . [i]f the fiduciaries fail to remove an imprudent investment from the plan within a reasonable time, they breach their duty.").

Defendants insist that the relevant aspects of Divane remain good law, including that "the ultimate outcome of an investment is not proof of imprudence." Divane, 953 F.3d at 992 (citing DeBruyne v. Equitable Life Assurance Soc'y of the United States, 920 F.2d 457, 465 (7th Cir. 1990)); see also Jenkins v. Yager, 444 F.3d 916, 926 (7th Cir. 2006) ("Investment losses are not proof that [a fiduciary] violated his duty of care."). However, the Court is not convinced that Divane—which has yet to be decided on remand—controls this case or demands dismissal here, especially since the defendant there "provided prudent explanations for the challenged fiduciary decisions involving alleged losses or underperformance" and the plaintiffs *"pleaded the same prudent reasons* in their amended complaint." Divane, 953 F.3d at 992 (emphasis added). Here, the complaint does not plead information or facts, like the surrender charge in Divane, that explain how the retaining of underperforming and needlessly expensive funds was prudent. Divane is further distinguishable because the defendant there already made available the types of low-cost index funds plaintiffs wanted, whereas Plaintiffs here have no other target date funds to choose from except the Focus Funds. Id. at 991.[5]

---

[5] Defendants' citation to Albert v. Oshkosh Corp., which is currently on appeal to the Seventh Circuit, is unpersuasive because the court there relied largely on Divane. No. 20-C-901, 2021 WL 3932029, at *5 (E.D. Wis. Sept. 2, 2021) ("Like the plaintiffs in Divane, Plaintiff has 'identified no alternative recordkeeper that would have accepted such a low fee or any fee lower than what was paid[.]'"); id. at 6 ("Plaintiff's argument . . . that Defendants should have selected share classes that would have cost participants less . . . has been rejected by the Seventh Circuit.") (citing Divane).

13

Defendants emphasize that ERISA does not "mandate what kind of benefits employers must provide" in an employee benefits plan. Lockheed Corp. v. Spink, 517 U.S. 882, 887 (1996); see Divane v. Nw. Univ., 953 F.3d 980, 989 (7th Cir. 2020) (it is "beyond the court's role to seize ERISA for the purpose of guaranteeing individual litigants their own preferred investment options."). Indeed, ERISA does not require that a plan offer target date funds (for example) whatsoever. True, but Plaintiffs do not assert as much. Rather, they assert that a failure of adequate fiduciary process can be reasonably inferred from the totality of their allegations.

The Court agrees with Plaintiffs. The complaint provides third-party analysis comparing the Focus Funds with benchmark indices and other specific target date funds, alleging that the Focus Funds were selected after 3 years of underperformance and thereafter retained despite chronic underperformance for a 10-year period. Tibble, 575 U.S. at 528-530 (fiduciary "has a continuing duty to monitor trust investments and remove imprudent ones."). Lower-cost options were allegedly available, but Defendants selected and retained the higher-cost shares of those funds. As a "jumbo plan" with nearly $3 billion in assets, the Plan had significant leverage to negotiate favorable administrative and recordkeeping fee rates and obtain institutional class shares. Dkt. 25 ¶ 27. Yet Defendants failed to negotiate, instead offering funds at unreasonably higher prices than comparable plans. Indeed, as pleaded, Fidelity estimates that plans like the Northern Trust Plan should have had much lower recordkeeping fees per participant. Further, the Focus Funds—the only target date funds offered in the Plan and the default fund option for all Plan participants—were proprietary funds, which is circumstantial evidence that Defendants were self-interested and purposefully imprudent to the detriment of Plan beneficiaries.

Taken together, these allegations allow the Court to make the reasonable inference at this stage of the litigation that Defendants were imprudent and disloyal. Allen, 835 F.3d at 678. While

"none of these allegations directly addresses the process by which the Plan was managed[,]" it is "reasonable . . . to infer from what is alleged that the process was flawed." Braden v. Wal-Mart Stores, Inc., 588 F.3d 585, 596 (8th Cir. 2009) ("Taken as true, and considered as a whole, the complaint's allegations can be understood to assert that the Plan includes a relatively limited menu of funds which were selected by Wal–Mart executives despite the ready availability of better options.").

Plaintiffs' derivative failure to monitor and breach of co-fiduciary duty claims survive for the same reasons. See Tracey v. Massachusetts Inst. of Tech., No. CV 16-11620-NMG, 2017 WL 4453541, at *19 (D. Mass. Aug. 31, 2017) (rejecting argument that duty to monitor claim is conclusory when the plaintiffs alleged a failure "to monitor its appointees, to evaluate their job performance, [] to establish a system for performance evaluations . . . to monitor its appointees' fiduciary process . . . and [] to discharge appointees whose job performance was inadequate."). Finally, given all the above, the prohibited transactions claims survive as well. Cutrone, 2021 WL 4439415 at *9 ("[E]ven if the fees . . . paid to the recordkeeper were not plan assets, the complaint states claims for relief under 29 U.S.C. §§ 1106[.]"); see In re Allianz Glob. Invs. U.S. LLC Alpha Series Litig., No. 20 CIV. 10028 (KPF), 2021 WL 4481215, at *25 (S.D.N.Y. Sept. 30, 2021) ("Plaintiffs' contention that Defendant managed the Funds against Plaintiffs' interests in order to preserve its own ability to profit from managing the Funds adequately pleads a prohibited transaction[.]"); see also Spear v. Fenkell, No. CV 13-2391, 2016 WL 5661720, at *29 (E.D. Pa. Sept. 30, 2016) ("The language of section 406(b)(3) does not limit the prohibited consideration to receipt of plan assets. Nor does section 406(b)(3) require that the party that pays consideration to the fiduciary be a recipient of plan assets.").

15

The Court's holding is consistent with cases in this district and from around the country. See, e.g., Brown-Davis, 2020 WL 8921399 at *4; Cutrone v. Allstate Corp., No. 20 CV 6463, 2021 WL 4439415, at *1 (N.D. Ill. Sept. 28, 2021) (in case concerning the same Northern Trust target date funds at issue here, claims that the defendants "failed to remove imprudent investments, saddled the plan with excessive fees, and caused the plan to make prohibited transactions" survive motion to dismiss); Daugherty v. Univ. of Chicago, No. 17 C 3736, 2017 WL 4227942, at *7 (N.D. Ill. Sept. 22, 2017) (plan allegedly "charges administrative fees in excess of industry standards."); Davis v. Salesforce.com, Inc., No. 21-15867, 2022 WL 1055557, at *1-2 (9th Cir. Apr. 8, 2022) (claims for (1) failure to select lower-cost share classes and (2) retention of higher-cost target date funds survive); Carrigan v. Xerox Corp., No. 3:21-CV-1085 (SVN), 2022 WL 1137230, at *6 (D. Conn. Apr. 18, 2022) (courts have considered the "fees of comparable plans" and "the bargaining power of the plan to negotiate competitive recordkeeping fees"); Goodman v. Columbus Reg'l Healthcare Sys., Inc., No. 4:21-CV-15 (CDL), 2022 WL 228764, at *2 (M.D. Ga. Jan. 25, 2022) ("The Supreme Court has suggested that a plaintiff may state a claim" by alleging that a defendant failed to offer "available identical lower priced institutional class funds . . . [a]nd the Court is satisfied that Plaintiffs state a plausible claim that continuing to offer underperforming mutual funds with excessive expense ratios despite a consistent history of underperformance would violate ERISA's duty of prudence."); Baker v. John Hancock Life Ins. Co. (U.S.A.), No. 1:20-CV-10397-GAO, 2020 WL 8575183, at *1-2 (D. Mass. July 23, 2020) ("long-term retention" of underperforming funds at "higher than comparable costs gives rise to a plausible inference of an objectively imprudent monitoring process.").

In a supplement to their motion, Defendants compare this case to Smith v. CommonSpirit Health, 37 F.4th 1160, 1162 (6th Cir. 2022) (granting motion to dismiss) and urge the Court to

adopt the Sixth Circuit's reasoning. There, the plaintiff claimed the defendant breached its duty of prudence by offering several actively managed funds when there were passive index funds available that offered higher returns and lower fees over a three-year and five-year period. Id. at 1166 ("Merely pointing to another investment that has performed better in a five-year snapshot of the lifespan of a fund that is supposed to grow for fifty years does not suffice to plausibly plead an imprudent decision[.]"). In contrast, however, Plaintiffs here plead consistent, chronic underperformance for a *decade*. In addition, the plaintiff in Smith asked the Sixth Circuit to infer imprudence by comparing the performance of actively managed funds with passively managed index funds. The Sixth Circuit described that as "[c]omparing apples and oranges[,]" such that there was no reasonable inference to be made that offering both types of funds was imprudent. Id. at 1166 ("[T]he two general investment options have different aims, different risks, and different potential rewards that cater to different investors.") (cleaned up). Plaintiffs here compare the performance of the Focus Funds to allegedly similar target date funds, while also alleging that Defendants (1) paid unnecessarily high and excessive fees based on industry comparison and (2) failed to use the plan's significant bargaining power, instead acting in their own self-interest. The Court is not persuaded that this case is comparable to Smith, and the motion is denied.

### D. Standing

In a final effort to narrow Plaintiffs' claims, Defendants argue that the claims should be dismissed for lack of standing to the extent that they relate to funds in which the named Plaintiffs did not actually invest.[6] They assert that Plaintiffs do not allege a concrete, personalized injury with regard to those funds and thus fail to satisfy the constitutional injury-in-fact requirement. Spokeo, Inc. v. Robins, 578 U.S. 330, 338-39 (2016); Patterson v. Morgan Stanley, No. 16-CV-

---

[6] Certain Plaintiffs named in this lawsuit invested in the following Focus Funds: 2020, 2035, 2040, 2050, 2055, and 2060. No Plaintiff purports to have invested in the 2010, 2015, 2025, 2030, or 2045 Focus Funds.

6568 (RJS), 2019 WL 4934834, at *5 (S.D.N.Y. Oct. 7, 2019) ("Losses incurred by funds in which Plaintiffs did not invest cannot have impaired the value of Plaintiffs' individual accounts . . . [t]herefore, Plaintiffs have not been injured as to those funds."). This Court previously accepted that argument. Brown-Davis v. Walgreen Co., No. 1:19-CV-05392, 2020 WL 8921399, at *3 (N.D. Ill. Mar. 16, 2020) (dismissing claims arising from investment in the 2010 and 2015 Funds).

However, the Court is persuaded by the weight of authority to change course, and holds that Plaintiffs have established standing to bring class claims at this stage with respect to funds in which they did not personally invest. See Boley v. Universal Health Servs., Inc., 337 F.R.D. 626, 636 n.66 (E.D. Pa. 2021), aff'd, 36 F.4th 124 (3d Cir. 2022) ("We need not address the Fiduciaries' argument the [sic] Participants lack Article III standing to pursue claims regarding the particular funds they did not personally invest in because we addressed—and rejected—this argument at length in denying the Fiduciaries' motion to partially dismiss the Participants' claims."); Cutrone, 2021 WL 4439415 at *5-6 (collecting cases and stating that plaintiffs have a stake in the impaired value of other funds "because they were allegedly harmed by the same breach . . . there is no jurisdictional problem in having a court resolve the controversy over all of the funds' losses."); Falberg v. Goldman Sachs Grp., Inc., No. 19 CIV. 9910 (ER), 2020 WL 3893285, at *8 (S.D.N.Y. July 9, 2020) (collecting cases and explaining that "the majority of courts considering similar cases both in this district and elsewhere" disagree with Patterson). Defendants may raise the argument at the class certification stage. Krueger v. Ameriprise Fin., Inc., 304 F.R.D. 559, 567 n.6 (D. Minn. 2014) ("[W]hether [plaintiffs] can represent [p]lan participants whose claims are based on other injuries is a matter of class certification, not standing.").

## V. Conclusion

At this early phase of litigation, with little to no discovery, Plaintiffs' claims survive. Their allegations, taken as a whole, permit the reasonable inference that Defendants acted imprudently and violated their fiduciary duties under ERISA. Because Plaintiffs' claims are plausible at this stage, Defendants' motion to dismiss for failure to state a claim [28] is denied and the case shall proceed to discovery.

IT IS SO ORDERED.

ENTER:

_____
CHARLES RONALD NORGLE, Judge
United States District Court

DATE: August 5, 2022